IN THE CIRCUIT COURT OF BULLOCK COUNTY, ALABAMA

*FILED IN OFFICE*

*MAR 16 2006*

*CLERK-REGISTER, BULLOCK CO., ALA.*

| | |
|---|---|
| HARRISON JOHNSON, JR., as Administrator of the Estate of Harrison Johnson, Sr.; YVONNE JOHNSON, as Administratrix of the Estate of Frank Ellis Johnson; YVONNE JOHNSON, individually; JOI JOHNSON; FRANK ELLIS JOHNSON, II; and LIZZIE JOHNSON, | ) ) ) ) ) ) ) ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) ) |
| BRIDGESTONE FIRESTONE NORTH AMERICAN TIRE, LLC; GENERAL MOTORS CORPORATION; TUGALOO SPORTS VANS, INC.; PHIL OWENS USED CARS, INC.; MAYPOLE CHEVROLET, INC.; O&M MOTOR CO.; MAY BROTHERS, INC.; TEMPLE PRODUCTS OF INDIANA, INC.; TRW VEHICLE SAFETY SYSTEMS, INC. AND/OR TRW AUTOMOTIVE U.S., LLC; BENDIX COMMERCIAL VEHICLE SYSTEMS, LLC; et al., | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

CIVIL ACTION NO.: CV-05-111

ORAL ARGUMENT REQUESTED.

## DEFENDANT MAYPOLE CHEVROLET, INC.'S REBUTTAL TO PLAINTIFFS' RESPONSE TO MAYPOLE CHEVROLET'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

COMES NOW the Georgia corporation, Maypole Chevrolet, Inc. (hereinafter "Maypole Chevrolet"), appearing specially and specifically without submitting to the jurisdiction of this Court, and replies to Plaintiffs' response to Maypole Chevrolet's motion to dismiss for lack of personal jurisdiction.

On March 13, 2006, Plaintiffs, by and through counsel, served a response to Maypole Chevrolet's motion to dismiss for lack of personal jurisdiction. The response did

EXHIBIT
3

not contain any affidavits or amended pleadings that in any way alleged or set forth facts that supported a colorable claim of jurisdiction against Defendant Maypole Chevrolet. Concerning personal jurisdiction, Plaintiffs have only made allegations based upon their attenuated or unsupported assertions of personal jurisdiction and that were based on conjecture and surmise. In very recent cases, the Alabama Supreme Court has been clear in its holdings that such bare allegations of jurisdiction will not defeat a motion to dismiss on the basis of personal jurisdiction where the defendant has filed an affidavit that sets forth a *prima facie* showing that personal jurisdiction does not exist over the defendant, and the Alabama Supreme Court has further held that such allegations by a plaintiff in his/her complaint and/or brief will not be sufficient to allow the Court to order limited discovery on the basis of personal jurisdiction. See, Ex parte John Bufkin, _____ So.2d _____, 2006 WL 307831 (Ala. 2006); Ex parte United Insurance Companies, Inc., _____ So.2d _____, 2006 WL 307830 (Ala. 2006); Ex parte Unitrin, Inc., _____ So.2d _____, 2005 WL 1040834 (Ala. 2005); Ex parte Covington Pike Dodge, Inc., 904 So.2d 226 (Ala. 2004); Ex parte Troncalli Chrysler Plymouth Dodge, Inc., 876 So.2d 459 (Ala. 2003).

In their brief, Plaintiffs argue that the Alabama Supreme Court's recent decisions set forth in Ex parte Bufkin, supra, and in Ex parte United Insurance Companies, supra, are controlling and stand for the proposition that a plaintiff may be entitled to conduct limited discovery on the issue of personal jurisdiction before a dismissal may be entered by the Court for lack of personal jurisdiction. Plaintiffs also argue in their brief that Ex parte Covington Pike Dodge, Inc., supra, has no application to the case before this Court. Both of these assertions by Plaintiffs are incorrect under the facts of this case. The very recent opinions issued in February 2006 by the Alabama Supreme Court in both Ex parte Bufkin

2

and Ex parte United Insurance Companies, Inc., cite with approval the holdings issued by the Alabama Supreme Court in Ex parte Covington Pike Dodge, Inc., supra; Ex parte Unitrin, Inc., supra; and Ex parte Troncalli Chrysler Plymouth Dodge, Inc. The Alabama Supreme Court, in both the Bufkin case and in the United Insurance Companies case, however, distinguished those cases and permitted limited discovery on the issue of jurisdiction because the plaintiffs in those cases had set forth or pled sufficient facts to show a colorable claim of jurisdiction which supported the Court's allowance of limited discovery.

In this case, Plaintiffs have not made any allegations of facts that tend to prove that Defendant Maypole Chevrolet had any contacts with the State of Alabama that would be sufficient to confer personal jurisdiction over this Defendant. The record that is before this Court, makes more than a *prima facie* showing that this Court does not have special jurisdiction or general jurisdiction over Maypole Chevrolet. It must be noted that it is undisputed that Maypole Chevrolet did not sell the vehicle in question to the Plaintiffs or to Plaintiffs' deceased, and Maypole Chevrolet sold the vehicle in the State of Georgia. In Ex parte Bufkin limited discovery was allowed because allegations and evidence were submitted that showed that Defendant Bufkin had an agency relationship or was engaged in a joint venture with the owner of the truck that was involved in the motor vehicle accident. Evidence was also submitted to the Court through Bufkin's affidavit that he had visited Alabama during the month in which the accident occurred. The Court held that these facts alone were not sufficient to establish personal jurisdiction, but the facts were sufficient to allow limited discovery on the issue of personal jurisdiction.

3

In Ex parte United Insurance Companies, Inc., supra, the Alabama Supreme Court held that the plaintiffs' very specific allegations concerning a civil conspiracy between the defendants was sufficient to allow limited discovery. The Court held that it was clear that the plaintiffs' complaint in the United Insurance Companies case contained more than bald speculation and conclusionary statements that the petitioners were involved in a conspiracy directed at the State of Alabama. In that case, the plaintiff pled in detail the corporate relationship of the defendants and the role each defendant allegedly played in the alleged civil conspiracy directed at the State of Alabama.

All of the aforementioned cases cite to the decision of the Alabama Supreme Court issued in Ex parte Troncalli Chrysler Plymouth Dodge, Inc., 876 So.2d 459 (Ala. 2003). It should be noted that both the Ex parte Covington Pike Dodge, Inc., and the Ex parte Troncalli Chrysler Plymouth Dodge, Inc., cases involve the sale of motor vehicles. Thus, Plaintiffs' assertion that these cases are not applicable to the case presently before this Court, which involves the sale of a motor vehicle, is extremely difficult to comprehend.

In Ex parte Troncalli Chrysler Plymouth Dodge, Inc., which is the leading case on this subject, the Alabama Supreme Court held that the trial court did not have jurisdiction over an out of state automobile dealer, even though the car was purchased from an Alabama automobile dealer through the use of a computer database locator. In that particular case, the plaintiff actually purchased a truck from an Alabama dealership who obtained the vehicle from a Georgia dealership through the use of the manufacturer's computer database locator. In Troncalli plaintiff's complaint even alleged a conspiracy to commit fraud, bad faith, misrepresentation and breach of contract. Despite these allegations, the Alabama Supreme Court held that the courts of Alabama did not have

4

personal jurisdiction over the defendant automobile dealer and that the allegations of plaintiff's complaint did not set forth sufficient facts to permit jurisdictional discovery. The Alabama Supreme Court specifically noted that it was well established that a plaintiff does not enjoy automatic rights to discovery pertaining to personal jurisdiction in every case. The Alabama Supreme Court reached similar holdings in Ex parte Unitrin, Inc., supra, and Ex parte Covington Pike Dodge, Inc., supra. All of these cases were cited with approval in the Bufkin and United Insurance Companies cases. The Alabama Supreme Court specifically ordered in Troncalli that the trial court was to vacate its order denying Troncalli's motion to dismiss and further ordered the dismissal of the complaint against Troncalli. It is further interesting to note that although Troncalli is cited and quoted extensively in the Bufkin and United Insurance Companies decisions, Plaintiffs have made no attempt to distinguish the Troncalli decision from the case before this Court.

Finally, it should be noted that all decisions by the Alabama Supreme Court require the plaintiff to go forward to produce evidence after a *prima facie* showing of lack of personal jurisdiction is made. Maypole Chevrolet has made this showing by the affidavit of Judd Worley. Plaintiffs argue in rebuttal that somehow the affidavit filed by Maypole Chevrolet leaves open the question of work being performed on the van before it left the State of Georgia. Plaintiffs also argue that there is a question as to whether Defendants committed some act that exacerbated the uncrashworthy condition of the van or whether Defendants had some agreement with Tugaloo Customs. Plaintiffs then state that it is possible that Maypole Chevrolet may have committed some act or may be guilty of some error or omission that somehow created a defective or unreasonably dangerous condition in the van. Although Maypole Chevrolet certainly denies that it is guilty of any of these

5

possibilities raised by Plaintiffs in their brief, those questions are not directed to the question of personal jurisdiction.  In order to sue Maypole Chevrolet in the State of Alabama, even if there was a possibility of a viable claim against Maypole Chevrolet, Plaintiffs must show that Maypole Chevrolet engaged in activities or practices that were directed at the State of Alabama that were sufficient to meet the minimum contacts requirements of personal jurisdiction.  Plaintiffs have not set forth even a possibility, much less allegations based on fact, that would meet the test of establishing a claim of personal jurisdiction as to Maypole Chevrolet.  Thus, all of the cases that are cited in Plaintiffs' brief and in Maypole Chevrolet's briefs mandate that the Court: (1) deny Plaintiffs' request for limited discovery; and (2) enter an order of dismissal of Defendant Maypole Chevrolet for lack of personal jurisdiction.

RESPECTFULLY SUBMITTED this the 15th day of March , 2006.

ROGER S. MORROW (MOR032)
One of the Attorneys for Defendant
Maypole Chevrolet, Inc.

OF COUNSEL:
MORROW, ROMINE & PEARSON, P.C.
P.O. Box 4804
Montgomery, AL 36103-4804
Telephone:  334-262-7707
Facsimile:   334-262-7742

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing upon the following by placing a copy of same in the United States mail, first class postage prepaid, and via facsimile transmission, on this the 15th day of _March_____, 2006.

Hon. Edward P. Kendall
Hon. Michael G. Strickland
Blaine C. Stevens, Esq.
STRICKLAND & KENDALL, LLC
420 South Lawrence Street
P.O. Box 99
Montgomery, AL 3611-0099
(Fax No.: 334-269-3239)
**Attorney for Plaintiffs**

Hon. Will R. Kelly
P.O. Drawer 937
Hayneville, AL 36040-0937
(Fax No.: 334-548-5118)
**Attorney for Plaintiffs**

Hon. Louis C. Rutland
Hon. L. Cooper Rutland, Jr.
RUTLAND & BRASWELL
208 N. Prairie Street
P.O. Box 551
Union Springs, AL 36089-0551
(Fax No.: 334-738-4774)
**Attorney for Defendant TRW Vehicle
Safety Systems, Inc.**

Hon. Jack E. Little, Jr.
PILLSBURY, WINTHROP, SHAW &
PITTMAN, LLP
2 Houston Center
909 Fannin, 22nd Floor
Houston, TX 77010
(Fax No.: 713-425-7373)
**Attorney for Defendant TRW Vehicle
Safety Systems, Inc.**

Hon. Hope T. Cannon
BRADLEY, ARANT, ROSE & WHITE, LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203
(Fax No.: 205-488-6722)
**Attorney for Defendant Bridgestone
Firestone North American Tire**

Hon. Jay S. Tuley
NIX, HOLTSFORD, GILLILAND,
HIGGINS & HITSON, P.C.
4001 Carmichael Road, Suite 300
P.O. Box 4128
Montgomery, AL 36103-4128
(Fax No.: 334-215-7101)
**Attorney for Defendant May Brothers,
Inc.**

Hon. M. Christian King
LIGHTFOOT, FRANKLIN & WHITE, LLC
400 20th Street North
Birmingham, AL 35203
(Fax No.: 205-581-0799)
**Attorney for Defendant General Motors
Corporation**

Hon. Ronald G. Davenport
RUSHTON, STAKELY, JOHNSTON &
GARRETT, P.A.
184 Commerce Street
P.O. Box 270
Montgomery, AL 36101-0270
(Fax No.: 334-262-6277)
**Attorney for Defendant Temple
Products of Indiana**

Hon. William A. Mudd
SADLER SULLIVAN
400 20th Street North, Suite 2500
Birmingham, AL 35203
(Fax No.: 205-263-7127)
**Attorney for Defendant Phil Owens
Used Cars**

Hon. Larry W. Harper
Hon. Keith Pflaum
PORTERFIELD, HARPER, MILLS &
MOTLOW, P.A.
22 Inverness Center Parkway
P.O. Box 530790
Birmingham, AL 35253-0790
(Fax No.: 205-980-5001)
**Attorneys for Defendant Bendix
Commercial Vehicle Systems, LLC**

Hon. Robert D. Hays
Hon. L. Frank Coan, Jr.
Hon. Robert J. Arrington, Jr.
KING & SPALDING, LLC
1180 Peachtree Street
Atlanta, GA 30309
(Fax No.: 404-572-5100)

Hon. J. Kenneth Wainwright
HARVEY KRUSE, P.C.
1050 Wilshire Drive, Suite 320
Troy, MI 48084-1526
(Fax No.: 248-649-2316)

OF COUNSEL

Westlaw.

2006 WL 307831
--- So.2d ----, 2006 WL 307831 (Ala.)
**(Cite as: 2006 WL 307831 (Ala.))**

Only the Westlaw citation is currently available.

NOT YET RELEASED FOR PUBLICATION.

Supreme Court of Alabama.
**Ex parte John BUFKIN.**
(In re George Roberts
v.
John **Bufkin** and Byron Williamson).
**1041890.**

Feb. 10, 2006.

**Background:** Plaintiff, an Alabama resident, filed a negligence action against truck driver and truck owner after driver allegedly injured plaintiff in Tennessee by backing a truck over a motorcycle plaintiff was riding, and truck driver filed a motion to dismiss for lack of personal jurisdiction. The Circuit Court, Sumter County, CV-04-128, denied the motion. Truck driver filed a petition for a writ of mandamus.

**Holdings:** The Supreme Court, Lyons, J., held that:
(1) the Supreme Court could not determine whether truck driver, a resident of Mississippi, had sufficient contacts with Alabama to allow the trial court to determine that it had personal jurisdiction over truck driver, and
(2) plaintiff was entitled to conduct limited discovery on the issue of personal jurisdiction.
Petition denied.

**[1] Mandamus** ☞1

250k1 Most Cited Cases
The writ of mandamus is a drastic and extraordinary writ, to be issued only when there is: (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.

**[2] Appeal and Error** ☞893(1)
30k893(1) Most Cited Cases
An appellate court considers de novo a trial court's judgment on a party's motion to dismiss for lack of personal jurisdiction.

**[3] Pretrial Procedure** ☞679
307Ak679 Most Cited Cases
In considering a motion to dismiss for want of personal jurisdiction, a court must consider as true the allegations of the plaintiff's complaint not controverted by the defendant's affidavits, and where the plaintiff's complaint and the defendant's affidavits conflict, the court must construe all reasonable inferences in favor of the plaintiff. Rules Civ.Proc., Rules 12, 12(b)(2).

**[4] Pretrial Procedure** ☞685
307Ak685 Most Cited Cases
If the defendant makes a prima facie evidentiary showing that the court has no personal jurisdiction, the plaintiff is then required to substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof, and he may not merely reiterate the factual allegations in the complaint.

**[5] Constitutional Law** ☞305(5)
92k305(5) Most Cited Cases

**[5] Constitutional Law** ☞305(6)
92k305(6) Most Cited Cases
A state has jurisdiction over a person or corporation so long as its long-arm statute reaches the person or corporation and the state's jurisdiction comports with the requirements of due process. U.S.C.A. Const.Amend. 14.

**[5] Corporations** ☞665(.5)
101k665(.5) Most Cited Cases
A state has jurisdiction over a person or corporation so long as its long-arm statute reaches the person or corporation and the state's jurisdiction comports with the requirements of due process. U.S.C.A. Const.Amend. 14.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2006 WL 307831
--- So.2d ----, 2006 WL 307831 (Ala.)
**(Cite as: 2006 WL 307831 (Ala.))**

**[5] Courts** ☞12(2.1)
106k12(2.1) Most Cited Cases
A state has jurisdiction over a person or corporation so long as its long-arm statute reaches the person or corporation and the state's jurisdiction comports with the requirements of due process. U.S.C.A. Const.Amend. 14.

**[6] Constitutional Law** ☞305(5)
92k305(5) Most Cited Cases
The Due Process Clause of the Fourteenth Amendment permits a forum state to subject a nonresident defendant to jurisdiction in its courts only when that defendant has had minimum contacts with the forum state. U.S.C.A. Const.Amend. 14.

**[7] Courts** ☞12(2.5)
106k12(2.5) Most Cited Cases

**[7] Courts** ☞12(2.10)
106k12(2.10) Most Cited Cases
Two types of contacts can form a basis for personal jurisdiction: general contacts and specific contacts; general contacts, which give rise to general personal jurisdiction, consist of the defendant's contacts with the forum state that are unrelated to the cause of action and that are both continuous and systematic, and specific contacts, which give rise to specific jurisdiction, consist of the defendant's contacts with the forum state that are related to the cause of action.

**[8] Courts** ☞12(2.5)
106k12(2.5) Most Cited Cases
Although the defendant's related contacts need not be continuous and systematic, when determining whether a court has personal jurisdiction, they must rise to such a level as to cause the defendant to anticipate being haled into court in the forum state.

**[9] Courts** ☞12(5)
106k12(5) Most Cited Cases
The Supreme Court could not determine whether truck driver, a resident of Mississippi, had sufficient contacts with Alabama to allow the trial court to determine that it had personal jurisdiction over truck driver, in negligence action initiated by Alabama resident against truck driver and truck owner; accident occurred in

Tennessee, and affidavits of driver and owner, an Alabama resident, did not establish the nature of the business relationship between owner and driver.

**[10] Pretrial Procedure** ☞36.1
307Ak36.1 Most Cited Cases
Plaintiff, a resident of Alabama, was entitled to conduct limited discovery on the issue of personal jurisdiction, during negligence action against truck driver, a resident of Mississippi, and truck owner, a resident of Alabama, after driver backed truck over plaintiff's motorcycle; plaintiff alleged that driver was the agent, servant, or employee of owner and/or was involved in a joint venture with owner, and driver admitted in his affidavit that he visited Alabama during the month in which the accident occurred.

LYONS, Justice.

*1 George Roberts sued John Bufkin and Byron Williamson in the Sumter Circuit Court. Bufkin filed a motion to dismiss on the basis that the trial court lacked personal jurisdiction over him. The trial court denied that motion, and Bufkin filed this petition for a writ of mandamus. We deny the petition.

*I. Facts and Procedural History*
According to Roberts's complaint, on September 12, 2003, he was permanently injured and his property damaged when Bufkin backed a truck over the motorcycle Roberts was riding. The accident occurred in Fayetteville, Tennessee. Bufkin is a resident of Mississippi. Williamson, who owns the truck Bufkin was driving at the time of the accident and who is also a defendant in the case, is a resident of Alabama, as is Roberts, the plaintiff. Williamson was not present at the time of the accident. Roberts alleged negligence and wantonness on the part of Bufkin and negligent entrustment on the part of Williamson.

Bufkin filed with the trial court a motion to dismiss, arguing that the court lacked personal jurisdiction over him. Williamson filed a motion for a summary judgment, setting forth defenses to Roberts's negligent-entrustment claim. The trial court denied Bufkin's motion to dismiss and reserved judgment on Williamson's summary-judgment motion until discovery

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2006 WL 307831
--- So.2d ----, 2006 WL 307831 (Ala.)
**(Cite as: 2006 WL 307831 (Ala.))**

was completed. Bufkin then filed this petition for the writ of mandamus in which he argues that the trial court erred in denying his motion to dismiss for lack of personal jurisdiction.

## II. Standard of Review

[1][2][3][4] " 'The writ of mandamus is a drastic and extraordinary writ, to be "issued only when there is: 1) a clear legal right in the petitioner to the order sought; 2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; 3) the lack of another adequate remedy; and 4) properly invoked jurisdiction of the court." *Ex parte United Serv. Stations, Inc.*, 628 So.2d 501, 503 (Ala.1993); see also *Ex parte Ziglar,* 669 So.2d 133, 134 (Ala.1995).' *Ex parte Carter,* [807 So.2d 534,] 536 [ (Ala.2001) ]." *Ex parte McWilliams,* 812 So.2d 318, 321 (Ala.2001). "An appellate court considers de novo a trial court's judgment on a party's motion to dismiss for lack of personal jurisdiction." *Elliott v. Van Kleef,* 830 So.2d 726, 729 (Ala.2002).

" ' "In considering a Rule 12(b)(2), Ala. R. Civ. P., motion to dismiss for want of personal jurisdiction, a court must consider as true the allegations of the plaintiff's complaint not controverted by the defendant's affidavits, *Robinson v. Giarmarco & Bill, P.C.,* 74 F.3d 253 (11th Cir.1996), and *Cable/Home Communication Corp. v. Network Productions, Inc.,* 902 F.2d 829 (11th Cir.1990), and 'where the plaintiff's complaint and the defendant's affidavits conflict, the ... court must construe all reasonable inferences in favor of the plaintiff.' *Robinson,* 74 F.3d at 255 (quoting *Madara v. Hall,* 916 F.2d 1510, 1514 (11th Cir.1990))." '

*2 "*Wenger Tree Serv. v. Royal Truck & Equip., Inc.,* 853 So.2d 888, 894 (Ala.2002) (quoting *Ex parte McInnis,* 820 So.2d 795, 798 (Ala.2001)). However, if the defendant makes a prima facie evidentiary showing that the Court has no personal jurisdiction, 'the plaintiff is then required to substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof, and he may not merely reiterate the factual allegations in the complaint.' *Mercantile Capital, LP v. Federal Transtel, Inc.,* 193 F.Supp.2d 1243, 1247 (N.D.Ala.2002)(citing *Future Tech Today, Inc. v. OSF Healthcare Sys.,* 218 F.3d 1247, 1249 (11th Cir.2000)). See also *Hansen v. Neumueller GmbH,* 163 F.R.D. 471, 474-75 (D.Del.1995)('When a defendant files a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(2), and supports that motion with affidavits, plaintiff is required to controvert those affidavits with his own affidavits or other competent evidence in order to survive the motion.')(citing *Time Share Vacation Club v. Atlantic Resorts, Ltd.,* 735 F.2d 61, 63 (3d Cir.1984))." *Ex parte Covington Pike Dodge, Inc.,* 904 So.2d 226, 229-30 (Ala.2004).

## III. Analysis
### A.

[5] "A state has jurisdiction over a person or corporation so long as its 'long-arm statute' reaches the person or corporation and the state's jurisdiction comports with the requirements of due process." *Leithead v. Banyan Corp.,* [Ms. 1040688, Sept. 23, 2005] --- So.2d ----, ---- (Ala.2005). Rule 4.2, Ala. R. Civ. P., Alabama's long-arm rule, provides:

"An appropriate basis exists for service of process outside of this state upon a person or entity in any action in this state when the person or entity has such contacts with this state that the prosecution of the action against the person or entity in this state is not inconsistent with the constitution of this state or the Constitution of the United States...."

Therefore, Alabama's long-arm rule extends the personal jurisdiction of Alabama courts to the limits of due process permissible under the Fourteenth Amendment to the United States Constitution and Art. I, § 13, Constitution of Alabama of 1901. See *Ex parte Alloy Wheels Int'l,* 882 So.2d 819, 822 (Ala.2003).

[6][7][8] "The Due Process Clause of the Fourteenth Amendment permits a forum state to subject a nonresident defendant to jurisdiction in its courts only when that defendant has had 'minimum contacts' with the forum state." *Ex parte Full Circle Distrib., L.L.C.,* 883 So.2d 638, 644 (Ala.2003) (citing *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)).

" 'Two types of contacts can form a basis for personal jurisdiction: general contacts and specific contacts. General contacts, which give rise to general personal jurisdiction, consist of the defendant's contacts with

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2006 WL 307831
--- So.2d ----, 2006 WL 307831 (Ala.)
**(Cite as: 2006 WL 307831 (Ala.))**

the forum state that are unrelated to the cause of action and that are both "continuous and systematic." *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 n. 9, 415, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)*; [citations omitted]. Specific contacts, which give rise to specific jurisdiction, consist of the defendant's contacts with the forum state that are related to the cause of action. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472-75, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Although the related contacts need not be continuous and systematic, they must rise to such a level as to cause the defendant to anticipate being haled into court in the forum state. *Id.'*

**\*3** "*Ex parte Phase III Constr., Inc.,* 723 So.2d 1263, 1266 (Ala.1998) (Lyons, J., concurring in the result). Furthermore, this Court has held that, for specific *in personam* jurisdiction, there must exist 'a clear, firm nexus between the acts of the defendant and the consequences complained of.' *Duke v. Young,* 496 So.2d 37, 39 (Ala.1986). See also *Ex parte Kamilewicz,* 700 So.2d 340, 345 n. 2 (Ala.1997)." *Elliott,* 830 So.2d at 730-31.

[9] Roberts argues that the trial court has specific personal jurisdiction over **Bufkin,** focusing on **Bufkin's** contacts with Alabama that are related to the underlying cause of action. According to Roberts's complaint, "[a]t the time of the accident complained of, **[Bufkin]** was the agent, servant or employee of [Williamson] and/or was involved in a joint venture with [Williamson]." According to Williamson's summary-judgment motion, Williamson's truck, being driven by **Bufkin** at the time of the accident involving Roberts, had a horse trailer attached to it when **Bufkin** backed over Roberts's motorcycle, a fact **Bufkin** admits in his reply brief. In an affidavit submitted to the trial court, **Bufkin** concedes that, at some point in September 2003, the month in which the accident occurred in Tennessee, **Bufkin** was present in Alabama.

We have recently reiterated the principle that " ' "[t]he plaintiff bears the burden of proving the court's personal jurisdiction over the defendant." *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.,* 290 F.3d 42, 50 (1st Cir.2002).' " *Ex parte Troncalli Chrysler*

*Plymouth Dodge, Inc.,* 876 So.2d 459, 463 (Ala.2003) (quoting *Ex parte Dill, Dill, Carr, Stonbraker & Hutchings, P.C.,* 866 So.2d 519, 525 (Ala.2003)). While affidavits filed by **Bufkin** and Williamson do not contradict the allegations of agency contained in Roberts's complaint, based on the limited facts before us on this petition for the writ of mandamus, we cannot determine the nature of the alleged business relationship between **Bufkin** and Williamson; therefore, we cannot conclude that **Bufkin's** contacts with Alabama are such that the trial court could have found, at this stage of the proceeding, that Roberts had established that that court had personal jurisdiction over **Bufkin.** However, if Roberts is entitled to conduct further discovery on the issue of personal jurisdiction, our inability to find personal jurisdiction based on the facts presently before us does not warrant our issuing the writ of mandamus and instructing the trial court to dismiss all claims against Bufkin.

*B.*

[10] Roberts contends that before a final determination is made regarding personal jurisdiction as to Bufkin, Roberts is entitled to limited discovery to investigate facts relevant to that issue. Roberts points out that Bufkin has refused to respond to discovery requests, causing Roberts to file a motion to compel discovery. There is no indication that the trial court has ruled on Roberts's motion to compel. Roberts contends that, while he believes that **Bufkin** and Williamson were involved in some sort of business relationship at the time of the accident, which is the reason **Bufkin** was driving Williamson's truck, he is unable to confirm that belief because **Bufkin** has refused to respond to Roberts's discovery requests.

**\*4** In *Ex parte Troncalli Chrysler Plymouth Dodge, Inc.,* a case involving discovery on the question of jurisdiction, this Court said:

" ' "It is well established that a ... court has the power to require a defendant to respond to discovery requests relevant to his or her motion to dismiss for lack of jurisdiction." ' *Andersen v. Sportmart, Inc.,* 179 F.R.D. 236, 241 (N.D.Ind.1998) (quoting *Ellis v. Fortune Seas, Ltd.,* 175 F.R.D. 308, 311 (S.D.Ind.1997)). 'However, it is also well established

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2006 WL 307831
--- So.2d ----, 2006 WL 307831 (Ala.)
**(Cite as: 2006 WL 307831 (Ala.))**

that a plaintiff does not enjoy an automatic right to discovery pertaining to personal jurisdiction in every case.' *Id.* '[T]o be permitted jurisdictional discovery, [a] plaintiff must at least *allege facts* that would support a *colorable claim* of jurisdiction.' *Schenck v. Walt Disney Co.,* 742 F.Supp. 838, 840 n. 1 (S.D.N.Y.1990) (emphasis added). See also *Ellis v. Fortune Seas, Ltd.,* 175 F.R.D. 308, 312 (S.D.Ind.1997); *Hansen v. Neumueller GmbH,* 163 F.R.D. 471, 475 (D.Del.1995); *Daval Steel Prods. v. M.V. Juraj Dalmatinac,* 718 F.Supp. 159, 162 (S.D.N.Y.1989); *Rich v. KIS California, Inc.,* 121 F.R.D. 254, 259 (M.D.N.C.1988).

"A request for jurisdictional discovery must offer the court 'more than conjecture and surmise in support of [the] jurisdictional theory.' *Crist v. Republic of Turkey,* 995 F.Supp. 5, 13 (D.D.C.1998). '[The] standard is quite low, but a plaintiff's discovery request will nevertheless be denied if it is only based upon "bare," "attenuated," or "unsupported" assertions of personal jurisdiction, or when a plaintiff's claim appears to be "clearly frivolous." ' *Andersen,* 179 F.R.D. at 242."

876 So.2d at 467-68.

In *Troncalli,* we held that the plaintiff's discovery request presented "nothing but 'conjecture and surmise' regarding the existence of general jurisdiction," 876 So.2d at 468, and was therefore due to be denied. Unlike the complaint in *Troncalli,* which was devoid of allegations necessary to sustain personal jurisdiction, the complaint in this proceeding alleges that "[Bufkin] was the agent, servant or employee of [Williamson] and/or was involved in a joint venture with [Williamson]." Williamson, of course, is a resident of Alabama. Bufkin admits in his affidavit that he visited Alabama during the month in which the accident occurred, and it is undisputed that Bufkin was driving Williamson's truck at the time of the accident. Therefore, in contrast to the situation presented this Court in *Troncalli,* Roberts has "at least alleg[ed] facts that would support a *colorable claim* of jurisdiction." 876 So.2d at 468. Limited discovery could flesh out Roberts's allegations and could lead to a conclusion that the trial court can exercise personal jurisdiction over Bufkin.

The allegations before us in this proceeding are distinguishable from those in *Troncalli,* and they justify a less restrictive approach to allowing jurisdictional discovery. We embrace the rule applicable in such circumstance as expressed in *Toys "R" Us, Inc. v. Step Two, S.A.,* 318 F.3d 446, 456 (3d Cir.2003):

   **\*5** "Although the plaintiff bears the burden of demonstrating facts that support personal jurisdiction, *Pinker* [v. *Roche Holdings Ltd.,* 292 F.3d 361, 368 (3rd Cir.2002) ], courts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is 'clearly frivolous.' *Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n,* 107 F.3d 1026, 1042 (3d Cir.1997). If a plaintiff presents factual allegations that suggest 'with reasonable particularity' the possible existence of the requisite 'contacts between [the party] and the forum state,' *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino,* 960 F.2d 1217, 1223 (3d Cir.1992), the plaintiff's right to conduct jurisdictional discovery should be sustained. "Where the plaintiff has made this required threshold showing, courts within this Circuit have sustained the right to conduct discovery before the district court dismisses for lack of personal jurisdiction. See, e.g., *In re Automotive Refinishing Paint Antitrust Litigation,* [No. 1426, July 31, 2002] (E.D.Pa. July 31, 2002) [not reported in F.Supp.2d] (denying motion to dismiss and permitting jurisdictional discovery where plaintiff made a 'threshold prima facie showing' of personal jurisdiction over Defendants'); *W. Africa Trading & Shipping Co., et al. v. London Int'l Group, et al.,* 968 F.Supp. 996, 1001 (D.N.J.1997) (denying defendant's motion to dismiss where the plaintiffs 'request for jurisdictional discovery is critical to the determination of whether [the court can] exercise personal jurisdiction over the defendant.'); *Centralized Health Systems, Inc. v. Cambridge Medical Instruments, Inc.,* [No. 89-3322, Nov. 8, 1989] (E.D.Pa. Nov. 8, 1989) [not reported in F.Supp.] (holding motion to dismiss in abeyance to permit party to take discovery on jurisdiction where distribution arrangement might satisfy minimum contacts)."

   Without affording Roberts the opportunity for limited discovery on the issue of personal jurisdiction, we will not at this stage of the proceeding grant the writ of mandamus and order Bufkin's dismissal from the action.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2006 WL 307831
--- So.2d ----, 2006 WL 307831 (Ala.)
**(Cite as: 2006 WL 307831 (Ala.))**

The petition for mandamus is therefore premature and is due to be denied.

*IV. Conclusion*

The answer to the question whether Bufkin is subject to the jurisdiction of the trial court must await further discovery. We note that there is no ruling for us to review on Roberts's pending motion to compel discovery. Nonetheless, we assume that further proceedings with respect to discovery from Bufkin will be limited to the issue of personal jurisdiction until that issue is resolved.

PETITION DENIED.

WOODALL, STUART, SMITH, and PARKER, JJ., concur.

--- So.2d ----, 2006 WL 307831 (Ala.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

2006 WL 307830
--- So.2d ----, 2006 WL 307830 (Ala.)
**(Cite as: 2006 WL 307830 (Ala.))**

Page 1

Only the Westlaw citation is currently available.

NOT YET RELEASED FOR PUBLICATION.

Supreme Court of Alabama.
**Ex parte UNITED INSURANCE COMPANIES, INC.**
(In re Patricia M. Jackson
v.
MEGA Life and Health **Insurance Company** et al.).
**Ex parte UICI Marketing, Inc.**
(In re Patricia M. Jackson
v.
MEGA Life and Health **Insurance Company** et al.).
**Ex parte United Group Service Centers, Inc.**
(In re Patricia M. Jackson
v.
MEGA Life and Health **Insurance Company** et al.).
**Ex parte Specialized Association Services, Inc.**
(In re Patricia M. Jackson
v.
MEGA Life and Health **Insurance Company** et al.).
**1041704, 1041705, 1041888 and 1041889.**

Feb. 10, 2006.

**Background:** Foreign corporations petitioned for a writ of mandamus, directing the Walker Circuit Court, No. CV-05-50, to vacate its order denying their motions to dismiss insured's claims against them for lack of personal jurisdiction.

**Holding:** The Supreme Court, Stuart, J., held that insured's complaint alleging civil conspiracy was sufficient to rebut motion to dismiss for lack of personal jurisdiction.
Writ denied.

**[1] Mandamus** ⟨⚬⟩**1**

250k1 Most Cited Cases

**[1] Mandamus** ⟨⚬⟩**43**
250k43 Most Cited Cases
A petition for a writ of mandamus is the appropriate remedy by which to challenge an interlocutory order on the issue of personal jurisdiction, and a writ will issue only upon a showing of a clear legal right in the petitioner to the order sought, an imperative duty upon the respondent to perform, accompanied by a refusal to do so, the lack of another adequate remedy, and the properly invoked jurisdiction of the court.

**[2] Appeal and Error** ⟨⚬⟩**893(1)**
30k893(1) Most Cited Cases
An appellate court considers de novo a trial court's judgment on a party's motion to dismiss for lack of personal jurisdiction.

**[3] Pretrial Procedure** ⟨⚬⟩**646**
307Ak646 Most Cited Cases
Insured's reliance on her factual allegations in her complaint against health insurer and other foreign companies, which alleged a conspiracy among the companies, was sufficient to rebut foreign companies' claim in motion to dismiss that trial court lacked personal jurisdiction, where insured's complaint contained more than bald speculation and conclusory statements that the companies were involved in a conspiracy and pled in detail the corporate relationship of the defendants and the role of each company in the alleged civil conspiracy.

**[4] Pretrial Procedure** ⟨⚬⟩**685**
307Ak685 Most Cited Cases
The appropriate response for a plaintiff who is confronted with a motion to dismiss for lack of personal jurisdiction that is supported by affidavits is to offer evidence to the contrary.

STUART, Justice.

**\*1 United Insurance Companies,** Inc. ("UICI"), UICI Marketing, Inc., **United Group Service Centers, Inc.** ("UGSC"), and Specialized Association Services, Inc. ("SAS") (hereinafter referred to collectively as "the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2006 WL 307830
--- So.2d ----, 2006 WL 307830 (Ala.)
**(Cite as: 2006 WL 307830 (Ala.))**

petitioners"), petition this Court for writs of mandamus directing the trial court to vacate its order denying their motions to dismiss Patricia M. Jackson's claims against them for lack of personal jurisdiction and to enter an order dismissing Jackson's complaint insofar as it asserts claims against them. We deny the petitions.

*Facts*

Jackson sued the petitioners; her health insurer, MEGA Life and Health **Insurance Company** ("MEGA"); and others regarding the sale and administration of her health-**insurance** certificate issued by MEGA allegedly through the combined sales and marketing efforts of UICI, UICI Marketing, MEGA, UGSC, SAS, and the National Association for the Self-Employed ("the NASE"). Apparently, Jackson became associated with the NASE, an independent, not-for-profit association formed to independently research, negotiate, and endorse unaffiliated health-insurance carriers for the benefit of the members of the NASE; based on the NASE's endorsement of the insurance offered by MEGA she purchased a MEGA insurance certificate.

According to Jackson's complaint, UICI is the parent and sole shareholder of MEGA and UICI Marketing. The NASE, which is managed by SAS and, according to Jackson, is also under the control of UICI and MEGA, endorses only MEGA insurance policies. UICI Marketing generates potential policy purchasers, like Jackson, by using the NASE's endorsement of MEGA in Internet advertising, print ads, signs, direct mail, and telemarketing. UGSC trains the NASE enrollers to approach potential leads generated by UICI Marketing. Jackson, however, alleges that the NASE enrollers, who she says are UICI agents, are actually insurance agents because, she says, the enrollment application for the NASE is an insurance application and with the completion of the application the enroller collects an "[NASE] association initiation fee" or registration fee, NASE dues, and the first month's premium payment.

Jackson further alleges that UICI is controlled by Ronald Jensen, that the NASE was established by a former business partner of Jensen's and is controlled by Jensen-family-owned businesses, and that SAS is run by Jensen's son, but controlled by Jensen and other family members. Jackson alleges that all the companies work

together to form a mechanism that allows them to avoid insurance regulations in implementing fraudulent writing of policies and pooling practices.

In her complaint, Jackson alleged claims of breach of fiduciary and trust duties, breach of contract, fraudulent suppression, unjust enrichment, civil conspiracy, fraud, breach of implied contract to procure insurance, negligence, negligence per se, wantonness, conversion, bad-faith refusal to pay and bad-faith refusal to investigate. With regard to her claim of civil conspiracy, Jackson averred:

**\*2** "78. [Jackson] hereby adopts and incorporates by reference all preceding paragraphs and further alleges:

"79. Defendants [UICI, UICI Marketing, UGSC, SAS, and MEGA] have engaged in an unlawful conspiracy to breach fiduciary duties, breach contracts and to mislead [Jackson], regarding among other things, (a) the full and true nature of the relationship between the Defendants, (b) the full and true nature of Defendants trust 'group' health coverage, (c) the full and true nature and manner in which premiums and premium increases would be determined and/or calculated for [Jackson], (d) the fact that the health insurance coverage marketed by Defendants was not a true group policy; (e) the fact that premium increases could be affected by individual claims experience, and (f) the fact that once premium increases began, the Defendants' intent, purpose and goal was to make the coverage so expensive that [Jackson] and other insureds would no longer be able to afford the premiums and thus be forced to let the policy lapse.

"80. Defendants also combined and joined in a concerted effort to formulate a fraudulent and deceitful marketing scheme which prevented [Jackson] and others from discovering the true relationship of the related Defendants and their plans to extort and later share exorbitant fees and charges passed on to NASE participants.

"81. As a direct, foreseeable and proximate result thereof, [Jackson] was caused to suffer actual damages and will suffer such damages in the future."

The petitioners moved for a dismissal of Jackson's claims pursuant to Rule 12(b)(2), Ala. R. Civ. P.,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2006 WL 307830
--- So.2d ----, 2006 WL 307830 (Ala.)
**(Cite as: 2006 WL 307830 (Ala.))**

maintaining that the trial court did not have personal jurisdiction over them. In support of their motions, the petitioners filed affidavits from officers in their companies.

The vice president of UICI averred in his affidavit that UICI is a holding company incorporated in Delaware with its principal place of business in the State of Texas; that it is the parent company of MEGA; that MEGA is a wholly owned, independently operated subsidiary of UICI; that "UICI is not an insurer and does not participate in the business of insurance"; that UICI is not registered to do business in the State of Alabama; that it has never conducted business in Alabama; that it is not required to and has never filed a tax return in Alabama; that it does not own property in Alabama; that it does not maintain any offices or a telephone listing or have any employees in Alabama; and that it had no involvement in the marketing, sale, underwriting, or administration of any insurance coverage issued to Jackson or any other resident in Alabama.

Similarly, the affidavit of the controller and treasurer of UICI Marketing averred that UICI Marketing is a Delaware corporation with its principal place of business in Texas; that it is not an insurer and does not participate in the business of insurance; that it is not registered as an insurer in Alabama; that it is not registered to do business in Alabama; that it does not pay Alabama taxes or own property in Alabama; that it has no employees in Alabama; that it does not have a telephone listing in Alabama; that it has never conducted any business in Alabama; and that it was not involved in the sale, underwriting, or administration of any insurance coverage issued to Jackson or any other Alabama resident.

**\*3** The officer for UGSC averred in her affidavit in support of UGSC's motion to dismiss that UGSC is a registered and licensed Texas staff-leasing-service company with its principal place of business in Texas; that it had not conducted business in Alabama; that it has no employees in Alabama; that it is not required to be registered, licensed, or otherwise qualified to do business in Alabama; that it is not required to file any type of tax return in Alabama; that it does not maintain

any offices in Alabama; that it does not own any property in Alabama; that it has never maintained any offices in Alabama; that it does not employ any insurance agents in Alabama; that it does not derive substantial revenue from goods, services, or products from Alabama; that it did not solicit, market, sell, issue, underwrite, or administer Jackson's insurance certificates; and that it has never solicited, marketed, sold, issued, underwritten, or administered insurance in Alabama.

The director of operations for SAS averred in her affidavit in support of SAS's motion to dismiss that SAS is a Texas corporation with its principal place of business in Texas; that it provides its clients with a number of "back office" administrative services; that it does not conduct business in Alabama; that it is not registered, licensed, or qualified to do business in Alabama; that it is not required to file any type of tax return in Alabama; that it does not have employees in Alabama; that it does not maintain an office in Alabama; that it does not own real property in Alabama; that it does not maintain a telephone listing in Alabama; that it does not have any sales representatives in Alabama; that it does not advertise its services in Alabama; that it does not derive substantial revenue from goods, services, or products consumed in Alabama; that it did not solicit, sell, issue, underwrite, or administer Jackson's insurance certificates or any other insurance certificates sold in Alabama; and that it does not control the NASE.

In response to the motions, Jackson argued that her complaint, which detailed the relationship of the petitioners with MEGA, the alleged marketing scam, and the claim of conspiracy, established personal jurisdiction. Jackson did not file an affidavit or other evidence to substantiate the factual allegations in her complaint, but she did request the opportunity to conduct discovery "to cross-examine the individuals whose affidavits have been submitted in support of the motions to dismiss and to further evidence the conspiracy that has been alleged in the complaint."

The trial court denied the petitioners' motions to dismiss. The petitioners then filed their petitions for writs of mandamus, asking this Court to direct the trial

court to vacate its order denying their motions to dismiss the complaint against them and to grant their motions to dismiss for lack of personal jurisdiction.

### Standard of Review

[1][2] "A petition for a writ of mandamus is the appropriate remedy by which to challenge an interlocutory order on the issue of personal jurisdiction, and a writ will issue only upon a showing of '(a) a clear legal right in the petitioner to the order sought, (b) an imperative duty upon the respondent to perform, accompanied by a refusal to do so, (c) the lack of another adequate remedy, and (d) the properly invoked jurisdiction of the court.' *Ex parte McInnis*, 820 So.2d 795, 798 (Ala.2001)."

*4 *Ex parte Puccio*, [Ms. 1031938, September 9, 2005] --- So.2d ----, ---- (Ala.2005). Moreover, "[a]n appellate court considers de novo a trial court's judgment on a party's motion to dismiss for lack of personal jurisdiction." *Elliott v. Van Kleef*, 830 So.2d 726, 729 (Ala.2002).

### Discussion

The petitioners contend that the trial court erred in denying their motions to dismiss because, they say, uncontroverted evidence presented through the affidavits of their officers clearly established that the trial court does not have personal jurisdiction over them.

" 'Jurisdiction is obtained over out-of-state defendants pursuant to the "long-arm" rule, Ala. R. Civ. P. 4.2(a)(2)(A)-(I).[ [FN1]] Recently, we explained:

" ' " 'A physical presence in Alabama is not a prerequisite to personal jurisdiction over a nonresident.' *Sieber v. Campbell*, 810 So.2d 641, 644 (Ala.2001). What is required, however, is that the defendant have such contacts with Alabama that it ' "should reasonably anticipate being haled into court [here]." ' *Dillon Equities v. Palmer & Cay, Inc.*, 501 So.2d 459, 462 (Ala.1986)(quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)).

" ' "Depending on the quality and quantity of the contacts, jurisdiction may be either general or specific. *Leventhal v. Harrelson*, 723 So.2d 566, 569 (Ala.1998). 'General jurisdiction applies where a

defendant's activities in the forum state are "substantial" or "continuous and systematic," regardless of whether those activities gave rise to the lawsuit.... A court has specific jurisdiction when a defendant has had few contacts with the forum state, but those contacts gave rise to the lawsuit.' *Id.*

" ' "But regardless of whether jurisdiction is alleged to be general or specific, the nexus between the defendant and the forum state must arise out of ' "an action of the defendant [that was] purposefully directed toward the forum State." ' *Elliott [v. Van Kleef* ], 830 So.2d [726] at 731 [ (Ala.2002) ] (quoting *Asahi Metal Indus. Co. v. Superior Court of California*, 480 U.S. 102, 112, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987)). 'This purposeful-availment requirement assures that a defendant will not be haled into a jurisdiction as a result of " 'the unilateral activity of another person or a third person.' " ' *Elliott*, 830 So.2d at 731 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985))."

" '*Ex parte Dillf, Dill, Carr, Stonbraker & Hutchings, P.C.]*, 866 So.2d [519,] 525 [ (Ala.2003) ].'

"[*Ex parte Troncalli Chrysler Plymouth Dodge, Inc.*,] 876 So.2d [459,] 463 [ (Ala.2003) ].

"This Court recently summarized a plaintiff's burden, once the defendant has made a prima facie showing that the court lacked personal jurisdiction as to the defendant.

" '[I]f the defendant makes a prima facie evidentiary showing that the Court has no personal jurisdiction, "the plaintiff is then required to substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof, and he may not merely reiterate the factual allegations in the complaint." *Mercantile Capital, LP v. Federal Transtel, Inc.*, 193 F.Supp.2d 1243, 1247 (N.D.Ala.2002) (citing *Future Tech. Today, Inc. v. OSF Healthcare Svs.*, 218 F.3d 1247, 1249 (11th Cir.2000)). See also *Hansen v. Neumueller GmbH*, 163 F.R.D. 471, 474-75 (D.Del.1995) ("When a defendant files a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(2) [i.e., for lack of personal jurisdiction], and supports that motion with affidavits, plaintiff is required to controvert those affidavits with his own affidavits or other competent evidence in order to survive the motion.")(citing *Time Share*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2006 WL 307830
--- So.2d ----, 2006 WL 307830 (Ala.)
**(Cite as: 2006 WL 307830 (Ala.))**

*Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 63 (3d Cir.1984)).'

**\*5** "*Ex parte Covington Pike Dodge, Inc.*, 904 So.2d 226, 229-30 (Ala.2004) (footnote omitted)."

*Ex parte Unitrin, Inc.*, [Ms. 1040834, July 8, 2005] --- So.2d ----, ---- (Ala.2005).

By submission of their affidavits in support of their motions to dismiss, the petitioners made a prima facie evidentiary showing that the trial court lacked personal jurisdiction; therefore, the burden then shifted to Jackson to present competent proof to substantiate her allegation that the trial court had personal jurisdiction over the petitioners. Jackson, however, did not present any proof to support her jurisdictional allegation; she argued that the particularity and specificity with which she pleaded her claim that a civil conspiracy existed among the petitioners adequately established the trial court's personal jurisdiction over them.

The petitioners argue that because Jackson did not present any evidence to substantiate her jurisdictional allegation, the trial court erred in refusing to dismiss Jackson's claims against them. The petitioners maintain that the application of our holding in ***Ex parte Unitrin*** requires a finding that the trial court lacks personal jurisdiction over them. In ***Ex parte Unitrin,*** the holder of an **insurance** policy sued Unitrin and others claiming that they had fraudulently collected premiums on a lapsed life-**insurance** policy. Unitrin moved to dismiss the claims against it because, it said, the trial court lacked personal jurisdiction. In support of its motion to dismiss, Unitrin attached an affidavit from its vice president, in which the vice president stated that Unitrin was not qualified to do business in any state other than Illinois, that it did not conduct business in Alabama, that it did not own real or personal property in Alabama, that it did not maintain any office or have any employees in Alabama, and that it did not receive any portion of the premiums collected by United, a wholly owned subsidiary of Unitrin that is a separate entity from Unitrin. This Court did not find the following evidence to be competent proof to substantiate the jurisdictional allegations in the complaint: the policyholder's submission of Unitrin's 2003 annual report; a printout of information from the Web site of the Alabama secretary of state indicating that a

corporate name had been reserved for an entity listed as Unitrin Auto and Home Insurance and located at Unitrin's Chicago address; and another printout of information from the same Web site indicating that the reporting address for Unitrin Internal Audit Services, Inc., reflected in Unitrin's annual reports for 2003 and 2004 was the same address listed for Unitrin. After thoroughly reviewing the documents, this Court concluded that the information relied upon by the policyholder did not refer to Unitrin, but to three wholly owned subsidiaries of Unitrin's and held that the trial court had erred in denying Unitrin's motion to dismiss. Specifically, this Court held that "doing business through a wholly owned subsidiary does not, in and of itself, constitute doing business by the parent corporation." --- So.2d at ----.

**\*6** **[3]** In her answer and brief to this Court, Jackson argues that the particularity with which she pleaded her civil-conspiracy claim establishes that the petitioners are doing business in Alabama and, consequently, that the trial court has personal jurisdiction over the petitioners. Essentially, she argues that while the facts presented here and in *Unitrin* are similar, the facts in *Unitrin* are distinguishable because, she says, *Unitrin* did not involve a conspiracy among the defendants.

**[4]** The appropriate response for a plaintiff who is confronted with a motion to dismiss for lack of personal jurisdiction that is supported by affidavits is to offer evidence to the contrary. See *Ex parte Covington Pike Dodge, Inc.*, 904 So.2d 226, 230 (Ala.2004). Jackson did not do so. However, under the facts of this case, especially in light of the specificity with which Jackson pleaded her claim of civil conspiracy and her request at the time she opposed the motions for the opportunity to conduct further discovery, the petitioners did not establish a clear legal right to have the complaint against them dismissed.

In *Ex parte McInnis,* 820 So.2d 795, 806-07 (Ala.2001), this Court addressed the issue whether a claim of civil conspiracy adequately established a court's personal jurisdiction over corporate agents, stating:

" ' "Bald speculation" or a "conclusionary statement" that individuals are co-conspirators is insufficient to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

establish personal jurisdiction under a conspiracy theory. *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 787 (D.C.Cir.1983), cert. denied, 467 U.S. 1210, 104 S.Ct. 2399, 81 L.Ed.2d 355 (1984). Instead, the plaintiff must plead with particularity "the conspiracy as well as the overt acts within the forum taken in furtherance of the conspiracy." *Dooley v. United Technologies Corp.*, 786 F.Supp. 65, 78 (D.D.C.1992) (citing *Naartex*, 722 F.2d at 787 and *First Chicago Int'l v. United Exchange Co., Ltd.*, 836 F.2d 1375, 1378-79 (D.C.Cir.1988))." '

"*Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan*, 115 F.3d 1020, 1031 (D.C.Cir.1997)."

Here, Jackson did plead in detail the corporate relationship of the petitioners and the role each petitioner allegedly played in the alleged civil conspiracy. Indeed, she pleaded her facts supporting her conspiracy claim with such specificity that the petitioners were able to file affidavits in which each petitioner denied the control and involvement alleged in the civil-conspiracy claim. For example, the petitioners in the affidavits in support of their motions to dismiss refuted Jackson's allegations, stating that their companies were not insurers; that they were not in the business of insurance; and that they did not participate in the sale, underwriting, or administration of any insurance coverage to Jackson or any other resident in Alabama. These statements address Jackson's allegations of the existence of a civil conspiracy among the petitioners with such specificity that it is clear that Jackson's complaint contained more than "bald speculation" and "conclusory statements" that the petitioners were involved in a conspiracy. Therefore, Jackson's reliance on her factual allegations in the complaint did adequately rebut the petitioners' affidavits to survive the motions to dismiss to the extent that she is entitled to further discovery on personal jurisdiction.

*7 In *Ex parte Troncalli Chrysler Plymouth Dodge*, 876 So.2d 459, 467-68 (Ala.2003), this Court addressed discovery for the purpose of determining jurisdiction, stating:

" ' "It is well established that a ... court has the power to require a defendant to respond to discovery requests relevant to his or her motion to dismiss for

lack of jurisdiction." ' *Andersen v. Sportmart, Inc.*, 179 F.R.D. 236, 241 (N.D.Ind.1998) (quoting *Ellis v. Fortune Seas, Ltd.*, 175 F.R.D. 308, 311 (S.D.Ind.1997)). 'However, it is also well established that a plaintiff does not enjoy an automatic right to discovery pertaining to personal jurisdiction in every case.' *Id.* '[T]o be permitted jurisdictional discovery, plaintiff must at least *allege facts* that would support a *colorable claim* of jurisdiction.' *Schenck v. Walt Disney Co.*, 742 F.Supp. 838, 840 n. 1 (S.D.N.Y.1990) (emphasis added). See also *Ellis v. Fortune Seas, Ltd.*, 175 F.R.D. 308, 312 (S.D.Ind.1997); *Hansen v. Neumueller GmbH*, 163 F.R.D. 471, 475 (D.Del.1995); *Daval Steel Prods. v. M.V. Juraj Dalmatinac*, 718 F.Supp. 159, 162 (S.D.N.Y.1989); *Rich v. KIS California, Inc.*, 121 F.R.D. 254, 259 (M.D.N.C.1988).

"A request for jurisdictional discovery must offer the court 'more than conjecture and surmise in support of [the] jurisdictional theory.' *Crist v. Republic of Turkey*, 995 F.Supp. 5, 13 (D.D.C.1998). '[The] standard is quite low, but a plaintiff's discovery request will nevertheless be denied if it is only based upon "bare," "attenuated," or "unsupported" assertions of personal jurisdiction, or when a plaintiff's claim appears to be "clearly frivolous." ' *Andersen*, 179 F.R.D. at 242."

Jackson met this standard, and further discovery at this stage in the proceeding is warranted. We note that the trial court's denial of the petitioners' motions to dismiss for lack of personal jurisdiction is interlocutory and preliminary only. The petitioners can continue to challenge personal jurisdiction in their answers to the complaint and by motions for a summary judgment or at trial. *Ex parte McInnis*, 820 So.2d at 798.

*Conclusion*

The petitioners have failed to establish a clear legal right to have the claims against them dismissed for lack of personal jurisdiction; therefore, their petitions are denied.

**PETITIONS DENIED.**

NABERS, C.J., and LYONS, HARWOOD, WOODALL, SMITH, BOLIN, and PARKER, JJ.,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2006 WL 307830
--- So.2d ----, 2006 WL 307830 (Ala.)
**(Cite as: 2006 WL 307830 (Ala.))**

concur.

> FN1. Effective August 1, 2004, Rule 4.2 was amended to delete the "laundry list" of types of conduct that would subject an out-of-state defendant to personal jurisdiction in Alabama formerly found in subdivisions (A)-(H), retaining the "catchall" clause formerly found in subdivision (I).

--- So.2d ----, 2006 WL 307830 (Ala.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

2005 WL 1594847
--- So.2d ----, 2005 WL 1594847 (Ala.)
**(Cite as: 2005 WL 1594847 (Ala.))**

Page 1

▷
Only the Westlaw citation is currently available.

Supreme Court of Alabama.
**Ex parte UNITRIN, INC.**
(In re Darrell Ware
v.
Unitrin, Inc., et al.).
**1040834.**

July 8, 2005.

**Background:** Policyholder brought action against life insurer, its parent corporation, and agent to recover for fraudulent collection of premiums on a lapsed life insurance policy. The Circuit Court, Tallapoosa County, No. CV-04-207, Tom F. Young, J., denied parent's motion to dismiss for lack of personal jurisdiction. Parent petitioned for writ of mandamus.

**Holding:** The Supreme Court, Lyons, J., held that trial court lacked personal jurisdiction over the parent corporation.

Petition granted; writ issued.

**[1] Mandamus ⬚43**

250k43 Most Cited Cases
A petition for a writ of mandamus is the proper device by which to challenge the denial of a motion to dismiss for lack of in personam jurisdiction.

**[2] Appeal and Error ⬚893(1)**
30k893(1) Most Cited Cases
An appellate court considers de novo a trial court's judgment on a party's motion to dismiss for lack of personal jurisdiction.

**[3] Courts ⬚35**
106k35 Most Cited Cases
The plaintiff bears the burden of proving the court's personal jurisdiction over the defendant.

**[4] Courts ⬚12(2.5)**
106k12(2.5) Most Cited Cases
A physical presence in state is not a prerequisite to personal jurisdiction over a nonresident; rather, contacts with state such that defendant should reasonably anticipate being haled into court are required. Rules Civ.Proc., Rule 4.2(a)(2)(A-I) (2003).

**[5] Courts ⬚12(2.5)**
106k12(2.5) Most Cited Cases

**[5] Courts ⬚12(2.10)**
106k12(2.10) Most Cited Cases
Depending on the quality and quantity of the contacts, personal jurisdiction may be either general or specific.

**[6] Courts ⬚12(2.5)**
106k12(2.5) Most Cited Cases
"General jurisdiction" applies where a defendant's activities in the forum state are substantial or continuous and systematic, regardless of whether those activities gave rise to the lawsuit.

**[7] Courts ⬚12(2.10)**
106k12(2.10) Most Cited Cases
A court has "specific jurisdiction" when a defendant has had few contacts with the forum state, but those contacts gave rise to the lawsuit.

**[8] Courts ⬚12(2.5)**
106k12(2.5) Most Cited Cases

**[8] Courts ⬚12(2.10)**
106k12(2.10) Most Cited Cases
Regardless of whether jurisdiction is alleged to be general or specific, the nexus between the defendant and the forum state must arise out of an action of the defendant that was purposefully directed toward the forum state. Rules Civ.Proc., Rule 4.2(a)(2)(A-I) (2003).

**[9] Courts ⬚35**
106k35 Most Cited Cases
If the defendant makes a prima facie evidentiary

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 1594847
--- So.2d ----, 2005 WL 1594847 (Ala.)
**(Cite as: 2005 WL 1594847 (Ala.))**

showing that the court has no personal jurisdiction, the plaintiff is then required to substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof, and he may not merely reiterate the factual allegations in the complaint.

**[10] Corporations ⬡665(1)**
101k665(1) Most Cited Cases
Doing business through a wholly owned subsidiary does not, in and of itself, constitute doing business by the parent corporation for purposes of the long-arm rule and personal jurisdiction. Rules Civ.Proc., Rule 4.2(a)(2)(A-I) (2003).

**[11] Insurance ⬡3558**
217k3558 Most Cited Cases
Trial court lacked personal jurisdiction over life insurer's parent corporation in suit alleging fraudulent collection of premiums on a lapsed life insurance policy; even though the parent's annual report indicated business by parent in states other than state of headquarters, it did not indicate business in Alabama, the sections of report on home office staff and career agents referred to group of subsidiaries, not the parent, and subsidiaries' use of parent's mailing address was inconsequential. Rules Civ.Proc., Rule 4.2(a)(2)(A-I) (2003).

**[12] Corporations ⬡665(1)**
101k665(1) Most Cited Cases
The involvement of foreign parent corporation's employees in securing the separate corporate existence of subsidiary doing business in state was not an action of parent purposely directed toward state and did not support personal jurisdiction over parent. Rules Civ.Proc., Rule 4.2(a)(2)(A-I) (2003).

**[13] Pretrial Procedure ⬡37**
307Ak37 Most Cited Cases
Policyholder was not entitled to additional discovery on claim by life insurer's parent corporation in suit alleging fraudulent collection of premiums on a lapsed policy. William H. Brooks and Kevin E. Clark of Lightfoot, Franklin & White, L.L.C., Birmingham, for petitioner.

Randall S. Haynes and Nancy L. Eady of Morris, Haynes & Hornsby, Alexander City; and Ruth Sullivan

of Sullivan & Associates, Dadeville, for respondent.

LYONS, Justice.

*1 Unitrin, Inc., petitions this Court for a writ of mandamus directing the trial court (1) to vacate its order denying Unitrin's motion to dismiss Darrell Ware's claims against it for lack of personal jurisdiction, and (2) to enter an order dismissing Ware's complaint insofar as it asserts claims against Unitrin. We grant the petition.

*I. Factual Background*
Ware sued Unitrin, United Insurance Company of America ("United"), and Winchell Jenkins, stating claims arising out of the defendants' alleged fraudulent collection of premiums on a lapsed life-insurance policy. Unitrin moved to dismiss the claims against it on the ground of lack of personal jurisdiction. After a hearing, the trial court denied Unitrin's motion to dismiss Ware's claims against it.

Ware alleges in his complaint that United did business and had its principal place of business in Tallapoosa County during the relevant time period made the basis of the action. Ware makes no similar averment about **Unitrin**, although the complaint refers to **Unitrin**, on information and belief, as a "domestic corporation." Ware refers to Jenkins as an agent of both United and **Unitrin**. Ware alleges that United and **Unitrin** failed to conduct adequate and reasonable oversight and monitoring of Jenkins. No other allegations with respect to **Unitrin** appear in the complaint.

**Unitrin** supported its motion to dismiss with the affidavit of David F. Bengston, **Unitrin's** vice president. In his affidavit, Bengston states the following about **Unitrin:**
(1) **Unitrin** is a Delaware corporation headquartered in Chicago, Illinois;
(2) **Unitrin** is not qualified to do business in any state other than Illinois and does not conduct business in any state other than Illinois;
(3) **Unitrin** is a holding company that conducts no active business other than holding stock in certain subsidiary companies;

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 1594847
--- So.2d ----, 2005 WL 1594847 (Ala.)
**(Cite as: 2005 WL 1594847 (Ala.))**

Page 3

(4) **Unitrin** has never owned any real or personal property in Alabama;

(5) **Unitrin** has not transacted any business in Alabama;

(6) **Unitrin** has not maintained an office in Alabama and does not have any employees in Alabama;

(7) **Unitrin** has not issued a policy of insurance to anyone in Alabama, including Ware;

(8) United, a wholly owned subsidiary of **Unitrin** and a codefendant, is a corporation separate from **Unitrin** and, as such, has its own assets, directors, officers, and employees; and

(9) **Unitrin** does not receive any portion of the premiums collected by United on its insurance policies.

Ware opposed the motion to dismiss with a memorandum to which was attached a copy of **Unitrin's** annual report for 2003; a printout of information from the Web site of the office of the Alabama Secretary of State reflecting that a corporate name had been reserved for an entity listed as **Unitrin** Auto and Home Insurance Company and that the name reservation had been issued to an individual listed at **Unitrin's** Chicago address; and another printout of information from the Secretary of State's Web site reflecting that on **Unitrin's** annual reports for 2003 and 2004, the reporting address for an entity known as **Unitrin** Internal Audit Services, Inc., was the same address as that listed for **Unitrin**. Ware offered no other evidentiary materials, nor did he request the opportunity to conduct discovery limited to the issue of the trial court's jurisdiction over **Unitrin**. **Unitrin** did not object to the admissibility of any of the materials attached to Ware's memorandum. Consequently, these materials are properly before us. Cf. *Berry Mountain Mining Co. v. American Res. Ins. Co.,* 541 So.2d 4 (Ala.1989) (defendants' failure to move to strike unauthenticated documents attached to plaintiff's motion for a summary judgment waived any objections to the trial court's reliance on those documents).

*II. Governing Principles*

**\*2** [1][2][3][4][5][6][7][8] The principles applicable to review of the trial court's denial of a motion to dismiss for lack of personal jurisdiction were succinctly

summarized in *Ex parte Troncalli Chrysler Plymouth Dodge, Inc.,* 876 So.2d 459 (Ala.2003):

"The following principles are well established:

" '[A] petition for a writ of mandamus is the proper device by which to challenge the denial of a motion to dismiss for lack of *in personam* jurisdiction. See *Ex parte McInnis,* 820 So.2d 795 (Ala.2001); *Ex parte Paul Maclean Land Servs., Inc.,* 613 So.2d 1284, 1286 (Ala.1993).* " 'An appellate court considers de novo a trial court's judgment on a party's motion to dismiss for lack of personal jurisdiction.' " *Ex parte Lagrone,* 839 So.2d 620, 623 (Ala.2002) (quoting *Elliott v. Van Kleef,* 830 So.2d 726, 729 (Ala.2002)). Moreover, "[t]he plaintiff bears the burden of proving the court's personal jurisdiction over the defendant." *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.,* 290 F.3d 42, 50 (1st Cir.2002).'

"*Ex parte Dill, Dill, Carr, Stonbraker & Hutchings, P.C.,* 866 So.2d 519, 525 (Ala.2003).

"Jurisdiction is obtained over out-of-state defendants pursuant to the 'long-arm' rule, Ala. R. Civ. P. 4.2(a)(2)(A)-(I). Recently, we explained:

" ' "A physical presence in Alabama is not a prerequisite to personal jurisdiction over a nonresident." *Sieber v. Campbell,* 810 So.2d 641, 644 (Ala.2001). What *is* required, however, is that the defendant have such contacts with Alabama that it " 'should reasonably anticipate being haled into court [here].' " *Dillon Equities v. Palmer & Cay, Inc.,* 501 So.2d 459, 462 (Ala.1986) (quoting *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)).

" 'Depending on the quality and quantity of the contacts, jurisdiction may be either general or specific. *Leventhal v. Harrelson,* 723 So.2d 566, 569 (Ala.1998). "General jurisdiction applies where a defendant's activities in the forum state are 'substantial' or 'continuous and systematic,' regardless of whether those activities gave rise to the lawsuit.... A court has specific jurisdiction when a defendant has had few contacts with the forum state, but those contacts gave rise to the lawsuit." *Id.*

" 'But regardless of whether jurisdiction is alleged to be general or specific, the nexus between the defendant and the forum state must arise out of " 'an *action of the defendant [that was] purposefully*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 1594847
--- So.2d ----, 2005 WL 1594847 (Ala.)
**(Cite as: 2005 WL 1594847 (Ala.))**

directed toward the forum State.' " *Elliott [v. Van Kleef]*, 830 So.2d [726] at 731 [ (Ala.2002) ] (quoting *Asahi Metal Indus. Co. v. Superior Court of California*, 480 U.S. 102, 112, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987)). "This purposeful-availment requirement assures that a defendant will not be haled into a jurisdiction as a result of " 'the unilateral activity of another person or a third person." ' " *Elliott*, 830 So.2d at 731 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)).'

*3 "*Ex parte Dill*, 866 So.2d at 525."
876 So.2d at 463.

[9] This Court recently summarized a plaintiff's burden, once the defendant has made a prima facie showing that the court lacked personal jurisdiction as to the defendant.

"[I]f the defendant makes a prima facie evidentiary showing that the Court has no personal jurisdiction, 'the plaintiff is then required to substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof, and he may not merely reiterate the factual allegations in the complaint.' *Mercantile Capital, LP v. Federal Transtel, Inc.*, 193 F.Supp.2d 1243, 1247 (N.D.Ala.2002) (citing *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir.2000)). See also *Hansen v. Neumueller GmbH*, 163 F.R.D. 471, 474-75 (D.Del.1995) ('When a defendant files a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(2) [i.e., for lack of personal jurisdiction], and supports that motion with affidavits, plaintiff is required to controvert those affidavits with his own affidavits or other competent evidence in order to survive the motion.') (citing *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 63 (3d Cir.1984))."
*Ex parte Covington Pike Dodge, Inc.*, 904 So.2d 226, 229-30 (Ala.2004) (footnote omitted).

[10] Doing business through a wholly owned subsidiary does not, in and of itself, constitute doing business by the parent corporation. Cf. *Ex parte Baker*, 432 So.2d 1281 (Ala.1983) (comparing activities in Alabama of parent and subsidiary corporations for purposes of determining venue); see also *Thompson v.*

*Taracorp., Inc.*, 684 So.2d 152, 158 (Ala.Civ.App.1996) (concluding that trial court was correct in finding that acts of subsidiary corporation in Alabama were insufficient to impose personal jurisdiction over parent corporation).

### III. Analysis

[11] Ware contends that excerpts from Unitrin's 2003 annual report contradict Bengston's affidavit. Ware first points out that, contrary to Bengston's statement that Unitrin does not conduct business in any state other than Illinois, a close reading of the annual report reflects that Unitrin has a relationship with a North Carolina bank, and that it is traded on the New York Stock Exchange, and that it does business in Virginia, Missouri, and Mississippi. Ware also points to portions of the annual report describing Unitrin's charitable activities in states other than Illinois. Unitrin responds by stating, among other things, that these contentions do not in any way controvert Bengston's statements in his affidavit that Unitrin does not conduct business *in Alabama*, the relevant state at issue in this petition and in Unitrin's motion to dismiss. We agree.

Ware quotes from various portions of the annual report he characterizes as "detail[ing] the support provided by Unitrin to its career agency companies, including United." Ware highlights that portion of the annual report stating, "A home office staff of over 500 supports the efforts of the agents and field management. We continue to consolidate staff and streamline our internal systems, putting in place more efficient methods of processing policies and running support systems like licensing and field accounting." Unitrin responds by pointing out that the quoted statement should be read in context of the subject matter identified on the top of the page on which the quoted material appears. Specifically, the paragraph at the top of the page refers to "The Unitrin Life & Health Insurance Group" rather than Unitrin, Inc. Immediately preceding the quoted material is the statement, "The career agency companies, United Insurance, Union National, and Reliable Life, employ a field force of 2,700 career agents, to provide service to customers in their homes, and offer personalized, affordable insurance products developed for individuals and families in the lower and moderate income market in 25

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 1594847
--- So.2d ----, 2005 WL 1594847 (Ala.)
**(Cite as: 2005 WL 1594847 (Ala.))**

states." The context clearly reflects that the statements relied upon by Ware do not refer to Unitrin, but, to the contrary, refer to a group known as The Unitrin Life & Health Insurance Group, which is composed of three entities that are wholly owned subsidiaries of Unitrin.

**\*4** [12] Ware's reliance upon documents attached to his memorandum filed in the trial court in opposition to Unitrin's motion to dismiss purporting to be printouts from the Web site of the Alabama Secretary of State is also unavailing. Those documents reflect the issuance of licenses to subsidiaries of Unitrin. The fact that the subsidiaries use the same address as Unitrin is inconsequential; Ware has expressly disavowed any attempt to ground the trial court's jurisdiction over Unitrin upon an attempt to pierce the corporate veil between Unitrin and its subsidiaries. To the extent that those documents reflect the involvement of employees of Unitrin in securing the separate corporate existence of Unitrin's subsidiaries, we decline to treat that activity as sufficient to constitute an action of Unitrin purposely directed toward the State of Alabama. Were we to do otherwise, steps taken by a shareholder--a parent--to form a separate entity--a subsidiary--to do business in Alabama would constitute purposeful availment, thereby standing the rule of *Asahi Metal Industry Co. v. California*, 480 U.S. 102, 112, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987), on its head.

Ware also contends that Bengston failed to negate the possibility that stockholders of **Unitrin** reside in Alabama. We note at the outset that Ware had the burden of proof in face of **Unitrin's** prima facie showing, through Bengston's affidavit, of the absence of personal jurisdiction over it. *Ex parte Covington Pike Dodge, Inc., supra.* Because Ware has presented no evidence indicating the existence of Alabama stockholders in **Unitrin,** we pretermit any further discussion of this issue.

[13] Ware asks us for the opportunity to conduct further discovery on this issue in the event this Court should determine that he has not presented sufficient evidence to overcome the evidentiary showing made by **Unitrin.** We cannot distinguish the circumstances here presented from those in *Ex parte Covington Pike Dodge, Inc.,* in which this Court stated:

"Henderson's bare allegations that additional discovery could possibly reveal evidence establishing personal jurisdiction--coupled with her failure to seek more time in which to conduct such discovery--do not entitle her to further discovery on that issue. See *Hansen v. Neumueller GmbH,* 163 F.R.D. [471] at 476 [ (D.Del.1995) ] ('This Court is *not* bound to accept as true the allegations in plaintiff's complaint for the purposes of determining whether plaintiff has made a minimal showing so as to entitle him to discovery on the issue of personal jurisdiction.... [A] plaintiff may not rely on the bare allegations in his complaint to warrant further discovery.'); *Poe v. Babcock Int'l, plc,* 662 F.Supp. 4, 7 (M.D.Pa.1985) ('Since plaintiff has met defendants' affidavit evidence with mere speculation, plaintiff's request for an opportunity to conduct discovery on the matter must be denied.')."

904 So.2d at 233. We must decline Ware's request for further discovery.

*IV. Conclusion*

**\*5** We grant the petition and direct the trial court (1) to vacate its order denying **Unitrin's** motion to dismiss Ware's claims against it based on lack of personal jurisdiction, and (2) to enter an order dismissing the complaint insofar as it asserts claims against **Unitrin.**

PETITION GRANTED; WRIT ISSUED.

NABERS, C.J., and WOODALL, SMITH, and PARKER, JJ., concur.

--- So.2d ----, 2005 WL 1594847 (Ala.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

904 So.2d 226
904 So.2d 226
(Cite as: 904 So.2d 226)

Page 1

C

Supreme Court of Alabama.
Ex parte COVINGTON PIKE DODGE, INC.
(In re Lana M. Henderson
v.
Bud Purser, as administrator of the estate of Lester
Williams, deceased, and as
administrator of the estate of Stanley Smith,
deceased; et al.)
1030382.

Dec. 17, 2004.

**Background:**    Motorist brought action against Tennessee automobile dealership, among others, for injuries sustained in automobile collision in Alabama. The Marion Circuit Court, No. CV-02-141, Bobby R. Aderholt, J., denied dealership's motion to dismiss for lack of personal jurisdiction. Dealership filed petition for writ of mandamus directing trial court to vacate its order and to enter order of dismissal.

**Holdings:** The Supreme Court, Brown, J., held that:
(1) dealership that was incorporated in Delaware and had its principal place of business in Tennessee did not have sufficient contacts with Alabama to subject it to jurisdiction of trial court, and
(2) motorist's bare allegations that additional discovery could possibly reveal evidence establishing personal jurisdiction over dealership, coupled with her failure to seek more time in which to conduct such discovery, did not entitle her to further discovery on jurisdiction issue.
Petition granted; writ issued.

West Headnotes

**[1] Mandamus ⚖⇒43**
250k43 Most Cited Cases
A petition for a writ of mandamus is the proper device by which to challenge the denial of a motion to dismiss for lack of in personam jurisdiction.

**[2] Appeal and Error ⚖⇒893(1)**

30k893(1) Most Cited Cases
An appellate court considers de novo a trial court's judgment on a party's motion to dismiss for lack of personal jurisdiction.

**[3] Courts ⚖⇒35**
106k35 Most Cited Cases
A plaintiff bears the burden of proving the court's personal jurisdiction over the defendant.

**[4] Pretrial Procedure ⚖⇒679**
307Ak679 Most Cited Cases

**[4] Pretrial Procedure ⚖⇒685**
307Ak685 Most Cited Cases
In considering a motion to dismiss for want of personal jurisdiction, a court must consider as true the allegations of the plaintiff's complaint not controverted by the defendant's affidavits, and where the plaintiff's complaint and the defendant's affidavits conflict, the court must construe all reasonable inferences in favor of the plaintiff. Rules Civ.Proc., Rule 12(b)(2).

**[5] Pretrial Procedure ⚖⇒685**
307Ak685 Most Cited Cases
If, on a motion to dismiss for want of personal jurisdiction, a defendant makes a prima facie evidentiary showing that the court has no personal jurisdiction, the plaintiff is then required to substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof, and he may not merely reiterate the factual allegations in the complaint. Rules Civ.Proc., Rule 12(b)(2).

**[6] Corporations ⚖⇒665(1)**
101k665(1) Most Cited Cases
Automobile dealership that was incorporated in Delaware and had its principal place of business in Tennessee did not have sufficient contacts with Alabama to subject it to jurisdiction of trial court in action arising from automobile collision in Alabama; dealership did no business in Alabama and had no presence or contacts in Alabama, dealership had delivered vehicle to buyer and relinquished all

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

904 So.2d 226
904 So.2d 226
**(Cite as: 904 So.2d 226)**

ownership and control of it before collision, buyer, who was employee of dealership, was not on duty at time of accident, was not performing services for his employer at that time, and was not otherwise under dealership's supervision or control, and dealership had no supervisory power or control over driver's actions.

**[7] Courts 🔑12(2.1)**
106k12(2.1) Most Cited Cases

**[7] Courts 🔑12(2.5)**
106k12(2.5) Most Cited Cases
A physical presence in Alabama is not a prerequisite to personal jurisdiction over a nonresident; what is required, however, is that the defendant have such contacts with Alabama that it should reasonably anticipate being haled into court in state.

**[8] Courts 🔑12(2.5)**
106k12(2.5) Most Cited Cases

**[8] Courts 🔑12(2.10)**
106k12(2.10) Most Cited Cases
Depending on the quality and quantity of the contacts, jurisdiction may be either general or specific; general jurisdiction applies where a nonresident defendant's activities in the forum state are substantial or continuous and systematic, regardless of whether those activities gave rise to the lawsuit, while a court has specific jurisdiction when a defendant has had few contacts with the forum state, but those contacts gave rise to the lawsuit.

**[9] Courts 🔑12(2.10)**
106k12(2.10) Most Cited Cases
Regardless of whether jurisdiction is alleged to be general or specific, the nexus between the defendant and the forum state must arise out of an action of the defendant that was purposefully directed toward the forum state; this purposeful-availment requirement assures that a defendant will not be haled into a jurisdiction as a result of the unilateral activity of another person or a third person.

**[10] Courts 🔑12(2.5)**
106k12(2.5) Most Cited Cases
General contacts, which give rise to general personal

jurisdiction, consist of the nonresident defendant's contacts with the forum state that are unrelated to the cause of action and that are both continuous and systematic.

**[11] Courts 🔑12(2.10)**
106k12(2.10) Most Cited Cases
Specific contacts, which give rise to specific jurisdiction, consist of the nonresident defendant's contacts with the forum state that are related to the cause of action.

**[12] Pretrial Procedure 🔑25**
307Ak25 Most Cited Cases

**[12] Pretrial Procedure 🔑673**
307Ak673 Most Cited Cases
Motorist's bare allegations, not in her opposition to motion to dismiss but in her answer to petition for writ of mandamus, that additional discovery could possibly reveal evidence establishing personal jurisdiction over Tennessee automobile dealership, coupled with her failure to seek more time in which to conduct such discovery, did not entitle her to further discovery on jurisdiction issue in action arising from collision involving vehicle sold by dealership.

**[13] Pretrial Procedure 🔑27.1**
307Ak27.1 Most Cited Cases
A plaintiff does not enjoy an automatic right to discovery pertaining to personal jurisdiction in every case.

**[14] Pretrial Procedure 🔑25**
307Ak25 Most Cited Cases

**[14] Pretrial Procedure 🔑27.1**
307Ak27.1 Most Cited Cases
A plaintiff's discovery request for evidence to demonstrate personal jurisdiction will be denied if it is only based upon bare, attenuated, or unsupported assertions of personal jurisdiction, or when a plaintiff's claim appears to be clearly frivolous.
**\*228** John Martin Galese and Rand A. Linton of Galese & Ingram, P.C., Birmingham, for petitioner.

William Todd Atkinson of Fite, Davis, Atkinson,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

904 So.2d 226
904 So.2d 226
(Cite as: 904 So.2d 226)

Page 3

Guyton & Burt, P.C., Hamilton, for respondent.

BROWN, Justice.

Covington Pike Dodge, Inc. ("Covington Pike"), a Delaware corporation whose principal place of business is in Tennessee, petitions for a writ of mandamus directing the trial court (1) to vacate its order denying Covington Pike's motion to dismiss, for lack of personal jurisdiction, the claims of Lana M. Henderson against it, and (2) to enter an order dismissing Henderson's claims against it. We grant the petition and issue the writ.

## Facts and Procedural History

On February 28, 2002, Lester Williams purchased a used 1993 Honda Accord automobile from Covington Pike, a motor-vehicle dealership. At the time of the transaction, Williams resided in Mississippi and *229 Covington Pike's dealership was located in Memphis, Tennessee. Williams was an employee of Covington Pike, and the Accord was delivered to him on the day of the purchase. On March 2, 2002, Stanley Smith was driving Williams's Accord when it collided with an automobile being driven by Henderson. The accident occurred in Marion County, Alabama. Both Smith and Williams, who was a passenger in the Accord, died from injuries sustained in the collision; Henderson was severely injured.

On July 30, 2002, Henderson sued Bud Purser, as administrator of the estate of Stanley Smith and as administrator of the estate of Lester Williams; Covington Pike; and Alfa Mutual Insurance Company, which provided uninsured/underinsured-motorist insurance to Henderson, in the Marion Circuit Court. The complaint alleged, among other things, that Covington Pike owned or had a right of control over the Accord, and that it had negligently and/or wantonly entrusted the Accord to Smith. Furthermore, the complaint alleged that Covington Pike negligently, recklessly, and wantonly exercised or failed to exercise supervisory control over the Accord.

On September 3, 2002, Covington Pike filed a motion to dismiss pursuant to Rule 12(b)(2), Ala. R. Civ. P., arguing that the Marion Circuit Court lacked personal

jurisdiction over it; the same motion sought, in the alternative, a summary judgment on the merits of Henderson's claims against Covington Pike (the motion is hereinafter referred to as "the motion to dismiss"). Henderson filed an opposition to the motion to dismiss on August 4, 2003. In an order dated October 7, 2003, the trial court denied the motion to dismiss and reserved ruling on the summary-judgment aspect of the motion. This order was filed with the clerk of the Marion Circuit Court on November 17, 2003. Covington Pike then filed this petition for the writ of mandamus.

## Standard of Review

[1][2][3][4][5] "[A] petition for a writ of mandamus is the proper device by which to challenge the denial of a motion to dismiss for lack of in personam jurisdiction. See Ex parte McInnis, 820 So.2d 795 (Ala.2001); Ex parte Paul Maclean Land Servs., Inc., 613 So.2d 1284, 1286 (Ala.1993). ' "An appellate court considers de novo a trial court's judgment on a party's motion to dismiss for lack of personal jurisdiction." ' Ex parte Lagrone, 839 So.2d 620, 623 (Ala.2002) (quoting Elliott v. Van Kleef, 830 So.2d 726, 729 (Ala.2002)). Moreover, '[t]he plaintiff bears the burden of proving the court's personal jurisdiction over the defendant.' Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 50 (1st Cir.2002)." Ex parte Dill, Dill, Carr, Stonbraker & Hutchings, P.C., 866 So.2d 519, 525 (Ala.2003).

" 'In considering a Rule 12(b)(2), Ala. R. Civ. P., motion to dismiss for want of personal jurisdiction, a court must consider as true the allegations of the plaintiff's complaint not controverted by the defendant's affidavits, Robinson v. Giarmarco & Bill, P.C., 74 F.3d 253 (11th Cir.1996), and Cable/Home Communication Corp. v. Network Productions, Inc., 902 F.2d 829 (11th Cir.1990), and "where the plaintiff's complaint and the defendant's affidavits conflict, the ... court must construe all reasonable inferences in favor of the plaintiff." Robinson, 74 F.3d at 255 (quoting Madara v. Hall, 916 F.2d 1510, 1514 (11th Cir.1990))." Wenger Tree Serv. v. Royal Truck & Equip., Inc., 853 So.2d 888, 894 (Ala.2002) (quoting Ex parte McInnis, 820 So.2d 795, 798 (Ala.2001)). However, if the defendant makes a prima facie evidentiary showing *230 that the Court has no personal jurisdiction, "the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

904 So.2d 226
904 So.2d 226
**(Cite as: 904 So.2d 226)**

plaintiff is then required to substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof, and he may not merely reiterate the factual allegations in the complaint." *Mercantile Capital, LP v. Federal Transtel, Inc.,* 193 F.Supp.2d 1243, 1247 (N.D.Ala.2002)(citing *Future Tech. Today, Inc. v. OSF Healthcare Sys.,* 218 F.3d 1247, 1249 (11th Cir.2000)). See also *Hansen v. Neumueller GmbH,* 163 F.R.D. 471, 474-75 (D.Del.1995)("When a defendant files a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(2), and supports that motion with affidavits, plaintiff is required to controvert those affidavits with his own affidavits or other competent evidence in order to survive the motion.") (citing *Time Share Vacation Club v. Atlantic Resorts, Ltd.,* 735 F.2d 61, 63 (3d Cir.1984)). [FN1]

> FN1. "The Alabama Rules of Civil Procedure are based upon, and are virtually identical to, the Federal Rules of Civil Procedure. A presumption therefore arises that cases construing the federal rules are authority for construing the Alabama rules." *Alabama Federal Sav. & Loan Ass'n v. Howard,* 534 So.2d 609, 614 (Ala.1988).

### Discussion

[6][7][8][9] Covington Pike argues in its petition that it did not have sufficient contacts with the State of Alabama to subject it to the jurisdiction of the trial court. Therefore, it argues, the trial court erred in denying its motion to dismiss. We agree.

" 'A physical presence in Alabama is not a prerequisite to personal jurisdiction over a nonresident.' *Sieber v. Campbell,* 810 So.2d 641, 644 (Ala.2001). What is required, however, is that the defendant have such contacts with Alabama that it ' "should reasonably anticipate being haled into court [here]." ' *Dillon Equities v. Palmer & Cay, Inc.,* 501 So.2d 459, 462 (Ala.1986) (quoting *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)). "Depending on the quality and quantity of the contacts, jurisdiction may be either general or specific. *Leventhal v. Harrelson,* 723 So.2d 566, 569 (Ala.1998). 'General jurisdiction applies where a defendant's activities in the forum state are

"substantial" or "continuous and systematic," regardless of whether those activities gave rise to the lawsuit.... A court has specific jurisdiction when a defendant has had few contacts with the forum state, but those contacts gave rise to the lawsuit.' *Id.* "But regardless of whether jurisdiction is alleged to be general or specific, the nexus between the defendant and the forum state must arise out of ' "an action of the defendant [that was] purposefully directed toward the forum State." ' *Elliott [v. Van Kleef,* 830 So.2d 726, 731 (Ala.2002) ] (quoting *Asahi Metal Indus. Co. v. Superior Court of California,* 480 U.S. 102, 112, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987)). 'This purposeful-availment requirement assures that a defendant will not be haled into a jurisdiction as a result of " 'the unilateral activity of another person or a third person.' " ' *Elliott,* 830 So.2d at 731 (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985))."

*Dill,* 866 So.2d at 525-26 (emphasis omitted). In light of these principles, this Court must determine whether Covington Pike has had sufficient contacts with Alabama to subject it to either general or specific jurisdiction.

In support of its motion to dismiss, Covington Pike included the affidavit of Derrick **231** Daniels, its general manager. Daniels's affidavit states, in pertinent part:

"Covington Pike incorporated in the State of Delaware on June 18, 1991. Since that date, Covington Pike has maintained its sole office and sole place of business in Memphis, Tennessee. Covington Pike has no offices located outside of Memphis, Tennessee. Covington Pike's primary corporate purpose is to sell and service vehicles in Tennessee. In connection with that corporate purpose, Covington Pike did not conduct any business of any kind within the State of Alabama in March of 2002, nor does it conduct any business in Alabama presently. It is not qualified to do business in Alabama and has not availed itself of the privilege of conducting business in Alabama. Covington Pike does not have a dealership in Alabama, nor does it have any employees in Alabama, nor does Covington Pike own any real property or personal property

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

904 So.2d 226
904 So.2d 226
**(Cite as: 904 So.2d 226)**

therein. Covington Pike does not advertise its services in Alabama.

"On February 28, 2002, Covington Pike sold a 1993 Honda Accord [automobile] ... to Lester Williams, now deceased. The sale was completed and the vehicle delivered to him in Memphis, Tennessee, at the dealership. At no time thereafter, did Covington Pike possess the vehicle or claim any right, title or interest in the vehicle or maintain control or dominion over the vehicle.

"Although on March 2, 2002 Lester Williams was an employee of Covington Pike he was not on duty at the time of the accident in Alabama. At the time of the accident Lester Williams was not on any errand for Covington Pike, was not performing any acts or providing any services for Covington Pike and Covington Pike was both unaware of his activities and location at that time of the accident. Covington Pike did not direct any activities of Mr. Williams at the time of the accident or at any time material hereto.

"At no time has Stanley Smith ever been an agent, servant or employee of Covington Pike, and, at the time of the accident sued upon, Covington Pike was not controlling his activities."

Attached to the affidavit were, among other things, several documents detailing the sale of the Accord to Williams; among those documents were a "car invoice and bill of sale," a buyer's order, an odometer disclosure statement, and certain title documents.

[10] " 'General contacts, which give rise to general personal jurisdiction, consist of the defendant's contacts with the forum state that are unrelated to the cause of action and that are both "continuous and systematic." ' " *Elliott v. Van Kleef,* 830 So.2d 726, 730 (Ala.2002) (quoting *Ex parte Phase III Constr., Inc.,* 723 So.2d 1263, 1266 (Ala.1998) (Lyons, J., concurring in the result), quoting in turn *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 n. 9, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)). Daniels's affidavit establishes that at the time of the accident that is the subject of this litigation, Covington Pike did no business in the State of Alabama and had no presence or contacts in Alabama. Additionally, Henderson does not argue that Covington Pike has had contacts in Alabama unrelated to her cause of action. Because

Covington Pike clearly has not had "continuous and systematic" contacts with Alabama, Henderson did not demonstrate that the trial court could exercise general jurisdiction over Covington Pike.

[11] " 'Specific contacts, which give rise to specific jurisdiction, consist of the defendant's contacts with the forum state that are related to the cause of action.' " *232 *Elliott,* 830 So.2d at 730 (quoting *Phase III Constr.,* 723 So.2d at 1266 (Lyons, J., concurring in the result)). Henderson's complaint alleges that Covington Pike had a right of control over the Accord and that it was negligent or wanton in entrusting the Accord to Smith or in exercising supervisory control over the Accord while it was in Alabama.

Daniels's affidavit and the documentary evidence presented by Covington Pike, however, directly refute the factual assertions in Henderson's complaint. Specifically, the evidence shows that while Williams was an employee of Covington Pike, he was not on duty at the time of the accident, was not performing services for his employer at that time, and was not otherwise under Covington Pike's supervision or control. Additionally, the evidence shows that Covington Pike delivered the Accord to Williams and relinquished all ownership and control of the automobile at that time. Finally, the evidence shows that Covington Pike had no supervisory power or control over Smith's actions. Therefore, Covington Pike's evidence disproved the factual allegations asserted in Henderson's complaint that would establish specific jurisdiction and constituted a prima facie showing that no specific jurisdiction existed. Henderson was thus required to substantiate her jurisdictional allegations with affidavits or other competent evidence.

[12] The only exhibit attached to Henderson's opposition to the motion to dismiss does not address the jurisdiction issue. Henderson argues in her answer to Covington Pike's petition, however, that she did not have an adequate opportunity to conduct discovery and that Covington Pike has "refused" to allow Henderson to depose anyone who works for Covington Pike. Thus, she maintains, she should be allowed the opportunity to conduct more discovery on the issue of personal jurisdiction. We disagree.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

904 So.2d 226
904 So.2d 226
**(Cite as: 904 So.2d 226)**

[13] " '[A] plaintiff does not enjoy an automatic right to discovery pertaining to personal jurisdiction in every case.' " *Ex parte Troncalli Chrysler Plymouth Dodge, Inc.*, 876 So.2d 459, 468 (Ala.2003) (quoting *Andersen v. Sportmart, Inc.*, 179 F.R.D. 236, 241 (N.D.Ind.1998)). The materials submitted with the petition for writ of mandamus [FN2] indicate that Henderson served on Covington Pike interrogatories and a request for the production of certain documents. Covington Pike filed the motion to dismiss on September 3, 2002, and responded to Henderson's discovery requests in early October 2002. There is no evidence in the record establishing what actions Henderson took in the 11 months before she filed her response to the motion to dismiss to obtain the evidence she now asserts she requires. Moreover, Henderson argued before the trial court that Covington Pike's motion to dismiss pursuant to Rule 12(b)(2) was due to be denied only because the allegations in her complaint, if true, demonstrated the court's personal jurisdiction over *233 Pike. [FN3] Henderson *did not* argue that additional discovery was required for her to gain evidence to establish personal jurisdiction over Covington Pike. Instead, Henderson's arguments opposing Covington Pike's *motion for a summary judgment* argued that more discovery was required before she could respond to that particular motion. However, Henderson did not file an affidavit pursuant to Rule 56(f), Ala. R. Civ. P., requesting additional time in which to conduct discovery. See *Herring v. Parkman*, 631 So.2d 996, 1002 (Ala.1994) (noting that Rule 56(f) "requires from the party opposing the summary judgment motion an affidavit stating the reasons why he cannot present essential facts"). [FN4]

FN2. The materials reviewed by this Court in considering a petition for writ of mandamus consist of exhibits provided by the parties:
"[A] petitioner for a writ of mandamus is obliged to provide with the petition 'copies of any order or opinion or parts of the record that would be essential to an understanding of the matters set forth in the petition.' Rule 21(a), Ala. R.App. P. In the event the petition is not denied, the respondent is directed to file an answer to the petition, which provides the respondent with an 'opportunity to supplement

the "record" by attaching exhibits of its own....' "
*Ex parte Fontaine Trailer Co.*, 854 So.2d 71, 74 (Ala.2003) (quoting *Ex parte Miltope Corp.*, 522 So.2d 272, 273 (Ala.1988)).

FN3. Henderson argues before this Court, as she did before the trial court, that a dismissal for lack of personal jurisdiction is proper only when it appears beyond a doubt that the plaintiff can prove no set of facts that would support personal jurisdiction. However, it appears that Henderson is referring to the standard applied in examining a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), not a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2).

FN4. In addition, Henderson's answer to the petition for the writ of mandamus states that she needs additional discovery not to establish personal jurisdiction, but instead to gain evidence for trial: "[T]he discovery and depositions Henderson seeks to take are not depositions to determine if the courts of this state can exercise jurisdiction over Covington Pike, but rather, is Covington Pike legally liable or responsible for the injuries she suffered and has complained of in this litigation." (Henderson's answer at 10.)

The facts before us demonstrate that Henderson had the opportunity to discover evidence to support her claim that the trial court had personal jurisdiction over Covington Pike. Moreover, Henderson never requested from the trial court additional time in which to discover such evidence. Instead, Henderson simply speculates before this Court that a deposition could uncover evidence indicating that Covington Pike had ownership or control over the Accord, despite Covington Pike's clear evidence to the contrary.

[14] " '[A] plaintiff's discovery request [for evidence to demonstrate personal jurisdiction] will nevertheless be denied if it is only based upon "bare," "attenuated," or "unsupported" assertions of personal jurisdiction, or

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

904 So.2d 226
904 So.2d 226
**(Cite as: 904 So.2d 226)**

Page 7

when a plaintiff's claim appears to be "clearly frivolous." ' " *Troncalli,* 876 So.2d at 468 (quoting *Andersen,* 179 F.R.D. at 242). Henderson's bare allegations that additional discovery could possibly reveal evidence establishing personal jurisdiction--coupled with her failure to seek more time in which to conduct such discovery--do not entitle her to further discovery on that issue. See *Hansen v. Neumueller GmbH,* 163 F.R.D. at 476 ("This Court is *not* bound to accept as true the allegations in plaintiff's complaint for the purposes of determining whether plaintiff has made a minimal showing so as to entitle him to discovery on the issue of personal jurisdiction.... [A] plaintiff may not rely on the bare allegations in his complaint to warrant further discovery."); *Poe v. Babcock Int'l, plc,* 662 F.Supp. 4, 7 (M.D.Pa.1985) ("Since plaintiff has met defendants' affidavit evidence with mere speculation, plaintiff's request for an opportunity to conduct discovery on the matter must be denied.").

### Conclusion

The trial court erred in not granting Covington Pike's motion to dismiss the claims against it for lack of personal jurisdiction. The trial court is therefore directed (1) to vacate its order denying Covington Pike's motion to dismiss and (2) to dismiss Henderson's claims against Covington Pike.

**\*234** PETITION GRANTED; WRIT ISSUED.

NABERS, C.J., and SEE, HARWOOD, and STUART, JJ., concur.

904 So.2d 226

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

876 So.2d 459
876 So.2d 459
**(Cite as: 876 So.2d 459)**

Page 1

▷

Supreme Court of Alabama.
Ex parte TRONCALLI CHRYSLER PLYMOUTH
DODGE, INC.
(In re David J. Case
v.
Alexander Dodge Chrysler Plymouth, Inc., et al.).
**1021135.**

Sept. 12, 2003.

Purchaser sued foreign corporation, the car dealership that had sold him a truck, as well as a local car dealer, alleging that the defendants committed conspiracy to commit fraud, bad faith, misrepresentation, deceit, and breach of contract. The foreign corporation moved to dismiss the complaint for lack of personal jurisdiction. The Circuit Court, Marshall County, No. CV-02-200152, David J. Evans, Jr., J., denied motion. Corporation petitioned for a writ of mandamus. The Supreme Court, Woodall, J., held that: (1) use of the "computer database locator" by the foreign corporation did not constitute the "something more" required to satisfy the purposeful-availment prong of a proper due-process analysis for personal jurisdiction, and (2) purchaser's jurisdictional allegations presented nothing but "conjecture and surmise" regarding the existence of general jurisdiction and, thus, failed to support his request for jurisdictional discovery.

Petition granted; writ issued.

Johnstone, J., concurred in part, dissented in part, and filed opinion.

West Headnotes

**[1] Mandamus ☞43**
250k43 Most Cited Cases
A petition for a writ of mandamus is the proper device by which to challenge the denial of a motion to dismiss for lack of in personam jurisdiction.

**[2] Appeal and Error ☞893(1)**
30k893(1) Most Cited Cases
An appellate court considers de novo a trial court's judgment on a party's motion to dismiss for lack of personal jurisdiction.

**[3] Courts ☞35**
106k35 Most Cited Cases
The plaintiff bears the burden of proving the court's personal jurisdiction over the defendant.

**[4] Courts ☞12(2.1)**
106k12(2.1) Most Cited Cases
Catch-all provision of Alabama's long-arm rule extends the jurisdiction of state's courts to the permissible limits of due process. Rules Civ.Proc., Rule 4.2(a)(2)(I).

**[5] Courts ☞12(2.30)**
106k12(2.30) Most Cited Cases
Of particular relevance in determining whether personal jurisdiction exists over an out-of-state defendant concerning a sale is whether the plaintiff initiated the sale or contact.

**[6] Constitutional Law ☞305(5)**
92k305(5) Most Cited Cases
Something more than an isolated contact initiated by an in-state plaintiff is required to satisfy the "purposeful-availment" prong of the due-process analysis for purposes of establishing personal jurisdiction over an out-of-state defendant; "something more" might involve prior negotiations and contemplated future consequences, along with the parties' actual course of dealing, and it might be found where the defendant deliberately has engaged in significant activities within Alabama or has created continuing obligations between himself and residents of Alabama. U.S.C.A. Const.Amend. 14.

**[7] Constitutional Law ☞305(6)**
92k305(6) Most Cited Cases

**[7] Corporations ☞665(1)**
101k665(1) Most Cited Cases

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

876 So.2d 459
876 So.2d 459
(Cite as: 876 So.2d 459)

Use of the "computer database locator" by foreign corporation, a car dealership, did not constitute the "something more" required to satisfy the purposeful-availment prong of a proper due-process analysis for personal jurisdiction in fraud and breach-of-contract action brought by purchaser of a truck; although the database may have occasionally resulted in a sales contact for the dealership, it was maintained by the car manufacturer, not the dealership, it simply provided a means by which the manufacturer kept track of the delivery of its vehicles, and the contact resulting in the sale was made by, or on behalf of the purchaser, who benefited from another dealer's discovery of the location of the vehicle through the equivalent of a national publication. U.S.C.A. Const.Amend. 14; Rules Civ.Proc., Rule 4.2(a)(2)(I).

**[8] Pretrial Procedure ⟷36.1**
307Ak36.1 Most Cited Cases
Truck purchaser's jurisdictional allegations that the car dealership was a foreign corporation doing business in Georgia, that a local car dealer discovered a vehicle in possession of the foreign corporation in Georgia, and that the purchaser traveled to Georgia to take possession of the vehicle presented nothing but "conjecture and surmise" regarding the existence of general jurisdiction and, thus, failed to support his request for jurisdictional discovery.

**[9] Pretrial Procedure ⟷23**
307Ak23 Most Cited Cases

**[9] Pretrial Procedure ⟷27.1**
307Ak27.1 Most Cited Cases
A court has the power to require a defendant to respond to discovery requests relevant to his or her motion to dismiss for lack of jurisdiction.

**[10] Pretrial Procedure ⟷21**
307Ak21 Most Cited Cases

**[10] Pretrial Procedure ⟷24**
307Ak24 Most Cited Cases
A plaintiff does not enjoy an automatic right to discovery pertaining to personal jurisdiction in every case; to be permitted jurisdictional discovery, a plaintiff must at least allege facts that would support a colorable

claim of jurisdiction.

**[11] Pretrial Procedure ⟷27.1**
307Ak27.1 Most Cited Cases
A request for jurisdictional discovery must offer the court more than conjecture and surmise in support of the jurisdictional theory; the standard is quite low, but a plaintiff's discovery request will nevertheless be denied if it is only based upon bare, attenuated, or unsupported assertions of personal jurisdiction, or when a plaintiff's claim appears to be clearly frivolous.
*460 Nicholas B. Roth and Heather L. Necklaus of Eyster, Key, Tubb, Weaver & Roth, LLP, Decatur, for petitioner.

Charles E. Robinson, Jr., of The Robinson Law Firm, P.C., Ashville, for respondent.

WOODALL, Justice.

Troncalli Chrysler Plymouth Dodge, Inc. ("Troncalli"), petitions this Court for a writ of mandamus directing the trial court (1) to vacate its order denying Troncalli's motion to dismiss the claims of David J. Case against it for lack of personal jurisdiction, and (2) to enter an order dismissing the complaint. We grant the petition.

On August 20, 2002, Case sued Troncalli and Alexander Dodge Chrysler Plymouth, Inc.; the complaint contained the following factual allegations:

*461 "COMPLAINT
"STATEMENT OF THE PARTIES
"1. Plaintiff, David J. Case, is a resident citizen of St. Clair County, Alabama.
"2. Defendant, Alexander Dodge Chrysler Plymouth, Inc. (hereinafter referred to as 'Alexander Dodge'), is a domestic corporation doing business in Marshall County, Alabama.
"3. Defendant, [Troncalli], is a foreign corporation doing business in Cumming, Georgia.

"STATEMENT OF FACTS
"On or about June 29, 2001, [Case] went to Defendant Alexander Dodge to purchase a truck. Although Defendant Alexander Dodge did not have the particular truck [Case] wanted to purchase on

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

876 So.2d 459
876 So.2d 459
(Cite as: 876 So.2d 459)

their lot, they did locate such vehicle at Defendant [Troncalli] in Cumming, GA. [Case] paid Defendant Alexander Dodge for a 2001 Dodge Dakota pick-up truck. They, in turn, paid [Troncalli] for said vehicle. [Case] then went to Defendant [Troncalli's] place of business to pick up the vehicle.

"The 2001 Dodge Dakota which [Case] purchased was represented to him as being brand new. The vehicle had only nineteen (19) miles on the odometer when [Case] picked it up. However, sometime after [Case] purchased the truck the power window on the driver's side ceased to function properly. [Case] took the truck to Jim Burke Dodge in Birmingham, AL, to get the power window inspected. Upon inspecting the vehicle, the service manager at Jim Burke Dodge pointed out to [Case] that the paint on the driver's door of his vehicle did not match the paint on the remainder of the vehicle. [Case was asked] whether he had wrecked the vehicle. Naturally, this was the first knowledge [Case] had that his vehicle may not have been brand new when he purchased it.

"The service manager suggested that [Case] take his truck to a body shop for further inspection. Therefore, [Case] took the vehicle to Daffron's Body Shop in Pell City, AL. A technician at Daffron's Body Shop confirmed that the vehicle's driver door had sustained injury. [Case] and/or [Case's] insurance provider were forced to pay for having the damaged door and window repaired at Daffron's Body Shop."

The claims against the defendants included (1) "conspiracy to commit fraud," (2) bad faith, (3) misrepresentation, (4) deceit, and (5) breach of contract.

Troncalli did not answer the complaint. Instead, on September 19, 2002, it filed a "Special Appearance for the Purpose of Alleging Lack of Personal Jurisdiction." Troncalli alleged that it "had no contact with the State of Alabama in this transaction," and moved to dismiss the complaint on that ground. Troncalli subsequently supported the motion with a brief and the affidavit of Ryan Troncalli, its general manager. The affidavit stated, in pertinent part:

"3. [Troncalli] is incorporated in the State of Georgia, with its principal place of business in Cumming, Georgia.

"4. In or about June of 2001, [Troncalli] was contacted by [Alexander Dodge], a dealership located in Albertville, Alabama, regarding a dealer transfer purchase of a 2001 Dodge Dakota truck.

"5. David Case, the Plaintiff in the above-styled case, had approached Alexander Dodge regarding the purchase of a particular 2001 Dodge Dakota vehicle, but Alexander Dodge did not have that particular vehicle on its lot at the time. *462 Alexander Dodge located said vehicle at [Troncalli] through the use of a computer database locator, which is maintained by Chrysler and includes a list of all Chrysler vehicles which are delivered to its various dealerships.

"6. On or about the 29th day of June, 2001, [Case] picked up the vehicle made the basis of this suit at [Troncalli] in Cumming, Georgia.

"7. At the time of delivery, [Case] delivered a check ... payable to [Troncalli] by Alexander Dodge in consideration for the dealer transfer. [Case] also signed the Odometer Statement ... on behalf of Alexander Dodge and accepted the Bill of Sale and the Manufacturer's Certificate of Origin on behalf of Alexander Dodge.... As the Manufacturer's Certificate of Origin indicates, the vehicle was transferred from [Troncalli] directly to Alexander Dodge.

"8. In the dealer transfer described above, the vehicle made the basis of this suit was sold wholesale directly to Alexander Dodge, and Alexander Dodge then made a retail sale of the same vehicle to [Case].

"9. There were no negotiations, whether by telephone, correspondence, email, or other communication between Troncalli and [Case]. Further, during the dealer transfer, there were no telephone calls, correspondence, email, or other communications made by or on behalf of [Troncalli] to the State of Alabama, whether to [Case], Alexander Dodge, or any other parties in connection with the dealer transfer.

"10. The State of Alabama is outside of the market area of [Troncalli]. [Troncalli] does not conduct business, advertise, market, or solicit customers in or from the State of Alabama, nor does it ship vehicles into the State of Alabama or otherwise conduct business or operate within the State of Alabama.

"11. All paperwork and money involved in the above-described dealer transfer, as well as delivery of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

the vehicle itself, occurred within the State of Georgia."

Case filed a response to the motion to dismiss and an "Alternative Motion to Continue to Allow the Plaintiff to Conduct Limited Discovery." In the latter motion, Case stated:

"[Case] is satisfied that this court has personal jurisdiction over Defendant Troncalli as a matter of law based on its 'specific contacts' with Alabama. However, if this court should disagree and rule that 'specific [jurisdiction' is] lacking, it should allow a limited discovery period to allow for [Case] to probe Defendant Troncalli's [contacts for 'general jurisdiction' in] Alabama....

"[Case] could not possibly produce this information without discovery. In other words, this is a situation where Defendant Troncalli holds all of the cards. Although it filed its motion to dismiss on September 16, 2002, it has only recently filed affidavit testimony by its general manager on the issue of its *general [jurisdiction] contacts* with Alabama. This testimony has not been subject to cross-examination and, because the information sought lies solely in the hands of Defendant Troncalli, the only way for [Case to] probe this information is from written discovery and depositions."

(Emphasis added.)

On March 3, 2003, the trial court entered the following order:

"Motion to dismiss by Defendant [Troncalli] denied. [Troncalli] participates in a network which offers vehicles for sale to persons in Alabama. [Troncalli] knew the vehicles listed on the network **463** may be purchased by residents of Alabama who would otherwise have no reason to visit the Defendant Troncalli's location in Georgia."

Troncalli then filed this petition, asking this Court to direct the trial court to vacate its order denying Troncalli's motion to dismiss the complaint and to direct the trial court to grant its motion to dismiss for lack of personal jurisdiction.

[1][2][3] The following principles are well established:

"[A] petition for a writ of mandamus is the proper

device by which to challenge the denial of a motion to dismiss for lack of *in personam* jurisdiction. See *Ex parte McInnis,* 820 So.2d 795 (Ala.2001); *Ex parte Paul Maclean Land Servs., Inc.,* 613 So.2d 1284, 1286 (Ala.1993). ' "An appellate court considers de novo a trial court's judgment on a party's motion to dismiss for lack of personal jurisdiction." ' *Ex parte Lagrone,* 839 So.2d 620, 623 (Ala.2002) (quoting *Elliott v. Van Kleef,* 830 So.2d 726, 729 (Ala.2002)). Moreover, '[t]he plaintiff bears the burden of proving the court's personal jurisdiction over the defendant.' *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.,* 290 F.3d 42, 50 (1st Cir.2002)."

*Ex parte Dill, Dill, Carr, Stonbraker & Hutchings, P.C.,* 866 So.2d 519, 525 (Ala.2003).

Jurisdiction is obtained over out-of-state defendants pursuant to the "long-arm" rule, Ala. R. Civ. P. 4.2(a)(2)(A)-(I). Recently, we explained:

" 'A physical presence in Alabama is not a prerequisite to personal jurisdiction over a nonresident.' *Sieber v. Campbell,* 810 So.2d 641, 644 (Ala.2001). What *is* required, however, is that the defendant have such contacts with Alabama that it ' "should reasonably anticipate being haled into court [here]." ' *Dillon Equities v. Palmer & Cay, Inc.,* 501 So.2d 459, 462 (Ala.1986) (quoting *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)). "Depending on the quality and quantity of the contacts, jurisdiction may be either general or specific. *Leventhal v. Harrelson,* 723 So.2d 566, 569 (Ala.1998). 'General jurisdiction applies where a defendant's activities in the forum state are "substantial" or "continuous and systematic," regardless of whether those activities gave rise to the lawsuit.... A court has specific jurisdiction when a defendant has had few contacts with the forum state, but those contacts gave rise to the lawsuit.' *Id.*
"But regardless of whether jurisdiction is alleged to be general or specific, the nexus between the defendant and the forum state must arise out of ' "an *action of the defendant [that was] purposefully directed toward the forum State.*" ' *Elliott[ v. Van Kleef],* 830 So.2d [726] at 731 [(Ala.2002)] (quoting *Asahi Metal Indus. Co. v. Superior Court of*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

876 So.2d 459
876 So.2d 459
**(Cite as: 876 So.2d 459)**

Page 5

_California,_ 480 U.S. 102, 112, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987)). 'This purposeful-availment requirement assures that a defendant will not be haled into a jurisdiction as a result of " 'the unilateral activity of another person or a third person.' " ' _Elliott,_ 830 So.2d at 731 (quoting _Burger King Corp. v. Rudzewicz,_ 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985))."
_Ex parte Dill,_ 866 So.2d at 525.

Within the context of these principles, the dispositive questions in this case are (1) whether Troncalli has contacts with Alabama sufficient to subject it to _specific_ jurisdiction, and, if not, (2) whether Case is entitled to discovery for the purpose of seeking a basis for _general_ jurisdiction.

**\*464 I. Specific Jurisdiction**
"When _specific_ jurisdiction is the basis for adjudication of claims against an out-of-state defendant, due process requires 'a clear, firm nexus between the acts of the defendant and the consequences complained of in order to establish the necessary contacts.' " _Ex parte Dill,_ 866 So.2d at 531-532 (quoting _Duke v. Young,_ 496 So.2d 37, 39 (Ala.1986)). Case contends that specific jurisdiction may properly be exercised pursuant to Rule 4.2(a)(2)(A)-(E) and (I).

Specific jurisdiction "is authorized by Rule 4.2(a)(2)(I), the 'catch-all provision' of Alabama's long-arm rule. See Jerome Hoffman & Sandra Guin, _Alabama Civil Procedure_ § 2.48 (1990)." _Ex parte Dill,_ 866 So.2d at 531. Rule 4.2(a)(2)(I) provides:
"A person has sufficient contacts with the state when that person, acting directly or by agent, is or may be legally responsible as a consequence of that person's "....
"(I) otherwise [than the circumstances listed in A-H] having some minimum contacts with this state and, under the circumstances, it is fair and reasonable to require the person to come to this state to defend an action. The minimum contacts referred to in this subdivision (I) shall be deemed sufficient, notwithstanding a failure to satisfy the requirement of subdivisions (A)-(H) of this subsection (2), so long as the prosecution of the action against a person in this state is not inconsistent with the constitution of this state or the Constitution of the United States."

[4] "Subsection (I) 'extends the jurisdiction of this state's courts to the permissible limits of due process.' _Martin v. Robbins,_ 628 So.2d 614, 617 (Ala.1993)." _Ex parte Dill,_ 866 So.2d at 531. If the exercise of personal jurisdiction would offend the due-process requirements of Rule 4.2(a)(2)(I), it may not be exercised under Rule 4.2(a)(2)(A)-(E). _Ex parte Dill,_ 866 So.2d at 525. Therefore, we first examine whether Troncalli's nexus with Alabama satisfies subdivision (I).

Case concedes, as he must, that Troncalli's jurisdictional objection "might be correct if [Case] simply drove to [Troncalli's] Georgia location to purchase the vehicle without being induced to do so." Case's brief, at 19. This is so, he argues, because personal jurisdiction, which purports to be based solely on an isolated sale by an out-of-state defendant to the in-state plaintiff, is generally unsustainable. See _Network Professionals, Inc. v. Network Int'l, Ltd.,_ 146 F.R.D. 179, 181 n. 1 (D.Minn.1993) ("The due process analysis focuses on a defendant's contacts with the forum, not its contacts with the plaintiff; thus, an isolated sale will not support jurisdiction, even if the cause of action arises from the sale."); see also _Wines v. Lake Havasu Boat Mfg., Inc.,_ 846 F.2d 40 (8th Cir.1988); _Chung v. NANA Dev. Corp.,_ 783 F.2d 1124, 1126 (4th Cir.1986) (a sale comprising no more than an " 'isolated' or 'attenuated' single transaction ... has always been deemed inadequate to satisfy due process"); _Charia v. Cigarette Racing Team, Inc.,_ 583 F.2d 184, 189 (5th Cir.1978) ("four sporadic and isolated sales" did not support personal jurisdiction); _Butler v. Beer Across America,_ 83 F.Supp.2d 1261 (N.D.Ala.2000); accord _Stuart v. Spademan,_ 772 F.2d 1185 (5th Cir.1985); _Benjamin v. Western Boat Building Corp.,_ 472 F.2d 723 (5th Cir.1973); _Douglas v. Modern Aero, Inc.,_ 954 F.Supp. 1206 (N.D.Ohio 1997); _Highway Auto Sales, Inc. v. Auto-Konig of Scottsdale, Inc.,_ 943 F.Supp. 825 (N.D.Ohio 1996).

**\*465 [5]** Of particular relevance is whether the _plaintiff initiated_ the sale or contact. See _Madison Consulting Group v. South Carolina,_ 752 F.2d 1193 (7th Cir.1985); _CBP Res., Inc. v. Ingredient Res. Corp.,_ 954 F.Supp. 1106 (M.D.N.C.1996); _Regent Lighting Corp._

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

876 So.2d 459
876 So.2d 459
**(Cite as: 876 So.2d 459)**

*v. American Lighting Concept, Inc.,* 25 F.Supp.2d 705 (M.D.N.C.1997) ("the contacts to be considered for purposes of personal jurisdiction are those actually generated by Defendants, not those created by the unilateral acts of Plaintiff"); *Wells American Corp. v. Sunshine Electronics,* 717 F.Supp. 1121, 1123 (D.S.C.1989); *American Stair Corp. v. Renata Constr. Co.,* 625 F.Supp. 136 (N.D.Ill.1985).

[6] Thus, something more than an isolated contact initiated by an in-state plaintiff is required to satisfy the "purposeful-availment" prong of the due-process analysis. "Something more" might involve "prior negotiations and *contemplated future consequences,* along with ... the parties' actual course of dealing." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 463, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (emphasis added). "Something more" might be found "where the defendant 'deliberately' has engaged in significant activities within [Alabama] ... or has created '*continuing obligations*' between himself and residents of [Alabama]." 471 U.S. at 475-76, 105 S.Ct. 2174 (emphasis added).

[7] Case argues that the "something more" in this action is the use of the "computer database locator," which, Case contends, "allows other Chrysler dealers to know [Troncalli's] inventory for the purposes of making a sale to [their] customers." Case's brief, at 19. Use of this database, Case contends, was an "act[] made by Troncalli purposefully directed to Alabama entities." *Id.* at 20. We disagree.

This Court has stated that " 'evidence of mere placement of advertisements in nationally distributed paper[s] or journals does not rise to the level of purposeful contact with a forum required by the Constitution in order to exercise personal jurisdiction over the advertiser.' " *Elliott v. Van Kleef,* 830 So.2d 726, 732 (Ala.2002) (quoting *Federated Rural Elec. Ins. Co. v. Kootenai Elec. Coop.,* 17 F.3d 1302, 1305 (10th Cir.1994)). In such a case, the advertiser "cannot be said to have purposefully directed his listing specifically at one state." *Elliott,* 830 So.2d at 732.

"Internet advertising over a web site falls under the same rubric as advertising in a national publication."

Christopher E. Friel, Notes and Comments, *Downloading a Defendant: Is Categorizing Internet Contacts a Departure from the Minimum Contacts Test?* 4 Roger Williams U.L.Rev. 293, 308 (1998). This is especially true where the Web site is "passive," that is, where the site serves "as little more than an electronic billboard for the posting of information." *Butler v. Beer Across America,* 83 F.Supp.2d at 1268.

The database in this case is maintained by Chrysler, not Troncalli; it simply provides a means by which the manufacturer keeps track of the delivery of its vehicles. To be sure, the database may occasionally result in a sales contact for Troncalli, such as the one involved in this case. However, such a contact is not precipitated by the unilateral act of Troncalli, but by the acts of the manufacturer, other dealers, and consumers. In effect, this database is "little more than an electronic billboard for the posting of information." Contacts resulting from its use are *at least* as attenuated as those resulting from an advertisement in a national publication. Thus, the use of the database does not constitute the "something more" that is required to satisfy the "purposeful-availment" prong of a proper due-process analysis.

**\*466** Case also contends that the result he seeks is required by three cases in which this Court upheld the exercise of personal jurisdiction: *Lowry v. Owens,* 621 So.2d 1262 (Ala.1993); *Ex parte Pope Chevrolet, Inc.,* 555 So.2d 109 (Ala.1989); and *Atlanta Auto Auction, Inc. v. G & G Auto Sales, Inc.,* 512 So.2d 1334 (Ala.1987). Troncalli argues that these cases are distinguishable, and we agree.

The dispute in *Lowry* arose out of the sale in 1988 of an automobile by Richard Owens and Fitzner Pontiac-Buick-Cadillac, Inc., a Mississippi automobile dealership (hereinafter collectively referred to as "Fitzner"), to Rodney Lowry, an Alabama automobile dealer. 621 So.2d at 1263. Although the contact was initiated by Lowry by telephone from Alabama, the sale contemplated the *special order* of an automobile with "specific options." *Id.* Fitzner sold "two or three cars," other than the one involved in the dispute, "for resale" by Lowry's Alabama dealership. *Id.* Additionally, Fitzner had sold *at least 16* automobiles to other

876 So.2d 459
876 So.2d 459
**(Cite as: 876 So.2d 459)**

Page 7

Alabama residents between 1989 and 1992. *Id.* at 1264. Moreover, Fitzner was soliciting business from Alabama residents through radio and television broadcasts directed into Alabama. *Id.* at 1267. Indeed, some of its advertisements were broadcast from a "radio station in Fayette, Alabama." *Id.* at 1264. Those contacts formed a nexus with Alabama sufficient for the exercise of personal jurisdiction over Fitzner in an action filed by Lowry arising out of the sale of the automobile. *Id.* at 1267.

The facts in *Ex parte Pope Chevrolet*, the second case on which Case relies, were summarized in *Wenger Tree Service v. Royal Truck & Equipment, Inc.*, 853 So.2d 888, 897 (Ala.2002), as follows:

"In ... *[Ex parte] Pope Chevrolet, supra*, the Alabama resident plaintiff sued the defendant Georgia automobile dealer in Alabama for fraud and breach of contract in selling a truck to the plaintiff in Georgia. The defendant knew the plaintiff was an Alabama resident who would use the truck in Alabama. *The defendant had advertised vehicles for sale through television advertisements and newspaper advertisements respectively broadcast by an Atlanta television station, which the plaintiff received, and printed in a regional newspaper, the Atlanta Constitution, which the plaintiff received.* According to the defendant, its advertisements were directed to the Atlanta market and only *one-tenth of one percent of its sales were made to Alabama residents.* According to the plaintiff, *the defendant's sales figures showed that the defendant sold eight or nine vehicles per year to Alabama residents, and those sales produced income in excess of $ 100,000 to the defendant.*"

(Emphasis added.) Those contacts were sufficient, the Court concluded, to establish personal jurisdiction over the Georgia defendant. *Ex parte Pope Chevrolet, 555 So.2d at 114.*

Summarizing the third opinion on which Case relies, *Wenger Tree Service* said:

"In ... *Atlanta Auto Auction, supra,* the plaintiff Alabama automobile seller, on theories of fraud and negligence, sued the defendant Georgia automobile auction company for selling him a car with mechanical problems. *The plaintiff had purchased*

*numerous automobiles from the defendant before the plaintiff's purchase of the bad car.* The defendant knew that the plaintiff was an Alabama resident automobile seller. Over the years, *the plaintiff had received through the mail brochures from the defendant* offering special sales and announcing auctions to be held by the **\*467** defendant in Georgia. The plaintiff also had received 'other solicitations to buy and sell automobiles, through *Atlanta Auction.*' *512 So.2d at 1335.*"

*853 So.2d at 898* (emphasis added). On those facts, the Court concluded that "Atlanta Auction engaged in a 'continuous and systematic' course of conduct in Alabama ... that [would] support a reasonable exercise of jurisdiction by the courts of Alabama." *Atlanta Auto Auction, 512 So.2d at 1336.*

These three cases involved much more than isolated contacts initiated by in-state plaintiffs. [FN1] More specifically, *Lowry* and *Atlanta Auto Auction* each involved *prior sales* and a *systematic course of dealing* between the in-state plaintiff and the out-of-state defendant. This case, by contrast, involves a *one-time sale,* and therefore no prior course of dealing, between Case and Troncalli. Also, *Lowry* and *Ex parte Pope Chevrolet,* unlike this case, involved numerous sales by the out-of-state defendants to Alabama residents, *other than the plaintiffs.* Case does not allege that Troncalli made sales to other Alabama residents, as was demonstrated in *Lowry* and *Ex parte Pope Chevrolet.* Unlike this case, *Lowry* and *Ex parte Pope Chevrolet* also involved substantial use of the broadcast media to target Alabama residents. Case does not allege that Troncalli targeted Alabama residents with any advertising. Thus, the defendants in those cases "engaged in significant activities within" Alabama. *Burger King,* 471 U.S. at 475-76, 105 S.Ct. 2174.

> FN1. Moreover, *Wenger Tree Service* is, itself, distinguishable from this case on many of the same points.

In connection with this transaction, the contact was made by, or on behalf of, Case. Case merely benefited from Alexander Dodge's discovery of the location of the vehicle through the equivalent of a national publication. He then traveled to Georgia, delivered the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

876 So.2d 459
876 So.2d 459
(Cite as: 876 So.2d 459)

full purchase price, and took delivery of the truck in Georgia. The only face-to-face discussions Case had with Troncalli regarding the vehicle took place in Georgia. Because Troncalli did not finance the car, it contemplated no "future consequences," *Burger King, 471 U.S. at 463, 105 S.Ct. 2174,* and created no "continuing obligations" affecting Alabama. *471 U.S. at 475-76, 105 S.Ct. 2174.*

Case has cited no authority in which personal jurisdiction was exercised under facts similar to those presented here. He has thus failed to show that this transaction satisfies the due-process requirement of Rule 4.2(a)(2)(I) for the exercise of specific jurisdiction. Consequently, we do not consider Case's arguments based on Rule 4.2(a)(2)(A)–(E). Instead, we consider whether Case is entitled to discovery in an attempt to prove that Troncalli is subject to general jurisdiction.

### II. Jurisdictional Discovery

[8] Case contends that "Troncalli is not entitled to mandamus relief, because," he insists, "the trial court could have properly denied the motion to dismiss to allow [Case] to conduct jurisdictional discovery." Case's brief, at 22. He argues that, because the "only basis for a finding that Troncalli does not do business in Alabama is the affidavit testimony of its general manager," he is entitled to "probe" that testimony with "written discovery and depositions." *Id.* at 25-26.

[9][10] " 'It is well established that a ... court has the power to require a defendant to respond to discovery requests relevant to his or her motion to dismiss for lack of jurisdiction.' " *468 Andersen v. Sportmart, Inc.,* 179 F.R.D. 236, 241 (N.D.Ind. 1998) (quoting *Ellis v. Fortune Seas, Ltd.,* 175 F.R.D. 308, 311 (S.D.Ind.1997)). "However, it is also well established that a plaintiff does not enjoy an automatic right to discovery pertaining to personal jurisdiction in every case." *Id.* "[T]o be permitted jurisdictional discovery, plaintiff must at least *allege facts* that would support a *colorable claim* of jurisdiction." *Schenck v. Walt Disney Co.,* 742 F.Supp. 838, 840 n. 1 (S.D.N.Y.1990) (emphasis added). See also *Ellis v. Fortune Seas, Ltd.,* 175 F.R.D. 308, 312 (S.D.Ind.1997); *Hansen v. Neumueller GmbH,* 163 F.R.D. 471, 475 (D.Del.1995);

*Daval Steel Prods. v. M.V. Juraj Dalmatinac,* 718 F.Supp. 159, 162 (S.D.N.Y.1989); *Rich v. KIS California, Inc.,* 121 F.R.D. 254, 259 (M.D.N.C.1988).

[11] A request for jurisdictional discovery must offer the court "more than conjecture and surmise in support of [the] jurisdictional theory." *Crist v. Republic of Turkey,* 995 F.Supp. 5, 13 (D.D.C.1998). "[The] standard is quite low, but a plaintiff's discovery request will nevertheless be denied if it is only based upon 'bare,' 'attenuated,' or 'unsupported' assertions of personal jurisdiction, or when a plaintiff's claim appears to be 'clearly frivolous.' " *Andersen,* 179 F.R.D. at 242.

Case has failed to satisfy this standard. The allegations of his complaint do not "support a colorable claim of [general] jurisdiction." On the contrary, the only jurisdictional allegations are that Troncalli "is a foreign corporation doing business in Cumming, Georgia"; that Alexander Dodge discovered a vehicle in possession of Troncalli in Georgia; and that Case traveled to Georgia to take possession of the vehicle. A discovery request based on these allegations presents nothing but "conjecture and surmise" regarding the existence of general jurisdiction and is, therefore, due to be denied.

### III. Summary

In summary, the trial court erred in denying Troncalli's motion to dismiss the complaint as to it. Troncalli's mandamus petition is, therefore, granted. The trial court is directed (1) to vacate its order denying Troncalli's motion to dismiss, and (2) to enter an order dismissing the complaint against Troncalli.

PETITION GRANTED; WRIT ISSUED.

HOUSTON, SEE, LYONS, BROWN, HARWOOD, and STUART, JJ., concur.

JOHNSTONE, J., concurs in part and dissents in part.

JOHNSTONE, Justice, (concurring in part and dissenting in part).

But for one exception, I concur in the holding, and its rationale, that the contacts of Troncalli with Alabama, as presented to the trial court, do not support in

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

876 So.2d 459
876 So.2d 459
**(Cite as: 876 So.2d 459)**

personam jurisdiction over Troncalli. Therefore, I concur in the judgment insofar as it requires that the denial of the motion to dismiss be vacated. My exception to the rationale for this holding is that I do not endorse certain federal cases cited by the main opinion, or the parenthetical explanations of those cases, to the extent that they may be construed as inconsistent with any of the Alabama Supreme Court cases cited in the main opinion or with any other Alabama Supreme Court cases. The federal cases I do not necessarily endorse are: *Network Prof'ls, Inc. v. Network Int'l, Ltd.,* 146 F.R.D. 179, 181 n. 1 (D.Minn.1993); *Wines v. Lake Havasu Boat Mfg., Inc.,* 846 F.2d 40 (8th Cir.1988); *Chung v. NANA Dev. Corp.,* 783 F.2d 1124, 1126 (4th Cir.1986); *Charia v. Cigarette Racing Team, Inc.,* 583 F.2d 184, 189 (5th Cir.1978); *Butler v. Beer Across America,* 83 F.Supp.2d 1261 (N.D.Ala.2000); *Stuart v. Spademan,* 772 F.2d 1185 (5th Cir.1985); **\*469** *Benjamin v. Western Boat Building Corp.,* 472 F.2d 723 (5th Cir.1973); *Douglas v. Modern Aero, Inc.,* 954 F.Supp. 1206 (N.D.Ohio 1997); and *Highway Auto Sales, Inc. v. Auto-Konig of Scottsdale, Inc.,* 943 F.Supp. 825 (N.D.Ohio 1996).

I respectfully dissent from foreclosing the plaintiff from conducting jurisdictional discovery. For aught that appears in the mandamus materials now before us, the trial court has not addressed the matter of jurisdictional discovery and could reasonably allow the plaintiff an opportunity to make the requisite showing. Therefore, I further respectfully dissent from directing the trial court to dismiss the complaint against Troncalli.

876 So.2d 459

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.