1    A.    My husband did.

2    Q.    And was there some discount that he
3 got?  Is that the reason why he would typically
4 get those --

5    A.    I'm not certain about that.

6    Q.    At any point do you ever recall
7 hearing your husband mention whether he had ever
8 had any sort of training with respect to tire
9 servicing, inspecting or maintenance?

10         Have you ever heard him say whether
11 he ever had any sort of training like that?

12   A.    I can't -- I'm not certain.

13   Q.    Now, your lawyer has served us this
14 morning with signed copies of your interrogatory
15 responses.

16         Let me ask it this way.  Have you
17 received information since the accident
18 indicating that your husband may have had some
19 tire problems prior to the accident?

20   A.    Could you repeat the question?

21   Q.    Have you received information since
22 the accident -- well, let me start here.

23         Do you have any personal knowledge

Page 32

1  of any problems that were experienced with the
2  tires that were on the vehicle at the time of
3  the accident?
4      A.    No, I don't.
5      Q.    Have you received information since
6  the accident indicating that your husband, in
7  fact, did have problems with one or more of the
8  tires that were on the vehicle at the time of
9  the accident?
10     A.    No.
11     Q.    Did you ever drive this van prior
12 to the accident?
13     A.    Sometimes.
14     Q.    How often?
15     A.    Not regular at all.
16     Q.    All right. So, as I understand it,
17 this accident was in October 2003; is that
18 correct?
19     A.    Yes.
20     Q.    Do you know when the last time
21 prior to that you would have driven that van?
22     A.    I cannot recall with any certainty,
23 no.

1    Q.    Okay. Do you think you'd driven it
2 at all in 2003? Can you say one way or the
3 other?
4    A.    I can't say with any certainty.
5 I'm not sure.
6    Q.    Not sure. Do you have in your mind
7 a picture of the last time when you know you
8 drove it, when that would have been?
9    A.    I'm not certain.
10    Q.    Going back to the tire purchases
11 for the ones that were on the vehicle at the
12 time of the accident, do you know one way or the
13 other whether those tires were bought new or
14 used?
15    A.    I believe they were new.
16    Q.    Okay.
17    A.    I'm fairly certain they were new.
18    Q.    And you believe that based on what?
19    A.    Based on the fact that my husband
20 bought new tires.
21    Q.    He would typically buy new tires.
22 Do you ever recall him buying used tires?
23    A.    Not to my knowledge. Typically, he

1  Q.  Do you know how your husband used it other than driving y'all to church on Sunday?

3  A.  Whenever we would take trips, we would drive in the van. And I'm trying to remember.

Before my husband's death, he was activated militarily, and maybe sometimes he would drive it back and forth to -- not very much, but he would swap it out between that and the Audi or the truck, one, going back and forth to Dothan.

12  Q.  When he got activated, would he have to go back and forth to Dothan?

14  A.  He was staying down there through the week, and he would come home on the weekend.

16  Q.  Was your husband in the reserves?

17  A.  Yes.

18  Q.  How long had he been in the reserves?

20  A.  Over 30 -- a long time. I'm not certain. Thirty something years, I think.

22  Q.  Do you have a judgment from his use of the vehicle what percentage of the time you

1  were in it with him?

2           In other words, do you know whether
3  you were in it 15 percent of the time when he
4  used it, 20 percent, 50 percent?  Do you have
5  any judgment on that one way or the other?

6       A.      I would say most of the time that I
7  -- on the weekends, you know --

8       Q.      Right.

9       A.      -- when he used it.

10      Q.      You would be in there with him most
11 of the time?

12      A.      The majority of the time I would
13 say.

14      Q.      But during the week when he would
15 use it, were you in it with him?

16      A.      Not all the time, no, because I was
17 working.

18      Q.      Okay.  So, then the majority of the
19 time on the weekend you would be in it with him,
20 but during the week when he used it, the
21 majority of the time you would not be with him;
22 is that right?

23      A.      I would say that would be correct.

1    Q.    Do you know how often he used it
2  during the week?
3    A.    I can't say with any degree of
4  certainty because, you know, he would swap out
5  with his other vehicle.  I'm not certain.
6    Q.    Do you know if anyone else drove
7  the vehicle other than your husband and
8  yourself?
9    A.    I would say no one very much.
10   Q.    Have you ever seen anyone else
11 drive it?
12   A.    Are you asking me over the entire
13 life of the van have I ever seen --
14   Q.    Well, let's just say in the last
15 two years of the van.
16   A.    I had have to say very rarely.  I
17 don't ever -- I can't recall anybody else
18 driving it other than me and my husband.
19   Q.    What about in the last say five
20 years of the van being in your possession?
21   A.    I can't recall with any degree of
22 certainty.  But if someone did drive it, it
23 would be very rarely.  Maybe my father-in-law

# ALABAMA UNIFORM TRAFFIC ACCIDENT REPORT

AST-2? REV. 1/91
Shaded Areas To Be Used By Data Processing Only
Sheet 1 of 2 Sheet(s)
*Fatalities

**Date:** 10/05/2003  
**Time:** 5:15 PM  
**Day of Week:** S (Sunday)  
**County:** 10  
**Rural:** X  
**Highway Classification:** Interstate

**On Street Road or Highway:** Interstate 65  
**At Intersection of or Between (Node 1):** Butler County Road 41  
**And (Node 2):** Butler County Road 45

**Street or Road Code:** I065 / 7583  
**Node Code:** 7586  
**Feet/Miles From Node 1 or 2:** (Circle One)

**Intersection Related:** Not Int Related  
**Mile Post:** 132.85  
**Control Access Hwy Loc:** 1 Main Rd  
**Prime Contr Circms:** 16  
**Prime Contr Unit No:** 1

**First Harmful Event:** 69  
**Event Location:** 2  
**Distance to Fixed Object:** ~25 FT

Non-Collision event: 10 6 2 0

---

## UNIT 1

**Driver Full Name:** Frank Ellis Johnson  
**Street Address:** 3213 So. Perry Street  
**City and State:** Montgomery, AL  
**Zip:** 36105  
**Telephone No:** Unk

**DOB:** 07/03/1947  **Race:** B  **Sex:** M  **DL State:** AL  
**Driver License No:** 2424224  **DL Class:** BM  **DL Status:** C  **CDL Status:** C

**Place of Employment:** UNKNOWN  
**Liability Insurance Co:** UNKNOWN  
**Social Security No:** 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  
**Residence Less Than 25 Miles:** No

**Driver Condition:** 1 - No Defect  
**Sobriety/Officer's Opinion:** Alcohol: No, Drugs: No  
**Type Test Given:** No Test  **Test Results:** N/A

**Maneuver:** 01  
**Travel Road Name:** Interstate 65  
**Road Code:** I065  
**Travel Direction:** N  
**Other Contr Circumstance:** 26  
**Prime Harm Event:** 01  
**Event Loc:** 2

**Veh Year:** 1985  **Make:** CHEV  **Model:** C20  **Body:** NA  
**V.I.N.:** 1GBEG25H5F7177613  
**License Tag Number:** 54716  **State:** AL  **Year:** 2004

**Owner's Name:** Same as Driver

**Type:** 4 - Van  
**Usage:** 1 - Personal  
**Hazardous Cargo:** 1 - None  
**Attachment:** 1 - None  
**Contributing Defect:** 5 - Tires

**Speed Limit:** 70 MPH  **Est. Speed:** 70 MPH  
**Citation Offense Charged:** None  
**Damage Severity:** 3 - Disabled  
**Vehicle Towed Away:** Yes  
**Occupants in Unit:** 6  
**Enter Point of Initial Impact:** 10

**Vehicle Towed BY Whom:** Lowery's Wrecker Service  
**To Where:** Lowery's Wrecker Service - Local

---

## UNIT 2

(blank / illegible)

---

**CODES** (Contributing Circumstances, Driver Maneuver, Pedestrian Action, Event Location — standard form codes)

## SEATING

**Unit 1** Other Involved Unit (Circle One):
| 1 | 2 | 3 | 10 |
|---|---|---|---|
| 1 | 99 | 24 |   |
| 4 | 5 | 6 | 11 |
|   | 99 | 99 |   |
| 7 | 8 | 9 |   |
|   | 99 | 99 |   |

12 - Pedestrian
13 - Rider of Domestic Animal
14 - Occ. of Non-Motorized Vehicle
15 - Victim of Other Circumstance/ Codes Not Applicable

Other Involved Safety Equipment: ___

**Unit 2** Other Involved Unit (Circle One):
| 1 | 2 | 3 | 10 |
|---|---|---|---|
| X |   |   |   |
| 4 | 5 | 6 | 11 |
| 7 | 8 | 9 |   |

12 - Pedestrian
13 - Rider of Domestic Animal
14 - Occ. of Non-Motorized Vehicle
15 - Victim of Other Circumstance/ Codes Not Applicable

Other Involved Safety Equipment: ___

**CODES — SAFETY EQUIPMENT**
01 - None Installed
95 - Not Applicable
99 - Unknown (Any Type)
**Lap Belt Only**
11 - Fastened
12 - Not Fastened
**Lap/Shoulder Harness**
21 - Lap Only Used
22 - Neither Used
23 - Shoulder Only Used
24 - Both Used
**Motorcycle Helmet**
31 - None Used
32 - Used
**Air Bags**
41 - Deployed, Belts Used
42 - Not Deployed, Belts Used
43 - Deployed, Belts Not Used
44 - Not Deployed, Belts Not Used
**Child Restraint**
81 - Child Restraint Used
82 - Other Restraint Used
83 - None Used
**Pedal Cycle/Pedestrian**
91 - Contrasting Clothing
92 - Non-contrasting Clothing

## VICTIMS

| Name | Address | Unit No | Seat Pos | Injury Type | Age | Sex | Ejection | First Aid By |
|---|---|---|---|---|---|---|---|---|
| Frank Ellis Johnson | 3213 So. Perry Street, Montgomery, Al. | 1 | 1 | (K) | 56 | M | F | N |
| Taken To: Hudson Funeral Home | Taken By: Hudson Funeral Home | | | | | | | |
| Harrison Johnson SR. | 416 W. Jeff Davis Montgomery, Al. | 1 | 6 | (K) | 85 | M | F | N |
| Taken To: Hudson Funeral Home | Taken By: Hudson Funeral Home | | | | | | | |

**CODES**
**Injury Type:** K Killed; B Bruise/Abrasion/Swelling; A - Visible or Carried from Scene; C - Not Visible—Has Pain/Faint
**Ejected:** N - Not; F - Fully; P - Partially; T - Trapped; U - Unknown; A - Not Applicable
**First Aid By:** A - Ambulance Attended; D - Doctor; M - Paramedic; O - Other; P - Police; U - Unknown; N - None

## NARRATIVE AND DIAGRAM

Diagram Not To Scale — Interstate 65

**Officer's Opinion of What Happened:** According to witness statements and evidence observed at the scene of the crash: Unit 1 was Northbound on Interstate 65. The left rear tire apparently rapidly deflated and the vehicle went out of control. Unit 1 left the roadway to the right and went up a side-slope. Unit 1 then began to overturn and came to final rest in the entrance road to the rest area. The two deceased persons were ejected. The other occupants were partially ejected or trapped also. The deceased were pronounced fatal at the scene.

## ROADWAY ENVIRONMENT

Unit 1: **1**    Unit 2: **X** (N/A)

**Contributing Road Defects:** (4) 4 - None; 1 - Shoulders Low; 2 - Shoulders High; 3 - Holes, Bumps, Etc.; 8 - Other
**Surface Construction:** (1) 1 - Asphalt; 2 - Concrete; 3 - Brick; 4 - Unpaved; 8 - Other
**Condition:** (1) 1 - Dry; 2 - Wet; 3 - Icy; 4 - Snowy/Slushy; 5 - Muddy; 8 - Other
**Accident in Or Related To Road Construction Zone?** Yes / (No)
**Material in Roadway (Contributing):** (1) 1 - None; 2 - Rocks; 3 - Trees/Limbs; 4 - Dirt; 5 - Gravel; 6 - Oil/Petrol; 8 - Other
**Material Source:** (1) 1 - Not Applicable; 2 - Natural Environment; 3 - Dropped From Vehicle; 4 - Already in Road, But Fell From Vehicle; 8 - Other; 9 - Unknown
**Character:** (1) 1 - Straight—Level; 2 - Straight—Down Grade; 3 - Straight—Up Grade; 4 - Straight—Hillcrest; 5 - Curve—Level; 6 - Curve—Down Grade; 7 - Curve—Up Grade; 8 - Curve—Hillcrest

**Vision Obscured By:** (97) 97 - Not Obscured; 1 - Buildings; 2 - Signboard; 3 - Trees, Crops, Bushes; 4 - Blowing Snow/Sand; 5 - Hillcrest; 6 - Curve in Road; 7 - Fog; 8 - Parked Vehicle; 9 - Moving Vehicle(s); 10 - Blinded by Sunlight; 11 - Fire/Smoke; 12 - Dust; 13 - Blinded by Headlights; 14 - Embankment; 15 - Rain on Windshield; 16 - Snow on Windshield; 98 - Other; 99 - Unknown

**Traffic Control:** 1 - Police Officer; 2 - R.R. Crossing Gates; 3 - R.R. Flashing Lights; 4 - R.R. Cross Bucks/Pave Mark; 5 - Pedestrian Control; 6 - Traffic Signal; 7 - Flashing Beacon; 8 - Stop Sign; 9 - Yield Sign; 10 - Lane Control Device; 11 - Flagger; 12 - No Passing Zone; (97) 97 - None; 98 - Other
**Traffic Control Functioning:** Yes/No (N/A)    **DOT Railroad Crossing No:** NA

**Opposing Lanes Separated By:** 97 - None; 1 - Paved Surface; (2) 2 - Unpaved Surface; 3 - Broken Painted Line; 4 - Solid Painted Line; 5 - Concrete Barrier; 6 - Metal Guard Rail; 7 - Fence; 8 - Other Barrier

**Trafficway Lanes:** 1 - One Lane; 2 - Two Lanes; 3 - Three Lanes; (4) 4 - Four Lanes; 5 - Five Lanes; 6 - Six Lanes or More
**One-Way Street:** Yes / (No)

## INVESTIGATION

**Light:** 1 - Daylight; 2 - Dawn; (3) Dusk; 4 - Darkness—Road Not Lit; 5 - Darkness—Road Lit
**Weather:** 1 - Clear; (2) Cloudy; 3 - Rain; 4 - Snow; 5 - Sleet/Hail; 6 - Crosswind; 7 - Fog; 8 - Other
**Locale:** (1) Open Country; 2 - Residential; 3 - Shop'g or Business; 4 - Mfg. or Industrial; 5 - School; 6 - Playground; 8 - Other
**Non-Vehicular Property Damage:** 1 - None Visible; 2 - Light; 3 - Moderate; (4) Severe
**Property Damage Description:** Highway Signage
**Owner:** Al. Dept. of Transportation
**Address:** Greenville, Al.

| Time Police Notified | Time Police Arrived | Time EMS Arrived | Name of Photographer |
|---|---|---|---|
| 5:17 PM | 5:22 PM | 5:25 PM | T. Ellis Farley |

| Witness Full Name | Address | Telephone |
|---|---|---|
| Ann Yarbrough | 2436 5th St. NW Birmingham, Al. 35215 | 205 853-6575 |
| Witness Full Name | Address | Telephone |

| Name of Investigating Officer | Officer ID | Agency ORI | Supervisor Reviewed |
|---|---|---|---|
| Cpl. T. Ellis Farley | 982 | ALAST2100 | TEF |
| Name of Other Investigating Officers at Scene: Trooper James Moorer | Officer ID | ALAST2100 | |

The data on this report reflects my best knowledge, opinions and beliefs covering the accident, but no warrant as to the factual accuracy thereof.
Signature of Investigating Officer: T. Ellis Farley #982    Date: 10-5-2003

# ALABAMA
# UNIFORM TRAFFIC ACCIDENT REPORT

LOCAL CASE NO. _____

SHEET __2__ OF __2__ SHEET(S)

AST No. 34 Rev. 4/85

## SUPPLEMENTAL SHEET

**ADDITIONAL ACCIDENT VICTIMS**

| # | Name | Address | Taken to | Taken by | Unit No. | Seat Pos. | Injury Type | Age | Sex | Ejection | First Aid By |
|---|------|---------|----------|----------|----------|-----------|-------------|-----|-----|----------|--------------|
| 3 | Yvonne Johnson | 3213 So. Perry Street, Montgomery, Al. | LV Stabler Hospital - Greenville, Al. | GEMS Rescue | 1 | 3 | A | 50 | F | P | A |
| 4 | Joi Johnson | 3213 So. Perry Street, Montgomery, Al. | LV Stabler Hospital - Greenville, Al. | GEMS Rescue | 1 | 9 | A | 17 | F | P | A |
| 5 | Frank Ellis Johnson II | 3213 So. Perry Street, Montgomery, Al. | LV Stabler Hospital - Greenville, Al. | GEMS Rescue | 1 | 7 | A | 21 | M | F | A |
| 6 | Lizzie Johnson | 3213 So. Perry Street, Montgomery, Al. | LV Stabler Hospital - Greenville, Al. | GEMS Rescue | 1 | 4 | A | 78 | F | P | A |
| 7 | | | | | | | | | | | |
| 8 | | | | | | | | | | | |
| 9 | | | | | | | | | | | |
| 10 | | | | | | | | | | | |
| 11 | | | | | | | | | | | |
| 12 | | | | | | | | | | | |

**DESCRIBE WHAT HAPPENED (Refer to vehicles by number)**

**ADDITIONAL NARRATIVE SPACE**

For Narrative See Sheet 1 of 2

Diagram on Sheet 1 of 2

| Diagram Not to Scale | = | (10 feet) | Location | | Time | A.M. |
|---|---|---|---|---|---|---|
| Diagram Scale 1 inch | | (20 feet) | Butler County | | 5:15 | P.M. |
| Signature of Reporting Officer(s) | | | Officer ID | Reporting Police Agency ORI | DATE | |
| T. Ella Finley #982 | | | 982 | ALAST2100 | Month 10 | Day 05 | Year 2003 |



IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

HARRISON JOHNSON, Jr., et al.　　　　　　)
　　　　　　　　　　　　　　　　　　　　　　)
　　　　Plaintiffs,　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　　　　　　) CIVIL ACTION NO.:
　　　　　　　　　　　　　　　　　　　　　　) 2:06CV290-SRW
GENERAL MOTORS CORPORATION;　　　　　　　　)
et al.　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　　)
　　　　Defendants.　　　　　　　　　　　　)

### AFFIDAVIT OF WAYNE JOHNSON

After being first duly sworn appeared Wayne Johnson who now deposes and says as follows:

My name is Wayne Johnson. I am a resident of the State of Alabama. I am over the age of eighteen (18) years and I have personal knowledge of all matters set out in this affidavit. I understand that this affidavit is being submitted in the United States District Court, Middle District of Alabama, Northern Division in Case Number 2:06CV290-SRW and it will be considered to be sworn testimony.

I am a member of the United States Armed Forces Naval Division and have been a member for eighteen (18) years. I am the son of Harrison Johnson, Sr. and the brother of Frank Johnson, Sr. I was deposed on matters relating to the above referenced case on March 1, 2006. I testified in said deposition concerning a ride my brother, Frank Johnson, Sr. and I went on prior to taking Harrison Johnson, Sr. to his first Atlanta Braves baseball game. On said trip, a noise came from the rear section of the van such as a clacking noise as well as vibration/shaking. This occurred in June 2003. Due to the location, my brother drove the van to a place he called May Brothers, which is a defendant in the herein referenced case, for them to inspect and fix the problem that I was aware of. As stated in my deposition, that was the first visit I'd ever made to "May Brothers" or to Union Springs, Alabama. The van was taken in to "May Brothers" for an inspection by its employees due to the noise and shaking condition of the van. After said deposition, I once again verified the location of "May Brothers." Attached hereto as "Exhibit 1" is a photograph of "May Brothers" in Union Springs, Alabama which is the defendant, May Brothers, Inc. This is in fact the location where the van was taken for the inspection. The photograph shows accurately the location and specifically the business which the van was taken to in June 2003 by my brother and myself due to the clacking

noise and rough ride for an inspection of the tires. May Brothers did not ever remove the tire or wheel from the van which is the same van which is the subject of this litigation. May Brothers nor any of its employees drove the van during their inspection nor did anything other than to put it on a lift.

    Further Affiant saith not.

*(signature)*
WAYNE JOHNSON

SWORN TO AND SUBSCRIBED before me this 25 day of April, 2006.

*(signature)*
Notary Public LEGAL OFFICER, USS PONCE (LPD-15)
My Commission Expires:_____

*(signature)*
BLAINE C. STEVENS (STE091)
Attorney for the Plaintiffs

OF COUNSEL:
STRICKLAND &KENDALL, L.L.C.
Post Office Box 99
Montgomery, Alabama 36101-0099
(334) 269-3230
(334) 269-3239 / fax





IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION



PLAINTIFF'S EXHIBIT D

| | |
|---|---|
| HARRISON JOHNSON, Jr., et al. ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | CIVIL ACTION NO.: |
| ) | 2:06CV290-SRW |
| GENERAL MOTORS CORPORATION; ) et al. ) | |
| Defendants. ) | |

## AFFIDAVIT OF JON M. CRATE

**COMES NOW** Jon Crate, who first being duly sworn, deposes and says:

My name is Jon Michael Crate, and I am a resident of Woodstock Georgia. I am over the age of eighteen years, and I have personal knowledge of all matters set forth in this affidavit. All matters testified to in this affidavit are based upon my examination of the accident tire at issue in this case, as well as my accumulated experience with other failed tires, my training, education and experience.

I hold a Bachelors of Science degree in Chemistry from the University of Central Florida and a Masters of Science degree in Polymers from the Georgia Institute of Technology. I have over fifteen years of work experience performing chemical and failure analysis on polymeric and composite materials including tires. I have testified by deposition in nineteen tire failure cases and before juries in five tire failure trials. My credentials and opinions were counted as reliable when considered in four Daubert hearings in tire failure cases. I have never been prohibited from testifying as an expert witness.

I have had an opportunity to perform a preliminary examination of the subject tire at my laboratory in Marietta Georgia. The tire was examined non-destructively including measurement of tread depths, visual inspection, microscopic inspection, and photographed.

A considerable amount of a white crystalline material was found on, and only on, the portion of the fracture surface that is under the first steel belt. A microscopic sample of the white material was collected, analyzed by infrared spectroscopy and then retained in a small sample bag for any further analysis that may be required. The infrared spectroscopy of the white crystalline material reveals it to be consistent with paraffin wax, a common and essential ingredient of sidewall and tread rubber, but not a desirable, or normal, component for internal rubber recipes.

It is my opinion in this case that the Firestone Firehawk tire at issue, DOT Number: W2M2-JBA229, was manufactured with areas of defective bonding between the rubber layers within the tire leading ultimately to the failure of the tire by tread-belt detachment from the tire carcass.

There are several square inches of fracture surface which show fatigue beach marks and fatigue polishing. These are both indicative of a progressive and long standing separation which has grown larger with time and use until a critical size was reached and the forces applied to the tire exceeded the strength of the weakened tire and fast fracture tread-belt detachment ensued.

The fatigue beach marks are generated by the cyclic nature of tires in use where the failure progresses and stops and the result is a fracture surface resembles growth rings in a tree or the marks left in sand on a beach when the tide goes out. The polishing is due to the continued movement of one face against the other. In time the beach marks can be erased, so to speak, by the rubbing motion wearing them down to a polished surface.

I have been informed that the van was driven only occasionally and usually on weekends to church outings and that the deposition of Wayne Johnson indicates that the van was taken to May Brothers, Inc. in Union Springs, Alabama some time in June before the accident in October 2005. The condition of the tire as I examined it and the heavy polishing which was found on the inner surfaces that I examined lead me to the conclusion that the tire had been undergoing the progressive fatigue failure initiated by inadequate adhesion as noted above long before June when the tire was

examined by May Brothers. Given the fact that this van was driven only sparingly between June and October 2005, it is reasonable to conclude that the adhesion failure was rather advanced by June 2005.

AFFIANT FURTHER SAITH NOT.

Respectfully submitted this the 21st day of April 2006.

_____[L.S.]
JON M. CRATE

STATE OF GEORGIA )
COUNTY OF Cobb )

Before me, the undersigned, personally appeared **Jon M. Crate**, who is known to me and who, being by me first duly sworn, deposes on oath and, says that she has read this instrument and has been advised of and understands its nature and effects.

**SWORN TO AND SUBSCRIBED** before me this 21 day of April, 2006.

_____
NOTARY PUBLIC
My Commission Expires: 8/2/09

[SEAL]

_____
BLAINE C. STEVENS (STE091)
Attorney for the Plaintiffs

OF COUNSEL:
STRICKLAND & KENDALL, L.L.C.
Post Office Box 99
Montgomery, Alabama 36101-0099
(334) 269-3230
(334) 269-3239 / fax



MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| HARRISON JOHNSON, Jr., et al. ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | CIVIL ACTION NO.: |
| ) | **2:06CV290-SRW** |
| GENERAL MOTORS CORPORATION; ) | |
| et al. ) | |
| ) | |
| Defendants. ) | |

### AFFIDAVIT OF DAVID DOWNING

**COMES NOW** David Downing, who after first being duly sworn deposes and says as follows:

My name is David Downing, and I am a resident of Enterprise, Alabama. I am over the age of twenty-one (21) years, and I have personal knowledge of all matters set forth in this affidavit. I understand that this affidavit is being submitted into court and is considered to be sworn testimony. The opinions I express in this affidavit are based upon my education, training, and substantial experience in the tire business. I have been in the tire business for over twenty years and have personally been involved or supervised the installation, removal, and/or repair of countless tires over that time. Also, I have been involved in numerous instances where customers have come into my place of business and made complaints of rough ride, noise, or "out of balance" complaints regarding their tires, and have made numerous repairs or replacements in those instances.

It is my understanding that the van at issue in this case was taken to May Brothers, Inc. sometime in June prior to the accident in October 2003. According to the deposition testimony of Wayne Johnson, the van was experiencing a rough ride and a "clacking" noise was present at the time the van was taken to May Brothers for inspection. It is reasonable to conclude that May Brothers was made aware of the rough ride and noise coming from the vehicle. Further, I understand from Wayne Johnson's deposition testimony that May Brothers put the van up on a lift and examined the under side of the van but did not remove the tires and wheels from the van in order to perform a thorough investigation of the complaints made by the van owner.

I have further been informed that there are no records of May Brothers, Inc. which would either confirm or deny the fact of the van being taken to May Brothers as Wayne Johnson claims.

I am aware that a tread separation caused this accident, and I am further informed by the affidavit of Jon Crate that the separation was advanced by the time the tire was presented to May Brothers in June 2003. Further, this is a reasonable conclusion given the fact that the van was experiencing a rough ride at that point. Based upon my experience in the tire industry, it is my opinion that May Brothers should have dismounted the tires and wheels and put these components on a "spin-balancer" machine. Under the circumstances, it is likely that such testing would have indicated that the tire functioned abnormally. This would have led to further investigation and it is more likely than not that the damage to the tire would have been discovered at that point. Due care in this instance would at least have required Mays Brothers to attempt to spin-balance the tire at least.

Further, Mays Brothers, Inc. should have generated some kind of repair order or record to document what was done with the van once it was brought in for service. Due care, and good business practice, would have required the keeping of such records in the normal course of business.

FURTHER DEPONENT SAITH NOT.

_____
DAVID DOWNING

SWORN TO AND SUBSCRIBED before me this 27th day of April, 2006.

_____
Notary Public
My Commission Expires: _____   My Commission Expires April 21, 2008

_____
BLAINE C. STEVENS (STE091)
Attorney for the Plaintiffs

OF COUNSEL:
Strickland & Kendall, L.L.C.
Post Office Box 99
Montgomery, Alabama 36101-0099
(334) 269-3230
(334) 269-3239 / fax