IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| HARRISON JOHNSON, JR., et al., | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) CIVIL ACTION NUMBER: |
| BRIDGESTONE FIRESTONE NORTH AMERICAN TIRE, LLC, et al., | ) CV-2:06-290 ) ) ) ) |
| Defendant. | ) |

**FIRESTONE'S REPLY TO MOTION TO REMAND**

Defendant Bridgestone Firestone North America Tire LLC ("Firestone") submits the following reply to Plaintiffs' Motion to Remand.

**INTRODUCTION**

1.  Plaintiffs' motion to remand should be denied because there is no possibility plaintiffs can prove a cause of action against May Brothers for negligent inspection without a witness who can testify as to what discussions took place at May Brothers regarding the vehicle in June 2003. Without such a witness, no one can say whether May Brothers may have told Frank Johnson, Sr., to bring the vehicle back for additional check-

up or repairs. No one can say whether May Brothers may have told Frank Johnson, Sr., to leave the vehicle at the shop. No one can say whether Frank Johnson, Sr., may have refused to have repairs made to the vehicle because of cost or other reasons. Thus, even assuming Frank Johnson, Sr., took the vehicle to May Brothers for inspection, who knows what May Brothers may have told Frank Johnson, Sr. about the subject vehicle after they inspected the vehicle. Likewise, who knows what instructions Frank Johnson, Sr. may have given May Brothers about its inspection.

      2.    Plaintiffs' motion to remand should also be denied because the only evidence of what inspection may or may not have been conducted by May Brothers on the subject vehicle comes from Wayne Johnson's affidavit, which should be stricken and disregarded by the Court. Wayne Johnson's affidavit is an improper basis for plaintiffs' motion to remand because it is inherently inconsistent with Wayne Johnson's deposition testimony. Thus, without the affidavit, there is no evidence as to what May Brothers may or may not have done to the vehicle in June 2003.

I.  **There is No Evidence of What Discussions May Have Taken Place Between May Brothers and Frank Johnson, Sr.**

3. As discussed in Defendants' Notice of Removal, plaintiffs claim that four months before the subject accident Frank Johnson, Sr., and Wayne Johnson took the subject vehicle to May Brothers because of a clacking noise and shaking. Wayne Johnson testified in deposition that the two men had no idea what was either causing the clacking noise or shaking and that the clacking noise and shaking stopped after the two men left May Brothers. Additionally, Wayne Johnson testified that it was Frank Johnson, Sr., who dealt with the employees at May Brothers and that he has no personal knowledge of what may have been said between Frank Johnson, Sr. and any May Brothers' employee regarding the subject vehicle. Thus, there is no one who can testify about what communications were exchanged between May Brothers and Frank Johnson, Sr., regarding the vehicle.

4. The affidavits of Wayne Johnson and David Downing submitted by the Plaintiffs in support of their Motion to Remand do not change those facts. Neither Wayne Johnson nor David Downing have any personal knowledge of what discussions may have taken place between Frank Johnson, Sr., and any one at May Brothers regarding the vehicle.

Therefore, the arguments plaintiffs make in their motion regarding what May Brothers may have said is unsupported. For example, plaintiffs state in their motion to remand that, "May Brothers pronounced the van safe to drive." However, there is no evidence, testimony or otherwise to support this statement. To the contrary, Wayne Johnson states in his deposition that he has no personal knowledge of what Frank Johnson, Sr. said to May Brothers about the vehicle or vice versa. *See* Exhibit "A", Wayne Johnson depo, pp. 29-30.

      5.    Since plaintiffs have no evidence of what was discussed between Frank Johnson, Sr., and May Brothers, plaintiffs cannot maintain a cause of action against May Brothers for negligent inspection and their motion to remand should be denied.

**II.    There is No Evidence of What May Brothers Did or Did Not Do To The Subject Vehicle**

      6.    The fact that there are no witnesses who can testify as to what may have been said between May Brothers and Frank Johnson, Sr., regarding the vehicle is fatal to plaintiffs' motion to remand. Additionally, this court should deny the motion to remand because there is no evidence of what May Brothers did or did not do to the subject vehicle in June 2003.

7. Plaintiffs attempt to use an affidavit from Wayne Johnson, given two months after his deposition, to create a genuine issue of fact as to what May Brothers may or may not have done to the subject vehicle in June 200. The affidavit, however, contains statements that contradict Wayne Johnson's deposition testimony. Therefore, those portions of the affidavit should be disregarded by the Court. *See Thomas v. Alabama Council on Human Relations, Inc.*, 248 F.Supp.2d 1105 (M.D. Ala. 2003).

8. On March 1, 2006, Defendants took the deposition of Wayne Johnson. Wayne Johnson provided the following unequivocal answers to the following unambiguous questions:

*A.   What Wayne Johnson says was wrong with the subject van when it was allegedly taken to May Brothers:*

Q. **Yes, sir. In other words, when you went up - - when you and your brother arrived at the service station, did you have in mind what you thought may have been causing the noise you were hearing or what you thought may have been causing the shaking that you were feeling?**

A. **No, sir.**

    Q.    You didn't have any idea what it was?

    A.    No, sir, I did not.

    Q.    Did you - - from what you could tell, do you know whether your brother had any judgment in his mind as to what was causing the noise or the shaking?

    A.    No, sir, I do not.

    Q.    Did he ever say I think it might be this or that or anything like that?

    A.    No, sir.

*See* Exhibit "A", Wayne Johnson depo, pp. 31-32.

    *B.*    *What Wayne Johnson says about communications made with May Brothers:*

    Q.    Who went to talk to the people?

    A.    My brother did, sir.

    Q.    And, tell me what he said.

    A.    As a matter of fact, I don't know what he said, sir, because like when we both got out of the vehicle, all I did, sir, was like - - I just stood there and was looking around at the time.

    Q.    So - -

  A. Yes, sir.

  **Q. - - you weren't present then where you could hear what was being said between him and the person at the service station; is that right?**

  **A. Correct, sir.**

  Q. Did you ever talk to anyone at the service station?

  A. No, sir, I did not.

  **Q. Did you ever hear any conversation between your brother and anyone at the service station?**

  **A. No, sir.**

*See* Exhibit "A", Wayne Johnson depo, pp. 29-30.

  **Q. I think somebody asked this. But you don't know if your brother mentioned anything about tires to the people at Mays Brothers?**

  **A. No, sir, I do not.**

*See* Exhibit "A", Wayne Johnson depo, p. 77.

  C. *What Wayne Johnson says about what he saw May Brothers do or not do with the subject van:*

7

>    Q.    So, from your standpoint when you were out there - - and you said looking around at the town?
>
>    A.    Yes, sir.
>
>    **Q.    Okay.  Could you see what the people inside the service station were doing?**
>
>    **A.    No, sir, I did not.**
>
>    **Q.    You just saw it up on a lift?**
>
>    **A.    Yes, sir.**
>
>    **Q.    Do you have any idea what they may have checked?**
>
>    **A.    No, sir.**
>
>    Q.    Did your brother ever express to you his belief or his firsthand knowledge of what they may have checked while that vehicle was in the service station?
>
>    A.    No, sir.
>
>    **Q.    So, is it fair to say then that there was a vibration and a shaking that you felt in the van with your brother.  You had know idea what it was.  Y'all took the van to a service station.  You have no idea what, if anything, they may have checked, but at some point you guys got back into the van.  Is that right?**
>
>    **A.    Yes, sir.**

8

*See* Exhibit "A", Wayne Johnson depo, pp. 33-35.

      D.    *What Wayne Johnson says about May Brothers' conduct with regard to the tires on the vehicle:*

      Q.    But you didn't go back there to watch what took place while the vehicle was driven inside and put up on the lift?

      A.    Correct, sir.

      **Q.    And you don't know if anybody at that location looked at the tires?**

      **A.    No, sir.**

      **Q.    Or rotated the tires or touched the tires in any way?**

      **A.    No sir.**

      **Q.    And you don't know the problem that was causing the clacking noise of if it even had anything to do with the tires or not?**

      **A.    I don't know that, sir.**

*See* Exhibit "A", Wayne Johnson depo, pp. 75-76.

      E.    *What else Wayne Johnson says:*

      Q.    Have you told us everything you know about what happened at this Mays Brothers place the day ya'll were there?

9

   A. Yes, sir, I have.

   Q. Everything you saw, everything you may have heard somebody say?

   A. Yes, sir.

*See* Exhibit "A", Wayne Johnson depo, p. 36.

   9. Wayne Johnson's affidavit submitted in support of plaintiffs' motion to remand absolutely contradicts the above testimony. In his affidavit, Wayne Johnson states that:

   a. The van was taken to May Brothers "in June 2003 by my brother and myself due to the clacking noise and rough ride for inspection of the tires,"

   b. "May Brothers did not ever remove the tire or wheel from the van" and

   c. "May Brothers nor any of its employees drove the van during their inspection nor did anything other than to put it on a lift"

   10. Those statements are inherently inconsistent with the portions of Wayne Johnson's deposition testimony quoted above. It is completely inconsistent for Wayne Johnson to state in his deposition that he

did not see what May Brothers did or did not do with the vehicle or any tires on the vehicle, and then state in his affidavit that May Brothers did not remove the tire or the wheel and did not do anything with the vehicle other than put the van on a lift. It is also inconsistent for Wayne Johnson to state in his deposition that he did not know what caused the clacking noise and vibration and then to state in his affidavit that he and Frank Johnson, Sr., took the van into May Brothers to specifically inspect the tires. Wayne Johnson's affidavit cannot be reconciled with his deposition testimony. Thus, this Court should strike the affidavit and disregard it in considering whether to remand this case.

11. The law in this Circuit is clear that an affidavit, which contradicts testimony on deposition is a "sham" and can be disregarded by the court. *See e.g., Van T. Junkins & Assoc., Inc. v. U.S. Industries, Inc.*, 736 F.2d 656, 658 (11th Cir. 1984); *Enoch v. Firestone Tire & Rubber Co.*, 534 So. 2d 266 (Ala. 1988). The "sham affidavit" concept applies regardless of whether the affidavit is submitted to support or defeat a motion for summary judgment or is submitted to support or defeat a removal. *See Van T. Junkins & Assoc., Inc.*, 736 F.2d at 658 (affirming trial court's entry of summary judgment based on trial court's decision to disregard sham

affidavit); *TKI, Inc. v. Nichols Research Corp.*, 191 F.Supp.2d 1307, 1314 (M.D. 2002) (J. Albritton applied the rules governing a conflict between sworn affidavit and deposition testimony in the context of motions for summary judgment under *Van T. Junkins* and its progeny to the removal context stating that "although the fraudulent joinder standard is not the same as the summary judgment standard, it is a summary-judgment-like process"). The "sham" affidavit concept also applies regardless of whether the affidavit and deposition is that of a party or a non-party witness. *See W.C. Lane v. Celotex Corp.*, 782 F.2d 1526, 1531 (11th Cir. 1986) (questioning whether *Van Junkin* analysis would apply to "disinterested" witness, but applies analysis nonetheless); *Vanlandingham v. Ford Motor Co.*, 99 F.R.D. 1, 3 (N.D. Ga. 1983) (applying analysis to non-party witness).

      12.    The Eleventh Circuit has developed a standard by which to determine when the contradictory nature of testimony renders that testimony inappropriate for consideration as creating genuine issue of material fact. *See Thomas v. Alabama Council on Human Relations, Inc.*, 248 F.Supp.2d 1105, 1112 (M.D. Ala. 2003) (granting motion to strike sham affidavit and citing *Van T. Junkins & Assoc., Inc.*). That standard is as follows: "when a party has given clear answers to unambiguous questions

which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." *Id*. This Court has said that "it is the inherent inconsistency which renders the subsequent affidavit a 'sham.'" *Id*. at 1113.

13. Wayne Johnson unequivocally answered "no" to questions about whether he had any knowledge of what May Brothers did or did not do to the subject van (other than put the vehicle on a lift). Wayne Johnson answered "no" to questions about whether he had any knowledge of what May Brothers did with regard to any of the tires on the vehicle. Similarly, Wayne Johnson unequivocally answered "no" to questions about whether he had any knowledge of what communications transpired between Frank Johnson and May Brothers' employees. Wayne Johnson further testified unequivocally that he did not know what was causing the clacking noise or vibration in the vehicle. Those statements are inherently inconsistent with what Wayne Johnson now tries to say through affidavit. Plaintiffs cannot use an affidavit from Wayne Johnson to contradict his sworn deposition testimony and create a genuine issue of fact in support of their motion to remand.

14. Not only is Wayne Johnson's affidavit inconsistent with his deposition testimony, but also, Wayne Johnson does not have personal knowledge of the matters to which he is attesting in his affidavit. Since Wayne Johnson did not see what May Brothers employees did or did not do to the vehicle during the 40 minutes that the two men were allegedly at May Brothers, other than put the vehicle on a lift, he has no personal knowledge from which to state that May Brothers did not remove the tire or wheel from the van. Also, since Wayne Johnson testified he does not know whether Frank Johnson, Sr., mentioned anything about tires to the people at May Brothers, he has no personal knowledge from which to attest that the subject van was taken to May Brothers specifically for inspection of the tires.

15. Similarly, without any factual basis, plaintiffs state in their motion that "as Wayne watched from outside, the van was put up on a lift and May Brothers undertook some operation of inspection on the underside of the van." However, Wayne Johnson did not see what happened to the vehicle after it was placed on a lift. Wayne Johnson, therefore, has no personal knowledge about what "inspection" may or may not have been

conducted by May Brothers on the subject vehicle. *See* Exhibit "A", Wayne Johnson depo, pp. 33-35.

16. This Court should also disregard Downing's affidavit because it contains statements, which have no foundation. For example, Downing states in his affidavit that, "I understand from Wayne Johnson's deposition testimony that May Brothers put the van up on a lift and examined the underside of the van but did not remove the tires and wheels from the van in order to perform a thorough investigation of the complaints made by the van owner." There is no support for Downing's statement. As stated above, Wayne Johnson's deposition testimony is void of any testimony as to what May Brothers may or may not have done to the vehicle after it was put on a lift. Additionally, to the extent that Downing's affidavit relies on Wayne Johnson's affidavit, it is improper since Wayne Johnson's affidavit should be disregarded.

17. Downing continues in his affidavit to state that, "it is my opinion that May Brothers should have dismounted the tires and wheels and put these components on a "spin-balancer" machine. Under the circumstances, it is likely that such testing would have indicated that the tire

15

functioned abnormally. This would have led to further investigation and it is more likely than not that the damage to the tire would have been discovered at that point. Due care in this instance would at least have required May Brothers to attempt to spin-balance the tire at least." There is also no support for that "opinion," given Wayne Johnson's deposition testimony that he was "looking around at the town" and did not see what was going on with the vehicle inside the shop. *See* Exhibit "A", Wayne Johnson depo, pp. 33-35.

      18.    Plaintiffs further argue in their motion to remand that Downing is "critical of the procedure followed by May Brothers." However, there is no evidence of what "procedure" may or may not have been followed by May Brothers. In fact, Wayne Johnson testified in deposition that he has no idea what May Brothers may have checked on the vehicle. *See* Exhibit "A", Wayne Johnson depo, p. 33. Additionally, Downing was not at May Brothers in June 2003, and therefore, has no personal knowledge about the events which occurred that day.

      19.    The truth of the matter is that plaintiffs cannot establish a cause of action against May Brothers, the only non-diverse defendant,

without evidence as to what communications took place between May Brothers and Frank Johnson, Sr. regarding the vehicle. In an attempt to circumvent this problem, plaintiffs base their remand on unsupported speculation, conjecture and improper affidavits. Plaintiffs' motion to remand, thus, should be denied.

## CONCLUSION

Above premises considered, plaintiffs' motion to remand is due to be denied, and Wayne Johnson's and David Downing's affidavits stricken.

Respectfully submitted,

s/ Hope T. Cannon
One of the Attorneys for
Bridgestone Firestone North American Tire, LLC

OF COUNSEL
Brittin T. Coleman (COL004)
Kenneth M. Perry (PER048)
Hope T. Cannon (STE147)
Bradley Arant Rose & White LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203-2104
Telephone: (205) 521-8000; Facsimile: (205) 521-8800

CERTIFICATE OF SERVICE

    I hereby certify that on May 16, 2006, I electronically filed the foregoing with the Clerk of the Court, using the CM/ECF system which will send notification of such filing to the following:

**Attorneys for Plaintiffs:**
Edward P. Kendall, Esq.
Michael G. Strickland, Esq.
Blaine C. Stevens, Esq.
Strickland And Kendall, LLC
420 South Lawrence Street
Post Office Box 99
Montgomery, AL 36101-0099

Will R. Kelly, Esq.
P.O. Drawer 937
Hayneville, AL 36040-0937

**Attorneys for General Motors Corporation:**
M. Christian King, Esq.
Andrew S. Nix, Esq.
Lightfoot, Franklin & White
400 20th Street North
Birmingham, AL 35203

Robert D. Hays, Esq.
L. Frank Coan, Jr., Esq.
Robert L. Arrington, Jr., Esq.
King & Spalding, LLP
1180 Peachtree Street
Atlanta, GA 30309-3521

**Attorneys for Phil Owens Used Cars, Inc.**
William A. Mudd, Esq.
James M. Strong, Esq.
Miller, Hamilton, Snider & Odom, LLC
1200 Financial Center
505 20th Street North
Birmingham, AL 35203

**Attorneys for Bendix Commercial Vehicle System, LLC:**
Larry W. Harper, Esq.
Keith J. Pflaum, Esq.
Porterfield, Harper, Mills & Motlow, P.A.
22 Inverness Center Parkway
Birmingham, AL 35242-4821

**Attorneys for TRW Vehicle Safety Systems, Inc. and TRW Automobile US, LLC :**
Jack E. Little, Jr.
Pillsbury Winthrop Shaw Pittman LLP
Two Houston Center
909 Fannin 22nd Floor
Houston, TX 77010

Chad W. Bryan
James N. Walter, Jr.
Capell Howard, P.C.
P.O. Box 2069
Montgomery, AL 36102-2069

**Attorneys for May Brothers, Inc.:**
Jay S. Tuley, Esq.
Nix, Holtsford, Gilliland,
     Higgins & Hitson, P.C.
Post Office Box 4128
Montgomery, AL 36103-4128


    and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:

Robert L. Arrington, Jr.
Anne M. Carter
King & Spalding, LLP
1180 Peachtree Street
Atlanta, GA  30309-3521

J. Kenneth Wainwright, Jr.
Harvey Kruse P.C.
1050 Wilshire Drive, Suite 320
Troy, MI  48084-1526

David B. Weinstein
Pillsbury Winthrop Shaw Pittman LLP
Two Houston Center
909 Fannin, Suite 2200
Houston, TX  77010


                                              s/ Hope T. Cannon
                                        One of the Attorneys for
                        Bridgestone Firestone North American
                                              Tire, LLC