IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| HARRISON JOHNSON, Jr., et al. ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | CIVIL ACTION NO.: |
| ) | 2:06CV290-MEF |
| GENERAL MOTORS CORPORATION; ) | |
| et al. ) | |
| ) | |
| Defendants. ) | |

## AFFIDAVIT OF TROY COTTLES

After being first duly sworn, appeared Troy Cottles, who now deposes and say as follows:

My name is Troy Cottles, and I am a resident of the State of Alabama. I am over the age of eighteen years, and I have personal knowledge of all matters set out in this affidavit. I understand that this affidavit is being submitted into court, and is considered to be sworn testimony in this action. I am an engineer by training and have over 16 years of experience in the tire industry. In this period of time I have overseen the development and testing of numerous models of tires. I am also familiar, as a result of my testing and development experience, with the potential failure modes that may be presented in various instances of tire failures. In this case there is a clear failure mode identified in the manner in which this tire failed.

I have had an opportunity to review photographs of the tire taken shortly after the accident giving rise to this action. Also, I have had the opportunity to examine and review photographs and microscopic analysis performed by Jon Crate, also, in this case. Further, I have reviewed the deposition of Wayne Johnson taken earlier in this case. The opinions expressed below are based on my review of the above materials, as well as my own direct inspection of the subject tire itself.

It is my opinion based on my review of the above materials that the tire failed in this incident due to a defect in the bonding between the belts of the tire. Both belts should utilize identical rubber and skin compounds, which when properly formulated and cured results in a completed tire belt system. However, there are various factors that may affect the bond between these and other tire components. Many factors, including, but not limited to, inclusions, impurities, or defective ingredients in the mix composing the rubber compounds themselves, may contribute to bonding failures between both belts and/or other components. .

In this case, the belts of the tire separated from one another, causing the tire to fail. On examination, it is clear that the tire suffered from a bonding failure. Further, the first and second belt portions corresponding to the area where the initial separation began show a significant amount of "polishing" and rubber heat reversion consistent with a failure of bonding. Once rubber reversion began between belts, large areas of the belt surfaces would experience a loss of adhesion, and due to centrifugal forces created while driving on the tire and heat generation over the areas being polished, the surrounding tread would likely have lifted causing a possible ride disturbance. This "polishing" is very clear and may be seen without magnification.    This level of polishing indicates that the bonding failure had been ongoing for quite some time prior to the accident of October 5, 2003. It is my understanding that the vehicle at issue in this case was taken to May Brothers sometime in June, 2003 due to a "rough" ride and a "clacking" noise, among other problems at the time. It is my opinion after having reviewed the above materials that the tire was suffering from bonding failure at this time in June 2003. A bonding failure of the kind seen in this case would reasonably be expected to produce a rough ride and noise at highway speeds. However, such indications may be intermittent in nature, depending on several variables, including highway speed at the time, area of operation, road condition, and temperature. Still, bonding failures severe enough to cause rough ride may be detected by a thorough examination.

It is my understanding from the deposition testimony of Wayne Johnson that the vehicle at issue was taken to May Brothers, Inc. for examination and repair in June 2003. It is further my understanding that Mays Brothers did nothing at the time other than to put the van up on a lift and do a visual examination. In my opinion, based upon my education, training, and considerable experience in the field of tire design, development and testing, that a bonding failure was ongoing as of June 2003. Further, it is my opinion that the tire should have been measured for runout or dynamically re-balanced to complete reasonable evaluation in this situation. It is further my opinion that a thorough examination of the tire at that time, more likely than not, would have disclosed to May Brothers, Inc. that there was serious problem with the accident tire. The amount of "polishing" that I view between the areas of tread and carcass indicate that a serious bonding failure was ongoing as of June 2003. Given the lack of use of the subject van between June 2003 and the accident of October 5, 2003, it is likely that the tire was very near the point of failure as of June 2003. That being the case, it is likely that Mays Brothers, Inc. could have discovered the defect after a reasonably thorough examination of the tire at the time it was presented in June 2003.

FURTHER AFFIANT SAITH NOT.

_____
TROY COTTLES

SWORN TO AND SUBSCRIBED before me this 23rd day of May, 2006.

_____
Notary Public
My Commission Expires: 7-13-09