# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

|  |  |  |
|---|---|---|
| HARRISON JOHNSON, Jr., as administrator of the Estate of Harrison Johnson, Sr.; YVONNE JOHNSON, as Administratrix of Estate of Frank Ellis Johnson, YVONNE JOHNSON, individually; JOI JOHNSON; FRANK ELLIS JOHNSON, II; and LIZZIE JOHNSON, | * |  |
|  | * |  |
| Plaintiffs, | * |  |
|  | * |  |
| vs. | * | <u>2:06CV290-MEF</u> |
|  | * |  |
| BRIDGESTONE FIRESTONE NORTH AMERICAN TIRE, LLC; GENERAL MOTORS CORPORATION; TUGALOO SPORTS VANS, INC.; PHIL OWENS USED CARS, INC.; MAYPOLE CHEVROLET, INC. O & M MOTOR CO. ; MAY BROTHERS, INC.; TEMPLE PRODUCTS OF INDIANA, INC., TRW VEHICLE SAFETY SYSTEMS, INC. AND/OR TRW AUTOMOTIVE U.S. LLC., BENDIX COMMERCIAL VEHICLE SYSTEMS LLC. | * | JURY TRIAL REQUESTED |

FICTITIOUS DEFENDANT "A', whether singular or plural, corporation, or other legal entity who or which designed, manufactured the 1985 Chevrolet C-20 Conversion Van, VIN 1GBEG25H5F7177613; FICTITIOUS DEFENDANT "B" whether singular or plural that person, corporation, or other legal entity who or which was the dealer or seller of the 1985 Chevrolet C-20 Conversion Van, VIN 1GBEG25H5F7177613;

FICTITIOUS DEFENDANT "C" whether singular or plural that person, corporation or other legal entity who or which designed or manufactured the tires on the 1985 Chevrolet C-20 Conversion Van, VIN 1GBEG25H5F7177613 on October 5, 2003;

FICTITIOUS DEFENDANT "D" whether singular or plural that person, corporation or other legal entity who or which was distributor,

dealer, seller or installer of the tires on the 1985   *
Chevrolet C-20 Conversion Van, VIN   *
1GBEG25H5F7177613 on October 5, 2003,   *
  *
FICTITIOUS DEFENDANT "E" whether   *
singular or plural that person, corporation or   *
other legal entity who or which designed,   *
manufactured or supplied the fiberglass roof   *
system installed on the 1985 Chevrolet C-20   *
Conversion Van, VIN 1GBEG25H5F7177613 on   *
October 5, 2003;   *
  *
FICTITIOUS DEFENDANT "F" whether   *
singular or plural that person, corporation or   *
other legal entity who or which modified,   *
customized, or otherwise made changes to the   *
1985 Chevrolet C-20 Conversion Van, VIN   *
1GBEG25H5F7177613;   *
  *
FICTITIOUS DEFENANT "G" whether   *
singular or plural that person, corporation or   *
other legal entity who or which that performed   *
maintenance or repair on the 1985 Chevrolet C-20   *
Conversion Van, VIN 1GBEG25H5F7177613;   *
  *
FICTITIOUS DEFENDANT "H" whether   *
singular or plural that person, corporation or   *
other legal entity who or which designed,   *
manufactured, distributed or sold the seats in the   *
1985 Chevrolet C-20 Conversion Van, VIN   *
1GBEG25H5F7177613;   *
  *
FICTITIOUS DEFENDANT "I" whether   *
singular or plural that person, corporation or   *
other legal entity who or which designed,   *
manufactured, or sold the restraint system in the   *
1985 Chevrolet C-20 Conversion Van, VIN   *
1GBEG25H5F7177613;   *
  *
FICTITIOUS DEFENDANT "J" whether   *
singular or plural that person, corporation or   *
other legal entity who or which that designed,   *
manufactured, installed or sold the door latches   *
on the 1985 Chevrolet C-20 Conversion Van, VIN   *
1GBEG25H5F7177613;   *
  *
FICTITIOUS DEFENDANT "K", whether   *
singular or plural that person, corporation or   *

other legal entities, whose or which is the    *
successor in interest to any named or fictitious    *
defendants;    *
   *
**FICTITIOUS DEFENDANT "L"**, whether    *
singular or plural that persons, corporations or    *
other legal entities, who is a partner or joint    *
venturer with any other named  or fictitious    *
defendant;    *
   *
**FICTITIOUS DEFENDANT "M"**, whether    *
singular or plural that persons, corporations or    *
other legal entities, who is the employer, or    *
principal or who is otherwise legally responsible    *
for the acts of any individual defendant named or    *
fictitious,    *
   *
**FICTITIOUS DEFENDANT "N"**, whether    *
singular or plural those persons, corporations or    *
other legal entities, who or which was an owner,    *
operator, shareholder, officer, or entity or person    *
otherwise responsible for the conduct of any    *
named or Fictitious Defendant;    *
   *
**FICTITIOUS DEFENDANT "O"**, whether    *
singular or plural those persons, corporations or    *
other legal entities, whose negligence, violation
of the Alabama Extended Manufacturer's
Liability Doctrine or other wrongful conduct
combined and concurred to cause the deaths and
injuries described more particularly herein; all of
said Fictitious Defendants are unknown to
Plaintiffs at this time but will be substituted by
amendment when ascertained,
Defendants.

## PLAINTIFF'S SECOND AMENDED COMPLAINT

**COME NOW** the plaintiffs, by and through undersigned counsel, and hereby amend their

original Complaint filed in the above-styled cause for purposes of clarification, and to further revise the

body of the Complaint throughout as directly relates thereto, so as to make the body and style read as

follows:

**IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | |
|---|---|
| **HARRISON JOHNSON, Jr., et al.** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **BRIDGESTONE FIRESTONE NORTH** | ) |
| **AMERICAN TIRE, LLC; GENERAL** | ) |
| **MOTORS CORPORATION; TUGALOO** | ) |
| **SPORTS VANS, INC.; PHIL OWENS USED** | )    <u>**2:06CV290-MEF**</u> |
| **CARS, INC.; MAYPOLE CHEVROLET, INC.** | ) |
| **O & M MOTOR CO.; MAY BROTHERS,** | )<u>*JURY TRIAL REQUESTED*</u> |
| **INC.; TEMPLE PRODUCTS OF INDIANA,** | ) |
| **INC.; TRW VEHICLE SAFETY SYSTEMS,** | ) |
| **INC. AND/OR TRW AUTOMOTIVE U.S.** | ) |
| **LLC., BENDIX COMMERCIAL VEHICLE** | ) |
| **SYSTEMS, LLC., et al.** | ) |
| | ) |
| **Defendants.** | ) |

---

**PLAINTIFFS' SECOND AMENDED COMPLAINT**

**Statement of the Parties**

1.    Plaintiff Harrison Johnson, Jr. is the duly-appointed administrator of the Estate of Harrison Johnson, Sr. and brings this action for the wrongful death of Harrison Johnson, Sr., pursuant to *Ala. Code* §6-5-410 (1993).

2.    Plaintiff Yvonne Johnson is the duly appointed testatrix of the Estate of Frank Ellis Johnson, and brings this action for the wrongful death of Frank Ellis Johnson pursuant to *Ala. Code* §6-5-410 (1993).

3.    Plaintiff Yvonne Johnson is an individual over the age of nineteen years and a resident citizen of Montgomery County, Alabama.

4.     Plaintiff Joi Johnson is an individual over the age of nineteen years and a resident citizen of Montgomery County, Alabama.

5.     Plaintiff Frank Ellis Johnson, II is an individual over the age of nineteen years and a resident citizen of Montgomery County, Alabama.

6.     Plaintiff Lizzie Johnson is an individual over the age of nineteen years and a resident citizen of Montgomery County, Alabama.

7.     Defendant Bridgestone Firestone North American Tire, LLC (hereinafter "Defendant Firestone") is a corporation organized and existing under the laws of the State of Tennessee with its principal place of business in Nashville, Tennessee.  At all materials times,  Defendant Firestone did business by agent in Bullock County, Alabama, and may be served through its registered agent for service of process: National Registered Agents, Inc., 150 S. Perry Street, Montgomery Alabama 36104.

8.     Defendant General Motors Corporation (hereinafter "Defendant GM') is a corporation organized and existing under the laws of the State of Michigan, with its principal place of business in Detroit, Michigan.  At all material times Defendant GM did business by agent in Bullock County, Alabama, and may be served through its registered agent for service of process: The Corporation Company, 2000 Interstate Park Drive, Suite 204, Montgomery, Alabama.

9.     Defendant Phil Owens Used Cars, Inc., (hereinafter "Defendant Phil Owens") is a corporation organized and existing under the laws of the State of Georgia, with its principal place of business in Lavonia, Georgia.  Defendant Phil Owens has sufficient contacts with the State of Alabama to allow this Court to exercise jurisdiction over it and may be served through its registered agent for service of process: Phil D. Owens, Highway 59, PO Box 489, Lavonia, Georgia 30553.

10.     Defendant Maypole Chevrolet, Inc., (hereinafter "Defendant Maypole Chevrolet") is a corporation organized and existing under the laws of the State of Georgia, with its principal place of business in Toccoa, Georgia.  Defendant Maypole Chevrolet has sufficient contacts with the State of

Alabama as to allow this court to exercise jurisdiction over it and may be served through its registered agent for service of process: Charles G. Maypole, Highway 17 South, Toccoa, Georgia 30577.

11.    Defendant O & M Motor Co., (hereinafter "Defendant O & M") is a corporation organized and existing under the laws of the State of Georgia, with its principal place of business in Columbus, Georgia.  Defendant O & M has sufficient contacts with the State of Alabama as to allow this court to exercise jurisdiction over it and may be served through its registered agent for service of process: Herman A. Donaldson, 192 Willow Beach Road, Ellerslie, Georgia 31807.

12.    Defendant Tugaloo Sports Vans, Inc., (hereinafter "Defendant Tugaloo") is a corporation organized and existing under the laws of the State of Georgia, with its principal place of business in Lavonia, Georgia.  Defendant Tugaloo has sufficient contacts with the State of Alabama as to allow this Court to exercise jurisdiction over it and may be served through its registered agent for service of process: William Tyler Andrews, 12 Joe Harvey Street, Lavonia, Georgia 30553.

13.    Defendant May Brothers, Inc., (hereinafter "Defendant May Brothers") is a corporation organized and existing under the laws of the State of Alabama, with its principal place of business in Bullock County, Alabama.  Defendant May Brothers may be served through its registered agent for service of process: David May, 102 Martin Luther King Boulevard, Union Springs, 36089

14.    Defendant Temple Products of Indiana, Inc., (hereinafter "Defendant Temple Products') is a corporation organized and existing under the laws of the State of Indiana, with its principal place of business in Elkhart, Indiana.  Defendant Temple has sufficient contacts with the State of Alabama as to allow this Court to exercise jurisdiction over it and may be served through its registered agent for service of process: 4511 Pine Creek Road, Elkhart, Indiana 46516.

16.    Defendant TRW Vehicle Safety Systems, Inc. and/or TRW Automotive U.S. LLC(hereinafter "Defendant TRW") is a corporation organized and existing under the laws of the State

of Michigan with its principal place of business in Livonia, Michigan.  Defendant TRW may be served

through: TRW Vehicle Safety Systems, Inc.  and/or TRW Automotive U.S. LLC.

17.    Defendant Bendix Commercial Vehicle Systems LLC(hereinafter "Defendant Bendix")

is a corporation organized and existing under the laws of the State of Ohio with its principal place of

business in Elyria, Ohio.  Bendix may be served Bendix Commercial Vehicle Systems LLC

18.    FICTITIOUS DEFENDANT "A," whether singular or plural, that person, corporation,

or other legal entity who or which designed, manufactured the 1985 Chevrolet C-20 Conversion Van,

VIN 1GBEG25H5F7177613;

19.    FICTITIOUS DEFENDANT "B" whether singular or plural that person, corporation,

or other legal entity who or which was the dealer or seller of the 1985 Chevrolet C-20 Conversion Van,

VIN 1GBEG25H5F7177613;

20.    FICTITIOUS DEFENDANT "C" whether singular or plural that person, corporation

or other legal entity who or which was the manufacturer of the tires on the

1985 Chevrolet C-20 Conversion Van, VIN 1GBEG25H5F7177613 on October 5, 2003;

21.    FICTITIOUS DEFENDANT "D" whether singular or plural that person, corporation

or other legal entity who or which was distributor, dealer, seller or installer of the tires on the 1985

Chevrolet C-20 Conversion Van, VIN 1GBEG25H5F7177613 on October 5, 2003;

22.    FICTITIOUS DEFENDANT "E" whether singular or plural that person, corporation

or other legal entity who or which designed, manufactured or supplied the fiberglass roof system

installed on the 1985 Chevrolet C-20 Conversion Van, VIN 1GBEG25H5F7177613 on October 3,

2003;

23.    FICTITIOUS DEFENDANT "F" whether singular or plural that person, corporation

or other legal entity who or which modified, customized, or otherwise made changes to the 1985

Chevrolet  C-20 Conversion Van, VIN 1GBEG25H5F7177613;

24.    FICTITIOUS DEFENDANT "G" whether singular or plural that person, corporation or other legal entity who or which performed maintenance or repair on the 1985 Chevrolet C-20 Conversion Van, VIN 1GBEG25H5F7177613;

25.    FICTITIOUS DEFENDANT "H" whether singular or plural that person, corporation or other legal entity who or which designed, manufactured, distributed or sold the seats in the 1985 Chevrolet C-20 Conversion Van, VIN 1GBEG25H5F7177613;

26.    FICTITIOUS DEFENDANT "I" whether singular or plural that person, corporation or other legal entity who or which designed, manufactured, or sold the  restraint system in  the 1985 Chevrolet C-20 Conversion Van, VIN 1GBEG25H5F7177613;

27.    FICTITIOUS DEFENDANT "J" whether singular or plural that person, corporation or other legal entity who or which that designed, manufactured, installed or sold the door latches on the 1985 Chevrolet C-20 Conversion Van, VIN 1GBEG25H5F7177613;

28.    FICTITIOUS DEFENDANT "K", whether singular or plural that person, corporation or other legal entities, whose or which is the successor in interests to any named or fictitious defendant;

29.    FICTITIOUS DEFENDANT "L", whether singular or plural that persons, corporations or other legal entities, who is a partner or joint venturer with any other named or fictitious defendant;

30.    FICTITIOUS  DEFENDANT  "M",  whether  singular  or  plural  that  persons, corporations or other legal entities, who is the employer, or principal or who is otherwise legally responsible for the acts of any individual defendant named or fictitious;

31.    FICTITIOUS  DEFENDANT  "N",  whether  singular  or  plural  those  persons, corporations or other legal entities, who or which was an owner, operator, shareholder, officer, or entity or person otherwise responsible for the conduct of any named or Fictitious Defendant;

32.    FICTITIOUS  DEFENDANT  "O",  whether  singular  or  plural  those  persons, corporations or other legal entities, whose negligence, violation of the Alabama Extended

Manufacturer's Liability Doctrine or other wrongful conduct combined and concurred to cause the deaths and injuries described more particularly herein; all of said Fictitious Defendants are unknown to Plaintiffs at this time but will be substituted by amendment when ascertained,

33.    All defendants named herein above maybe collectively referred to as "defendant and/or defendants."

## Statement of the Facts

34.    On October 5, 2003, Frank Ellis Johnson, Yvonne Johnson, Harrison Johnson, Sr., Lizzie Johnson, Joi Johnson and Frank Ellis Johnson, II were traveling north on Interstate 65 in Butler County, Alabama, in a 1985 Chevrolet C-20 Conversion Van VIN 1GBEG25H5F7177613.

35.    The Chevy Van was designed, manufactured and distributed by Defendant GM.

36.    Prior to the time the Chevy van left the ownership or control of Defendant GM, certain modifications were made to it by Defendant Tugaloo.

37.    Defendant Tugaloo was a van customizer selected and supervised by Defendant GM.

38.    Defendant GM conveyed title to Defendant Maypole Chevrolet, Inc., who conveyed title to Defendant Phil Owens Used Cars, Inc., who conveyed title to O & M Motor Company, Inc., who sold the Chevy Van to Plaintiff Frank Johnson, Sr.

39.    The modifications included removal of the welded steel roof and replacement with a fiberglass roof attached only by a series of metal screws, removal of seating systems, and installation of after market seats and restraint systems.

40.    On October 5, 2003, the vehicle was equipped with Firestone tires

| Firestone Firehawk Indy 500 | P255/70R15 108 S M&S (driver front) |
| Firestone Firehawk | P255/70R15 108 S M&S (driver rear) |
| Firestone Firehawk  SS10 | P255/70R15 (passenger front) |
| Firestone Firehawk SS10 | P255/70R15 (passenger rear) |

41.    Frank Ellis Johnson purchased the tires from a dealer who recommended the type, brand, and size of tire which that dealer then installed.

42.    Yvonne Johnson was seated in the passenger seat. Harrison Johnson, Sr., and Lizzie Johnson were seated in the second row of seating.  Joi Johnson and Frank Ellis Johnson, II were seated in the third row of seating.

43.    The left rear tire of the van rapidly deflated causing loss of control of the vehicle.

44.    The van left the roadway and overturned.

45.    The van roof detached from the vehicle and the doors opened.   Frank Ellis Johnson, Harrison Johnson, Sr., Lizzie Johnson, Joi Johnson and Frank Ellis Johnson, II were ejected.

46.     Harrison Johnson, Sr., was killed.

47.    Frank Ellis Johnson Sr.  was killed.

48.    Lizzie Johnson was severely injured.

49.    Yvonne Johnson, Joi Johnson, and Frank Ellis Johnson, II, were injured.

50.    Those who survived the event suffered severe emotional trauma as a result of the death of their family members and their own personal injuries

<u>COUNT I</u>

(AEMLD against Defendants GM, O & M Motor Co., Phil Owens Used Cars, Inc., Maypole
Chevrolet, Inc., and
Fictitious Defendants "A" and "B" and "E" through "D")

51.    Plaintiffs reallege paragraphs 1 through 50 of the Complaint as if set out here in full.

52.    The Chevy Van was designed, manufactured, sold or otherwise placed into the stream of commerce by Defendant GM, O & M Motor Co., Phil Owens Used Cars, Inc., Maypole Chevrolet, Inc., and Fictitious Defendants "A" and "B" and "E" through "D."

53.    At the time the subject GM Chevy Van was placed into the stream of commerce the vehicle was defective and unreasonably dangerous as those terms are defined by Alabama law and

specifically the Alabama Extended Manufacturers Liability Doctrine in that it did not provide reasonable occupant protection in a foreseeable collision. The GM Chevy Van was not crashworthy.

54.     The vehicle was unaltered and in its same design configuration at the time of the accident as it was at the time Defendants GM, O & M Motor Co., Phil Owens Used Cars, Inc., Maypole Chevrolet, Inc. and Fictitious Defendants A and B and E through D placed the vehicle into the stream of commerce.

55.     The GM Chevy Van failed to perform as expected by consumers or users.

56.     The GM Chevy Van was defective in its design, manufacture and/or in the warnings that accompanied it.

57.     The defects in the GM Chevy Van contributed to cause the deaths of Harrison Johnson, Sr., and Frank Ellis Johnson and the injuries to Yvonne Johnson, Joi Johnson, Frank Ellis Johnson, II, and Lizzie Johnson.

COUNT II

(Negligence against Defendants GM and
Fictitious Defendants "A" and "B" and "E" through "N")

58.     Plaintiffs reallege paragraphs 1through 11 of the Complaint as if set out here in full.

59.     Defendant GM and Fictitious Defendants "A" and "B" were negligent in the design, manufacture, sale, distribution and/or warnings of the subject GM Chevy Van.

60.     The negligence of the Defendants contributed to cause the death of Frank Johnson Sr. And Harrison Johnson Sr. .

COUNT III

(Wantonness against Defendant GM and
Fictitious Defendants "A" and "B" and "C" and "D" and "K through N")

61.     Plaintiffs reallege paragraphs 1 through 21 of the Complaint as if set out here in full.

62.     Defendant GM and Fictitious Defendants "A" and "B" were wanton in the design,

manufacture, sale, distribution, and/or warnings of the subject GM Chevy Van.

63.    That wantonness contributed to cause the deaths of Harrison Johnson, Sr., and Frank Ellis Johnson and the injuries to Yvonne Johnson, Joi Johnson, Frank Ellis Johnson, II, and Lizzie Johnson.

64.    The conduct of Defendants GM and Fictitious Defendants "A" and "B" was such as to allow and requires the imposition of punitive damages to punish these Defendants and to deter others similarly situated from such conduct in the future.

## COUNT IV

(AEMLD against Defendants Firestone and
Fictitious Defendants "C" and "D" and "K" through "N")

65.    Plaintiffs reallege paragraphs 1 through 50 of the Complaint as if set out here in full.

66.    The GM Chevrolet van was designed, manufactured, sold or otherwise placed into the stream of commerce by Defendant GM, Tugaloo Sports Vans, Inc., and Fictitious Defendants "A" and "B".

67.    At the time the subject GM Chevrolet van was placed into the stream of commerce the vehicle was defective and unreasonably dangerous as those terms are defined by Alabama law and specifically the Alabama Extended Manufacturers Liability Doctrine in that it did not provide reasonable occupant protection in a foreseeable collision.  The GM Chevrolet van was not crashworthy.

68.    The vehicle was unaltered and in its same design configuration at the time of the accident as it was at the time Defendant GM and Fictitious Defendants "A" and "B" placed the vehicle into the stream of commerce.

69.    The GM Chevrolet van failed to perform as expected by consumers or users.

70.    The GM Chevrolet van was defective in its design, manufacture and/or in the warnings that accompanied it.

71.     The defects design in the GM Chevrolet van contributed to cause the deaths of Harrison Johnson, Sr., and Frank Ellis Johnson and the injuries to Yvonne Johnson, Joi Johnson, Frank Ellis Johnson, II, and Lizzie Johnson.

## COUNT V

(Negligence against Defendants Firestone and
Fictitious Defendants "C" and "D" and "K" through "N")

72.     Plaintiffs reallege paragraphs 1through 50 of the Complaint as if set out here in full.

73.     Defendant GM, Tugaloo Sports Vans Inc., and Fictitious Defendants "A" and "B" were negligent in the design, manufacture, sale, distribution and/or warnings of the subject GM Chevrolet van.

74.     The negligence of the Defendants contributed to cause the deaths of Harrison Johnson, Sr., and Frank Ellis Johnson and the injuries to Yvonne Johnson, Joi Johnson, Frank Ellis Johnson, II, and Lizzie Johnson.

## COUNT VI

(Wantonness against Defendant Firestone and
Fictitious Defendants "K" through "N")

75.     Plaintiffs reallege paragraphs 1 through 50 of the Complaint as if set out here in full.

76.     Defendant GM and Fictitious Defendants "A" and "B" were wanton in the design, manufacture, sale, distribution, and/or warnings of the subject tires.

77.     That wantonness contributed to cause the deaths of Harrison Johnson, Sr., and Frank Ellis Johnson. and the injuries to Yvonne Johnson, Joi Johnson, Frank Ellis Johnson, II, and Lizzie Johnson.

78.     The conduct of Defendants Firestone and Fictitious Defendants "A" and "B" was such as to allow and requires the imposition of punitive damages to punish these Defendants and to deter others similarly situated from such conduct in the future.

<u>COUNT VII</u>
(Negligence/Wantonness against Defendant Tugaloo and
Fictitious Defendants "K" through "N")

79.    Plaintiffs reallege paragraphs 1 through 50 of the Complaint as if set out here in full.

80.    Defendant Tugaloo and Fictitious Defendants A through E received the Chevy Van from Defendant GM and undertook to make certain modification, changes, and changes to the van to create what is known in the industry as a "conversion van."

81.    These Defendants owed a duty to Plaintiffs and other expected users of the Chevy Van to exercise reasonable care and to produce a vehicle which afforded reasonable protection to its occupants in a foreseeable accident event.

81.    These Defendants breached that duty.

82.    As a result, the death and injuries described herein occurred.

83.    The conduct of these Defendants was such as to allow and requires the imposition of punitive damages to punish these defendants and to deter others similarly situated from such conduct in the future.

<u>COUNT VIII</u>
(Negligence/Wantonness Fictitious Defendants "C" and "D" and "K"
through "N")

84.    Plaintiffs reallege paragraphs 1 through 50 of the Complaint as if set out here in full.

85.    At some time prior to October 5, 2003, Frank Ellis Johnson purchased new tires for the Chevy Van.

86.    Frank Ellis Johnson purchased those tires from a tire dealer who recommended and selected the brand and size tire for the Chevy Van.

87.    These Defendants negligently or wantonly installed the tires on the Chevy Van.

88.    These Defendants owed a duty to Plaintiffs to use reasonable care in the recommendation, selection, and installation of tires on the Chevy Van.

14

89.    These Defendants breached those duties.

90.    These Defendants' negligence contributed to cause the death and injuries described herein.

91.    The conduct of these Defendants was such as to allow and requires the imposition of punitive damages to punish these Defendants and to deter others similarly situated from such conduct in the future.

<u>COUNT IX</u>
( Negligence/Wantonness against Defendant May Brothers Inc., and Fictitious Defendants "A" and "B")

92.    Plaintiffs reallege paragraphs 1 through 50 of the Complaint as if set out here in full.

93.    Defendant May Brothers, Inc. and Fictitious Defendants "A" and "B" inspected the Chevy Van including the tires within a few months of the accident described herein.

94.    Plaintiffs came to defendant, May Brothers, location and complained of vibration and/or rough handling of the said vehicle.

95.    These Defendants knew or should have known that the tires were defective in design or manufacture, incorrectly sized, or improperly installed on the Chevy Van.

96.    These Defendants owed a duty to Plaintiffs to use reasonable care in the inspection of the Chevy Van.

97.    These Defendants negligently or wantonly breached that duty.

98.    These Defendants' negligence contributed to cause the deaths and injuries described herein.

99.    The conduct of Defendants May Brothers, Inc., and Fictitious Defendants "A" and "B" was such as to allow and requires the imposition of punitive damages to punish these Defendants and to deter others similarly situated from such conduct in the future.

COUNT X
(Negligence against Defendants TRW and
Fictitious Defendants "A" and "I" and "M" through "N")

100.   Plaintiffs reallege paragraphs 1 through 46 of the Complaint as if set out here in full.

101.   Defendant TRW, Inc. Manufactured designed and/or assembled the passenger restraint systems of the subject vehicle.

102.   Defendant TRW and fictitious defendants failed to properly design and/or test the components of the passenger restraint systems.

103.   Defendant TRW and fictitious defendants failed to design the components in accordance with foreseeable crash scenarios.

104.   The restraints incorporated into the subject vehicle were defective and unreasonably dangerous for their intended and actual use.

105.   The use and employment if the TRW system and components as applied in the subject vehicle was foreseeable to defendants.

106.   The passenger restraint system was defective in design, manufacture or in the warnings which accompanied it into the stream of commerce.

107.   The passenger restraint system was in the same and original design condition on the date of the accident as when it was placed into the subject vehicle.

108.   The defects in the passenger restraint systems allowed the ejections complained of herein above and proximately caused or contributed to cause the deaths of the Plaintiffs.

COUNT XI
(Negligence against Defendants Bendix Commercial Vehicle Systems LLC. and
Fictitious Defendants "A" and "I" and "M" through "N")

109.   Plaintiffs reallege paragraphs 1 through 46 of the Complaint as if set out here in full.

110.   Defendant Bendix Commercial Vehicle Systems, LLC. Manufactured designed and/or assembled the passenger restraint systems of the subject vehicle.

111.    Defendant Bendix Commercial Vehicle Systems, LLC and fictitious defendants failed to properly design and/or test the components of the passenger restraint systems.

112.    Defendant Bendix Commercial Vehicle Systems, LLC and fictitious defendants failed to design the components in accordance with foreseeable crash scenarios.

113.    The restraints incorporated into the subject vehicle were defective and unreasonably dangerous for their intended and actual use.

114.    The use and employment if the Bendix Commercial Vehicle Systems, LLC system and components as applied in the subject vehicle was foreseeable to defendants.

115.    The passenger restraint system was defective in design, manufacture or in the warning which accompanied into the stream of commerce.

116.    The passenger restraint system was in the same and original design condition on the date of the accident as when it was placed into the subject vehicle.

117.    The defects in the passenger restraint systems allowed the ejections complained of herein above and proximately  caused or contributed to cause the deaths of the Plaintiffs

COUNT XI
(Combined and Concurring Conduct)

118.    Plaintiffs reallege paragraphs 1 through 46 of the Complaint as if set out here in full.

119.    The tortious conduct of all Defendants as described in Counts I through X combined and concurred to cause the deaths of Harrison Johnson, Sr., and Frank Ellis Johnson, and the injuries to Yvonne Johnson, Joi Johnson, Frank Ellis Johnson, II, and Lizzie Johnson.

COUNT XII

120.    Plaintiff reallege all prior paragraphs of the Complaint as if set out here in full.

121.     This Count is brought pursuant to the Alabama Extended Manufacturer's Liability Doctrine.

121.    Defendant Temple Products of Indiana, Inc. (hereinafter "Temple") is believed to be an Indiana Corporation with its principal place of business located in Elkhart, Indiana.

17

123.   Defendant Temple is believed to be in the business of manufacturing specialty and accessory products for use in the van conversion industry.

124.   Defendant Temple is believed to be the manufacturer of the raised fiberglass roof attached to the subject vehicle at the time of the accident giving rise to this Complaint.

125.   It is believed that Temple provided the fiberglass roof and fasteners to defendant Tugaloo in accordance with the conversion plan being pursued by Tugaloo.

126.   The fiberglass roof was substituted for the original metal roof of the GM van during the conversion process.  As a part of the conversion process, the original metal roof and all supporting structures were removed, and the fiberglass roof was substituted therefor.  The fiberglass roof was attached to the van body only by a series of wood or sheet metal screws which were wholly inadequate to secure the roof to the vehicle in a foreseeable collision or rollover incident.

127.   The fiberglass roof was inadequate to retain passengers inside the passenger compartment during a foreseeable collision or rollover, and the removal of the original roof and supporting structures compromised the structural integrity of the van body following installation of the fiberglass roof.  The compromise of structural integrity combined with the lack of an adequate system for securing the fiberglass roof to the van body created an increased risk of passenger ejection during a foreseeable collision or rollover.

128.   At the time of the accident giving rise to the Complaint, the fiberglass roof was in the same condition it was in at the time it was originally placed into the stream of commerce.

129.   At the time of the accident giving rise to the Complaint, the fiberglass roof was being used as it was intended to be used by Temple.

130.   At the time the fiberglass roof was placed into the stream of commerce, it was defective by design, in its manufacturing process, and/or in the warnings which accompanied it.

131.   The defects existing in the fiberglass roof directly and proximately contributed to cause the deaths and injuries complained of hereinabove in paragraphs 46 and 47.

18

132.  The defects existing in the fiberglass roof were created as a direct and proximate result of the negligent, wanton, or reckless conduct of defendant Temple, in the design, manufacture and marketing of the fiberglass roof.

WHEREFORE, Plaintiffs demand such amount as a jury may award as compensatory damages, punitive damages, and their costs in this action.

## COUNT XIII

133.  Plaintiffs reallege all prior paragraphs of the Complaint as if set out here in full.

134.  The acts and omissions of Temple as complained of in Count XII above were committed recklessly, negligently, or wantonly.

135.  The negligent, reckless or wanton acts and omissions of Temple directly and proximately contributed to cause the deaths and injuries complained of hereinabove in paragraphs 46 and 47.

WHEREFORE, Plaintiffs demand such amount as a jury may award as compensatory damages, punitive damages, and their costs in this action.

## COUNT XIV

136.  This Count is brought pursuant to the Alabama Extended Manufacturer's Liability Doctrine.

137.  At all material times the General Motors G20 van at issue in this case was equipped with door latches that were designed, manufactured and installed by employees of General Motors Corporation (hereinafter "GM").

138.  The door latches at issue were defective and unreasonably dangerous due to their propensity to fail in collisions and rollovers, allowing vehicle doors to open during foreseeable collision or rollover events.

139.  The door latches at issue were expected to and did reach the consumer in this case without modification from any outside source.

140.  The door latches at issue were in the same design and mechanical condition at the time of this accident as they at the time the van and attached latches were originally placed into the stream of commerce.

141.  The door latches in this case reached the plaintiffs without substantial modification from their original design and manufacturing condition.

142.  In this accident, the driver's door latch failed allowing the driver's door to come open during the rollover event made the basis of this Complaint.

143.  The rollover event described in the Complaint was foreseeable to GM at the time the door latches were first designed, tested and placed into the stream of commerce.

144.  The defects existing in the door latches at issue rendered the door latches defective and unreasonably dangerous for their intended purpose and, therefore, subjected the driver of the subject vehicle to an unreasonable risk of injury in foreseeable collision or rollover events.

145.  GM had a duty to design and test a door latch that would be sufficient to withstand the forces of a reasonably foreseeable collision or rollover event.  GM failed to carry out this duty.

146.  The defect in the door latches at issue proximately caused the death of Frank Johnson, Jr. as the driver's door latch failed in this incident, allowing the driver's door to come open during this rollover sequence.  Frank Johnson, Jr. was ejected and killed as a result of this door latch failure.

147.  The conduct of GM in regard to this case was negligent, reckless, or wanton and willful.

148.  GM was aware of the defective nature of the door latches at issue, and yet failed to warn the end users of these latches of the danger posed by the defective design.

149.  Further, despite having clear notice of the defective nature of the door latches at issue in this case, GM failed to modify the door latch design to avoid failures similar to that alleged in this Complaint.

150. Frank Johnson, Jr. was ejected and killed in this incident as a direct and proximate result of the negligent, reckless, wanton or willful conduct of GM in this case.

WHEREFORE, premises considered, Plaintiffs demand such amount as a jury may award as punitive damages pursuant to the Alabama Wrongful Death Act, plus their costs in this action.

PRAYER FOR RELIEF

Plaintiffs demand judgment for compensatory damages and punitive damages in such an amount as the jury determines Plaintiffs are entitled under the laws of the State of Alabama plus the costs of this action.

Respectfully submitted, this 2nd day of August, 2006.

/s/ Blaine C. Stevens
BLAINE C.  STEVENS (STE091)
Attorney for Plaintiffs

OF COUNSEL:
STRICKLAND & KENDALL, L.L.C.
420 S. Lawrence Street [36104]
P.O. Box 99
Montgomery, AL  36101-0099
(334) 269-3230
(334) 269-3239 / fax

21

<u>CERTIFICATE OF SERVICE</u>

       I hereby certify that I have served a copy of the foregoing upon the following by placing a copy of same in the U.S. mail, properly addressed and first class postage prepaid, on this the 2nd day of August, 2006.

Will R. Kelly
Post Office Drawer 937
Hayneville, AL 36040

Jack E. Little Jr., Esq.
Pillsbury, Winthrop, Shaw & Pittman
2 Houston Center
909 Fannin 22nd Floor
Houston, TX 77010

Jay Tuley, Esq.
Nix, Holtsford, Gilliland, Higgins & Hitson
Post Office Box 4128
Montgomery, AL 36103

Hope Cannon
Brittin T. Coleman
Kenneth Perry
Bradley, Arant, Rose and White
1819 5th Ave North
Birmingham, AL 35203

M. Christian King
Lightfoot, Franklin & White
400 20th Street North
Birmingham, AL 35203

Robert D. Hays
L. Frank Coan, Jr., Esq.
Robert Arrington, Jr., Esq.
King & Spalding
1180 Peachtree Street
Atlanta, GA 30309

Roger Morrow, Esq.
Morrow, Romine & Pearson
Post Office Box 4804
Montgomery, AL 36103

Keith Pflaum, Esq.
Porterfield, Harper Mills & Motlow
Post Office Box 530790
Birmingham, AL 35253

J. Kenneth Wainwright, Esq.
HARVEY KRUSE, P.C.
1050 Wilshire Drive, Suite 320
Troy, MI 48084-1526

William A Mudd
420 20th Street North Ste 2500
Birmingham, AL 35203

James N. Walter, Jr.
Capell & Howard, P.C.
P.O. Box 2069
Montgomery, AL 36102-2069

/s/ Blaine C. Stevens
OF COUNSEL